SCANNED at
and Emailed
8/14/24 by SC . 13 pages
date    initials    No.

United States District Court
District of Connecticut

Courtney Green

(Plaintiff)

V.

CV. No. _____

Jury Trial Demanded

8 / 14 / 2024

Commissioner Quiros,

Warden Caron, Deputy Warden Ogando,

Correctional Officer Starzyk,

Correctional Officer Coggeshall

(Defendant's)

## Verified Complaint For Money Damages;, Injunction

### I.    Jurisdiction

1.  Plaintiff brings this lawsuit pursuant to 42 U. S. C. Section 1983. This court has jurisdiction under 28 U. S. C. Section (s) 1331, 1343. This court has supplemental jurisdiction over plaintiff's state - law claims pursuant to 28 U. S. C. Section 1367.

### II.    Venue

2.  The District of Connecticut is an appropriate venue under 28 U. S. C. Section 1381 (b) (2), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

### III.    Parties

3.  Plaintiff Courtney Green was at all times relevant to this action a prisoner incarcerated at Carl Robinson C.I. since April of 2021.

1

4. Defendant Angel Quiros has served as Commissioner of Correction since about 2020. Defendant Quiros' statutory duties are set forth in Connecticut General Statutes Section 18 - 81 and his duties are, but not limited to , administer, coordinate, and control the operations of the department, be responsible for the overall supervision and direction of all institutions; establish policies and procedures for the administration of Department of Correction. Defendant Quiros created a policy under which unconstitutional strip searches were promulgated as a result.

5. Defendant Zelynette Caron was at all times relevant to this action the Warden at Carl Robinson C.I. Defendant Carons' duties are, but not limited to, directing staff and the operations of a correctional institution, center, facility or major program area as designated in accordance with the policies, procedures and directives of the commissioner of correction. Defendant Caron created a policy or custom under which unconstitutional strip searches occurred

6. Defendant Ogando was at all times relevant to this action the Deputy Warden of operations at Robinson CI. Defendant Ogandos' duties are, but not limited to, overseeing staff and operations of custody and security. Defendant Ogando created a policy or custom under which unconstitutional strip searches occurred.

7. Defendant Starzyk was at all times relevant to this action a correctional officer at Robinson CI. Defendant Starzyks' duties are, but not limited to, accountable for the confinement, safety, control and monitoring of sentenced and / or unsentenced inmates and security of the facility; and performing strip searches on inmates in certain instances. Defendant Starzyk directly participated in unconstitutional routine strip searches (s) of the plaintiff at the conclusion of non - contact video visits.

8. Defendant Coggeshall was at all times relevant to this action a correctional officer at Robinson CI. Defendant Coggeshall duties are, but not limited to, accountable for the confinement, safety, control and monitoring of sentenced and / or unsentenced inmates

2

and security of the facility; and performing strip searches on inmates in certain instances. Defendant Coggeshall directly participated in unconstitutional routine strip search(s) of the plaintiff at the conclusion of non - contact video visits.

9. All Defendants are being sued in their official capacities for injunctive relief and in their individual capacities for money damages.

## IV. Exhaustion of Remedies

10. Plaintiff took the steps to and did exhaust the administrative remedies available to him, including filing complaints with the respective warden.

## V. Statement of Fact

11. This claim herein arises out of invasive and unreasonable searches at the behest of the named plaintiff, who has been forced to submit to dehumanizing, humiliating, repulsive, and embarrassing routine strip searches following the conclusion of non - contact video (virtual) visits, which lack, both probable cause and / or reasonable suspicion which are also being conducted in front of others that are not involved in the search process.

12. As set forth below, compelling plaintiff to submit to routine strip searches at the conclusion of a non - contact video visit reflects a pattern and custom of unreasonable searches being implemented and executed on the part(s) of the commissioner of correction, warden, deputy warden, and correctional officers'. Compelling plaintiff to submit to above stated strip searches after non - contact video visits violates the plaintiff's rights under the constitution of the United States and the State of Connecticut.

13. In or around 2020, Connecticut's prisons implemented virtual video visits during the height of the covid-19 pandemic in efforts to stem the spread of covid-19 throughout Connecticut's prison system. More recently and regularly, video visits have become another option for social visits, in addition to contact visits, and non - contact visits.

14. Video visits are described as a visit conducted utilizing a laptop, tablet or mobile device with video capabilities. See Administrative Directive 10.6 Section 3, subsection v.

3

15. Visitors participating in video visits do not enter the premises of a correctional facility nor do the have any contact with prisoners confined at Robinson CI, thus the feat of the plaintiff or any other prisoner at Robinson CI who participate in video visits being able to harbor, smuggle contraband, i.e., weapons, money, drugs, or any prohibited items into an institution are highly unlikely, and / or improbable.

16. It is a well known fact that the most likely source of contraband for prisoners is through contact visits and not through non - contact and / or virtual video visits.

17. Virtual video visits occur in the visiting room in a far corner, where there are about twelve laptop computers, several chairs are in this area which are positioned behind the laptops where correctional officers are seated and continuously monitor prisoners participating in virtual video visits. Visitors from outside of the institution do not come in proximity of the area where virtual visits occur nor are they allowed in said area, nor does said visitors come within the province of prisoners participating in virtual video visits, further illustrating that virtual video visits are the highly unlikely source of conveying contraband in Carl Robinson CI.

18. Each housing unit at Robinson CI are accorded virtual video visits once per week on a rotational time basis, however, only one housing unit at a time occupies the area where virtual video visits take place, e.g., when the plaintiff's housing until (9A) had virtual video visits on 6 -10-24 at 8pm - 9pm no other housing unit had a virtual video visit at said time, and date.

19. When exiting the video visiting area, inmates are escorted through a door into an area with only the inmates who just participated in virtual video visits, inmates who participated in contact visits are not strip searched in the strip search area simultaneously with the prisoners who had virtual video visits.

20. In the strip search area, there lies about 7 or 8 small partitions where prisoners are strip searched at Robinson CI at the conclusion(s) of contact, non - contact, and virtual video

4

visits. Directly across from the partitions is a control area for correctional officers overseeing inmate visits. The control area door remains open for officers to continuously walk to and from the strip search area which is adjacent to the control areas door. Correctional officers continuously monitor and observe the strip search area making it virtually impossible for prisoners to discard or obtain contraband without getting caught!!

21. On or about 6 - 3 - 2024 the plaintiff had a virtual video visit with an approved visitor. Upon the plaintiff's arrival to the visiting control area and prior to entering into the visit room, the plaintiff was pat searched with negative findings for contraband and then allowed to enter the visiting room and sit at the laptop that he was instructed to, where the plaintiff had his virtual video visit without incident.

22. After the one hour time duration for virtual video visits, Defendant Starzyk came to the virtual video visit area and announced that said visits were over Defendant Starzyk and the other officers working the floors of the visiting room then instructed the plaintiff and other prisoners who just participated in virtual video visits to line up at the door, (said door allows one to enter and exit the visiting room), aka, offender holding area.

23. Defendant Starzky then instructed the plaintiff and the other prisoners from 9A who participated in virtual video visits to exit the visiting room. All prisoners did so followed by Defendant Starzyk the other correctional officers who were present. Prisoners who were / are in contact, and non - contact visits are / were not strip searched with prisoners who participated in virtual video visits.

24. While in the strip search area, Defendant Starzky instructed plaintiff to the last semi - partitioned stall, unto which the other correctional officers. Also instructed the other prisoner in this area to stand in front of semi - partitioned stalls. As the plaintiff stood in front of said partition, Defendant Starzyk put on a pair of sky blue, presumably latex gloves, and the plaintiff raised both of his arms in the air and turned around backwards

5

to submit to the standard pat search that concludes prisoners participating in virtual video visits.

25. Defendant Starzyk instructed the plaintiff to turn around facing forward and to remove his clothing piece by piece", at Defendant Starzyks direction because the plaintiff is being strip searched, not pat searched!

26. A strip search is a visual inspection of an unclothed person's body cavities, hair ( to include the individual's cars, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia. See Administrative Directive 6.7 Section 3, subsection (p).

27. The plaintiff responded to Defendant Starzyk ``A strip search after a video visit, you must be crazy". Plaintiff then said to Defendant Starzyl" strip searches after video visits are not authorized in Administrative Directive 6,7. Defendant Strazky replied: " I know that it's not in 6,7 but I'm just following my post orders and direct orders. Plaintiff responds: "you don't have to follow unlawful orders which strip searching plaintiff after a non - contact virtual video visit is unlawful and doing so violates your Administrative Directive 6.7, and the plaintiff's constitutional rights to limited bodily privacy.

28. Defendant Starzyk instructed plaintiff to address his issues regarding strip searches after virtual video visits with the Warden ( Defendant Caron).

29. Defendant Starzyk again instructed plaintiff to remove his clothing articles for a visual inspection of his body cavities unto which the plaintiff complied with the strip search, got dressed and left without further incident.

30. On or about 6-7-2024, Defendant's Caron, Ogando toured 9A housing unit, the plaintiff's housing unit. During Defendant's Caron, Ogando's tour,  the plaintiff addressed his issues with both defendant's regarding their policy of having the plaintiff and inmate population submit to strip searches at the conclusion of virtual video visits when no such authority is promulgated in Administrative Directive 6.7.

6

31. Defendant Ogando responded " I'm aware that strip searches after video visits is not in the directives but we are working on changing the language in the directive to incorporate strip searches after non - contact and video visits, the Commissioner ( Defendant Quiros) signed off on a request to revise Administrative Directive 6.7 which will authorize strip searches after non - contact, and virtual video visits. Plaintiff responded "so you're anticipating the directives changing to include the authorization of strip searches at the conclusion of virtual video visits, well if and until that happens, even if does happen you're gonna violate and continue to violate my rights to limited bodily privacy? Unto which Defendant Caron responded "their is reasonable suspicion to believe that any inmate that accesses the visiting room may be in possession of contraband and will be strip searched regardless if it's a video visit or non - contact visit.

32. Plaintiff replying to Defendant Caron states' ' what you've just described as your reason(s) for strip searching prisoners at the conclusion of video and non - contact visits is a blanket policy of strip searches following video and non - contact visits and is not based on probable cause nor reasonable suspicion. Defendant Caron responded "the policy is not changing, strip searches will continue after video and non - contact visits". Discussions with plaintiff and Defendant's Caron, Ogando ended without incident.

33. On or around 6-10-2024, plaintiff and 9A housing had virtual video visits in Robinson CI's visiting room, upon plaintiff's arrival in the visiting room he was pat searched with negative findings and proceeded to his video visit.

34. At the conclusion of his video visit a correctional officer "yelled recall 9A video visits" this officer is a non - defendant to this action, who then instructed plaintiff and other prisoners to exit the visiting room via the offender holding area. Plaintiff and the other prisoners did so without further incident.

35. While in the offender holding area, standing directly in front of the partitions, Defendant Coggeshall motioned for plaintiff to come to him at the second to last partition and

7

plaintiff did as instructed. Defendant Coggeshall directed plaintiff to remove his shirt(s), pant(s), sock(s), sneakers(s), underwear, and hand them to him at his direction, before plaintiff did such he said to Defendant Coggeshall "there is nothing in Administrative Directive 6.7 that proscibes or permits you to strip search (plaintiff) after virtual video visits and in doing so your not adhering to the directives and you're violating my rights to limited bodily privacy". Defendant Coggeshall responded "I'am not going to argue with you; unto plaintiff replied "I know that you're not because you know that i'm right".

36.  After removing all of his clothes, Defendant Coggeshall instructed plaintiff to lift his arms, lift his testicles, turn around, bend, squat, cough while spreading his buttocks.Defendant Coggeshall then instructed plaintiff to turn back around facing him, and to open his mouth wide using his hands that he just lifted his testicles and spread his buttocks with. Plaintiff objected to this instruction by Defendant Coggeshall and after a few moments of back and forth the plaintiff complied with the instruction given.

37. During the relevant time that plaintiff was subjected to a visual inspection of his body by Defendant Coggeshall other prisoners from 9A who were done being strip searched and exiting from their partitions were able to see in clear view plaintiff's unclothed and nude body. Other correctional officers who were not involved in plaintiff's strip search were also able to view plaintiff's unclothed nude body because the partitions sides do not erect enough to provide side blockage and their is nothing to provide frontal blockage of these partitions which exposed plaintiff's nude body in clear view of others not involved in the strip process. Plaintiff expressed his dissatisfaction with Defendant Coggeshall for strip searching him in plain view of others not involved in the strip search process; and was disregarded by him. Plaintiff eventually got dressed and exited the offender holding area without further incident.

38. Previously Administrative Directive 6.7 read;A strip search shall be conducted at the conclusion of any contact visit. Subsequently Administrative Directive 6.7 section 5 (b)

8

(ix) was revised by Defendant Quiros to read as follows: A strip search shall be conducted for the following circumstances: (ix) At the conclusion of any contact visit, or after entering any public visiting area.

39. Defendant Quiros' slight revision in the language of Administrative Directive 6.7 section 5 (b) (ix) that now includes; or after entering any public visiting area which covertly enabled Defendant's Caron, and Ogando to implement a policy at Robinson CI that would authorize any inmate who enters the visiting room to be strip searched regardless of the fact they did not have a contact visit.

40. In or around May of 2024, plaintiff wrote a letter to Defendant Quiros apprising him that Defendant Caron has instituted a policy that authorizes prisoners to be strip searched at the conclusion of non - contact, and virtual video visits, which is not explicated in the Administrative Directive(s) promulgated by Defendant Quiros. Defendant Quiros didn't respond to plaintiff's correspondence, instead plaintiff's correspondence was forwarded to Defendant Caron's office for a reply, who did reply, standing on Administrative Directive 6.7 section 5 (b) (ix).

41. Even after the plaintiff's filing of his administrative remedies challenging Defendant Caron's policy instituting routine strip searches at the conclusion of non - contact, and virtual video visits, said strip searches continue and have subjected plaintiff to multiple unreasonable strip searches at the conclusion of non - contact virtual video visits.

42. This action is brought to end the pattern and practice of unreasonable searches being conducted after non - contact video visits infringing on plaintiff's limited right to bodily privacy.

## VI. Count One

### Plaintiff Was Subjected To Unreasonable Searches In Violation of The Fourth Amendment To The Constitution

43. Plaintiff incorporates paragraphs 1 through 42 as though they were stated fully herein.

44. Defendant Quiros violated plaintiff's rights to be free from unreasonable searches by covertly revising the verbiage of Administrative Directive 6,7 section 5 (b) (ix), hence a policy was promulgated that subjected plaintiff to unconstitutional routine strip searches at the conclusion of non - contact virtual video visits, without establishing reasonable suspicion to do so.

45. Defendant's Caron, Ogando violated plaintiiiiff's right to be free from unreasonable searches by creating a policy or custom under which plaintiff was subjected to unconstitutional routine strip searches at the conclusion of non - contact virtual video visits without establishing reasonable suspicion to so. Defendant's Caron, Ogando knew plaintiff couldn't smuggle contraband through a video visit.

46. Defendant's Starzyk, Coggeshall violated plaintiff's right to be free from unreasonable searches by performing unconstitutional routine strip searches on plaintiff at the conclusion of non - contact virtual video visits without establishing reasonable suspicion to do so, which humiliated and embarrassed plaintiff. Defendant's Starzyk, Coggeshall knew plaintiff couldn't smuggle contraband through a video visit.

Count Two

Plaintiff Was Subject To Unreasonable Searches In Violation of The Fourteenth Amendment to The Constitution

47. Paragraphs 1 through 46 are incorporated as though they were stated fully herein.

48. Defendant Quiros violated plaintiff's rights to be free from unreasonable searches by covertly revising the verbiage of Administrative Directive 6.7 section 5 (b) (ix), hence a policy was promulgated that subjected plaintiff to unconstitutional routine strip searches at the conclusion of non - contact virtual video visits, without establishing reasonable suspicion to do so.

49. Defendant's Caron, Ogando violated plaintiff's rights to be free from unreasonable searches by creating a policy or custom under which plaintiff was subjected to

10

unconstitutional routine strip searches at the conclusion of non - contact virtual visits, without establising reasonable suspicion to do so. Defendant's knew plaintiff couldn't smuggle contraband through a video visit.

50. Defendant's Starzyk, Coggeshall violated plaintiff's rights to be free from unreasonable searches by performing unconstitutional routine strip searches on plaintiff at the conclusion of non - contact virtual video visits without establishing reasonable suspicion to do so, which humiliated and embarrassed plaintiff. Defendant's knew plaintiff couldn't smuggle contraband through a video visit.

Count Three

Plaintiff Was Subject To Unreasonable Searches In Violation of Article First Sec. 7 of

The State Constitution

51. Paragraphs 1 through 50 are incorporated as though they were stated fully herein.

52. Defendant's Starzyk, Coggeshall violated plaintiff's rights to be free from unreasonable searches by performing unconstitutional routine strip searches on plaintiff at the conclusion of non - contact virtual video visits without establishing reasonable suspicion to do such, which humiliated and embarrassed plaintiff. Defendant's knew plaintiff couldn't  smuggle contraband through a video visit.

11

Claims For Relief

Plaintiff demands as follows:

    a.  Injunctive relief by way of ordering Defendant's Quiros, Caron to discontinue routine strip searches on inmates returning from non - contact, and virtual video visits unless there is probable cause.

    b.  Punitive damages.

    c.  Compensatory damages.

    d.  Reasonable attorney's fee; and

    e.  Waive all costs of incarceration and costs of suit.

    f.  Any other relief this court deems just and equitable.

Verification

Pursuant to 28 U . S. C. Section 1746, I Courtney Green, declared under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Dated this 14th day of August 2024.

Courtney Green #320094

CRCI

285 Shaker Rd

Enfield, Ct 06082

13