**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER QUIROS, et al., | : | JUNE 12, 2025 |
| *Defendants.* | : | |

**LOCAL RULE 56(a)(1) STATEMENT OF**
**UNDISPUTED MATERIAL FACTS**

The undersigned defendants submit this statement of undisputed material facts in support of their motion for summary judgment. *See* D. Conn. L. Civ. R. 56(a)(1).

1. Plaintiff filed the instant complaint *pro se* while incarcerated within the Connecticut Department of Correction ("DOC"). (Doc. 1, ¶ 3); (Doc. 10, Pg. 1).

2. Between April 28, 2021 and November 19, 2024, Plaintiff was incarcerated at the Robinson Correctional Institution ("Robinson CI"). (Ex. B, Declaration of Zelynette Caron, ¶30).

3. Robinson CI is a level 3 medium-security facility. (Ex. B, ¶4).

4. Inmates at Robinson CI are housed in secure dormitories and have more freedom to move about the facility and intermingle than inmates at facilities with higher levels of security. (Ex. B, ¶6).

5. Robinson CI allows social visits, which can be contact visits, non-contact visits, or video only visits. (Ex. B, ¶10).

6. All social visits at Robinson CI are conducted in the same visiting room. (Ex. B, ¶11).

7. Additionally, Department of Children and Families ("DCF") visits also occur in the public visiting room. (Ex. B, ¶15).

8. Given the layout of the Robinson CI facility, the visiting room is the only area where social visits can be conducted safely and with appropriate protocols. (Ex. B, ¶12; Ex. A, Plaintiff's Deposition, 152:6 – 10).

9. The Robinson CI visiting room is a fairly large space with long, cafeteria-like tables, which feature a low partition running along the middle. (Ex. B, ¶9).

10. Inmates conducting visits in the visiting room are seated separately but are not physically separated from one another. (Ex. B, ¶17).

11. During contact visits, inmates meet with visitors while sitting across one of the tables in the visiting room. (Ex. B, ¶18).

12. During non-contact visits, inmates meet with visitors while sitting on either side of a secure glass wall with small sound holes, speaking over a telephone. During non-contact visits the inmates are seated in a secured area adjoining the visiting room behind glass, but their visitors are seated in the visiting room. (Ex. B, ¶19).

13. During video only visits, inmates meet with their visitors while sitting at laptops placed in the visiting room. (Ex. B, ¶20).

14. Social visits at Robinson CI are conducted in groups to avoid strain on staff and resources. (Ex. B, ¶21).

15. Following visits, inmates are taken out of the visiting room to an adjoining room and strip searched in separate partitions before returning to their housing units. (Ex. B, ¶23; Ex. A, 69:13 – 20).

16. The purpose of strip searches is to stop the infiltration of contraband into the facility. (Ex. B ¶9); (Ex. A, 104:20 – 24).

17. All inmates leaving the visiting room are required to be strip searched because they all visit in the same physical space where members of the public are or have been present. (Ex. B, ¶24; Ex. A, 56:25, 57:1 – 6).

18. If only inmates conducting contact visits were strip searched, this could allow non-contact and video visit inmates to obtain contraband from outside visitors or from other inmates. (Ex. B, ¶25).

19. Previous strip searches of inmates returning from the visiting room have resulted in the discovery of contraband, including various illegal drugs and a metal ring. (Ex. B, ¶26; Ex. A, 172:3 – 10).

20. Protective sweeps of the visiting room by correctional officers have also uncovered contraband that was apparently hidden for other inmates to retrieve surreptitiously. (Ex. B, ¶27).

21. Contraband, including illegal drugs, metal objects, weapons, or written notes, pose risks to the safety and security of the Robinson CI facility. (Ex. B, ¶28; Ex. A, 65:11 – 13).

22. The DOC Inmate Search Policy is outlined in Administrative Directive (A.D.) 6.7. *See* Att. B to Ex. B.

23. The operative version of A.D. 6.7 took effect on January 30, 2024, but a revision concerning strip searches and public visiting areas was approved on May 29, 2024, and published on June 4, 2024. (Ex. B, ¶32).

24. A.D. 6.7 was revised to clarify that facilities must strip search inmates who have social visitation happening in the same area, due to access to the public and the risk of contraband entering a facility. (Ex. B, ¶33).

25. Robinson CI allowed social visits on June 3, 2024 and June 10, 2024. (Ex. B, ¶35).

26. On June 3, 2024, Robinson CI scheduled thirteen (13) contact visits, and ten (10) video visits. (Ex. B, ¶36).

27. On June 10, 2024, Robinson CI scheduled five (5) contact visits, three (3) non-contact visits, and thirteen (13) video visits. (Ex. B, ¶37).

28. On June 3, 2024, Plaintiff had a video visit with an approved visitor. (Ex. A, 97:13 – 17).

29. Following the Plaintiff's video visit on June 3, 2024, the Plaintiff was strip searched. (Ex. A, 97:18 – 22).

30. On June 10, 2024, Plaintiff had another video visit with an approved visitor. (Ex. A, 110:22 – 25).

31. Following the Plaintiff's video visit on June 10, 2024, the Plaintiff was strip searched. (Ex. A, 111:1 – 5).

32. The officers who conducted the June 3, 2024 and June 10, 2024 strip searches behaved in a professional manner during those interactions with the Plaintiff. (Ex. A, 104:5 – 10; 116:16 – 21; 120:13 – 17).

33. Both the June 3, 2024 and June 10, 2024 strip searches were conducted in a manner consistent with previous strip searches the Plaintiff had undergone. (Ex. A, 117:8 – 12; 118:8 – 11).

34. A.D. 9.6 requires an aggrieved inmate to first seek informal resolution of his issues, in writing, through the use of an Inmate Request Form prior to filing a formal grievance, with a response from an appropriate department head to be made within 15 days. (Att. 1 to Ex. C, p. 6 § 6(a)(i)); (Ex. C, at ¶9).

35. If the inmate is not satisfied with the informal resolution offered, the inmate must file a grievance and attach the Inmate Request Form containing the appropriate staff member's response, among other requirements. The Level 1 Grievance must be filed within 30 days of the incident. (Att. 1 to Ex. C, p. 6 § 6(a)(ii)).

36. Following the Level 1 Grievance, the inmate must file a Level 2 Appeal either (1) within 5 days from the response to the Level 1 Grievance, or (2) within 65

days of the filing of the Level 1 Grievance if no response to that grievance is received. (Att. 1 to Ex. C, p. 7 § 6(b)(ii); Ex. C, at ¶21-22).

37. Following the Level 2 Appeal, the inmate may file a Level-3 Appeal either (1) within 5 days from the response to the Level 2 Appeal that challenges Department level policy or challenges the integrity of the grievance procedure, or (2) within 65 calendar days of the filing of the Level 2 Appeal if no response to that grievance is received within 30 business days. (Att. 1 to Ex. C, p. 8 § 6(b)(iii)).

38. Plaintiff is familiar with the DOC's grievance process. (Ex. A, 124:16 – 18).

39. Between July 1, 2023 to June 30, 2024, Plaintiff filed three (3) Level 1 grievances. (Ex. C, Declaration of ARC Shea, ¶28; Att. 3 to Ex. C).

40. Plaintiff only filed one grievance between June 1, 2024 – June 30, 2024. This grievance is identified as IGP #116-24-150. (Ex. C, ¶28; Att. 3 to Ex. C).

41. IGP #116-24-150 was signed by Plaintiff on June 24, 2024 and alleges that Plaintiff was "twice. . . . strip searched by Officer Starzyk" following video visits. (Att. 3 to Ex. C).

42. IGP #116-24-150 makes no mention of Officer Coggeshall. (Ex. C, ¶30; Ex. A, 129:23 – 25, 130:17 – 20; Att. 3 to Ex. C).

43. On July 18, 2024, IGP #116-24-150 was disposed as rejected with an indication that the "decision [was] not subject to further appeal." (Ex. C, ¶31; Att. 3 to Ex. C).

44. Allowing inmates to have social visits, including video visits, according to the applicable protocols and disciplinary structures in place, is beneficial for the moods of individual inmates and for inmate morale at a prison facility more broadly. (Ex. B, ¶32).

45. Better morale among inmates is beneficial for inmates in the facility, including because it can enhance safety and security, with better morale generally tending to yield less unhappiness and violence at the facility. (Ex. B, ¶33).

*Respectfully submitted,*

DEFENDANTS,

Commissioner Quiros, Warden Caron, Deputy Warden Ogando, Officer Starzyk, and Officer Coggeshall

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ Dennis V. Mancini

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

8

/s/ Owen R. Eagan

Owen R. Eagan (ct31804)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
owen.eagan@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that on June 12, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy was also mailed to the following:

**Courtney Green**
**30 Trowel Street**
**Bridgeport, CT 06607**
**greencourtney542@gmail.com**

*/s/ Dennis V. Mancini*

Dennis V. Mancini
Assistant Attorney General

9