# EXHIBIT B

Declaration of Zelynette Caron

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | JUNE 4, 2025 |
| *Defendants.* | : | |

## <u>DECLARATION OF ZELYNETTE CARON</u>

I, Zelynette Caron, do declare under penalty of perjury that the following information is true and correct and is based upon my personal knowledge:

1. I am over the age of eighteen and believe in the obligations of an oath.

2. I am employed by the Connecticut Department of Correction ("DOC") and currently serve as the Warden at the Robinson Correctional Institution ("Robinson CI"). I have held this position since 2019.

3. I previously served as the Deputy Warden at Osborn Correctional Institution and Robinson CI from October 2017 through April 2019.

4. Robinson CI is a level 3 medium-security facility.

5. Robinson CI consists of dormitories divided into sixteen dorms of varying sizes from a maximum of 32 inmates to a maximum of 110 inmates per side, and a Restricted Housing Unit with 16 cells (32 beds).

6. As a level 3 medium-security facility, Robinson CI is distinct from facilities with higher levels of security in which inmates are housed with fewer cellmates in cells as opposed to secure dormitories and are subject higher levels of monitoring by corrections officers. At Robinson CI, inmates have more freedom to move about

1

the facility during the day and to intermingle than do inmates at facilities with higher levels of security.

7. Robinson CI, in line with standard DOC policy, permits random pat searches of inmates, which can occur at any time, in order to locate contraband that inmates may be hiding on their person in support of safety and security interests.

8. Robinson CI custody staff members, in line with standard DOC policy, conduct random shakedowns of areas in the prison facility, in which correctional officers search through the personal belongings of inmates in order to locate any hidden contraband in support of safety and security interests.

9. Robinson CI custody staff members, in line with standard DOC policy, conducts strip searches of inmates upon their entry to the facility from locations outside of the facility in order to prevent the entry of contraband into the facility in support of safety and security interests.

10. Robinson CI allows social visits, which can be contact visits, non-contact visits, or video only visits, depending on certain criteria, including the inmate's status.

11. All types of social visits at Robinson CI are conducted using the visiting room.

12. Given the layout of the Robinson CI facility, and the number of custody staff at the facility compared to the number of inmates who regularly wish to schedule social visits, there is no area other than the visiting room in which the three types of social visits could be conducted safely and with appropriate protocols.

13. It is my experience as Warden that allowing inmates to have social visits, including video visits, with their loved ones, according to the applicable protocols

2

and disciplinary structures in place, is beneficial for the moods of individual inmates and for inmate morale at a prison facility more broadly.

14. It is my experience as Warden that better morale among inmates is beneficial for inmates living in community in the facility, including because it can enhance safety and security, with better morale generally tending to yield less unhappiness and violence at the facility.

15. In addition to social visits, DCF visits are also conducted in the visiting room.

16. The visiting room is a fairly large space that includes long tables, similar to cafeteria tables but with a low partition running along the middle of them.

17. While in the visiting room at Robinson CI inmates are seated separately but are not physically separated from one another.

18. During contact visits, inmates meet with visitors while sitting across a table in the visiting room. A brief embrace may be permitted between inmates and visitors at the beginning and end of a visit.

19. During non-contact visits, inmates meet with visitors while sitting on either side of a secure glass wall with small sound holes, speaking over a telephone. Members of the public participating in non-contact visits with inmates are seated in the visiting room.

20. During video only visits, inmates meet with their visitors over a laptop from the visiting room. The laptops are placed at intervals along a wall-mounted desk within the visiting room in which contact visits may be taking place, and in which the visitors participating in non-contact visits may also be present.

3

21. Social visits are conducted in groups. Allowing inmates to schedule regular social visits, including video visits, on an individual basis instead would put undue strain on staff resources and prevent other inmates from accessing necessary court proceedings and similar meetings and would also increase wait times for other inmates seeking social visits, thereby limiting inmate access to those visits.

22. Inmate visits can last for a maximum of one hour.

23. Once visits have concluded, inmates are taken to an adjoining, intermediate room where they are strip searched in separate partitions before returning to their housing units.

24. All inmates leaving the visiting room are required to be strip searched because they all visit in the same physical space where members of the public are or have been present and cannot be reasonably separated.

25. If only inmates conducting contact visits were strip-searched, this could allow video visit inmates to obtain contraband from outside visitors or from other inmates.

26. In the past, contraband has been detected in strip searches of inmates returning from the visiting room at Robinson CI, including various illegal drugs as well as a metal ring. Such contraband has been found hidden in inmates' body cavities during strip searches.

27. Sweeps of the visiting room performed by correctional officers at Robinson CI have also detected various forms of contraband that were apparently hidden for inmates to pick up surreptitiously.

4

28. Contraband, including but not limited to illegal drugs, metal objects, or written notes, all of which can be quickly passed or kicked across an open floor and hidden by inmates, pose a safety risk for inmates and staff as well as a security risk for the Robinson CI facility.

29. Among the risks that illegal drugs pose to inmates in entering the Robinson CI facility is the potential for overdoses or other negative reactions.

30. Based on my review of records maintained by the DOC, Courtney Green, inmate number 320094, was housed at Robinson CI from April 28, 2021 until November 19, 2024. A true copy of Mr. Green's DOC movement sheet is contained in Attachment 1.

31. The Department of Correction Inmate Search policy is outlined in Administrative Directive (A.D.) 6.7 *See* Attachment 2, A.D. 6.7.

32. The current version of A.D. 6.7 took effect on January 30, 2024. However, on May 29, 2024, a revision to A.D. 6.7 was approved. This revision added language pertaining to strip-searches for inmates "after entering any public visiting area an inmate has access to." The revised version of A.D. 6.7 was published on June 4, 2024. *See* Attachment 2; Attachment 3, CN1301 - Request for Inclusion or Revision to an Administrative Directive.

33. This revision was made to clarify that facilities must strip search inmates who have video and contact visitation happening in the same area, at the same time, due to access to the public. The purpose of this change was to help limit the introduction of contraband into the facility. *See* Attachment 3.

5

34. In connection with the lawsuit filed by Courtney Green (Inmate #320094), and the Court's Initial Review Order, I have reviewed Robinson CI's visitor logs. *See* Attachment 4, Robinson CI Visitor Logs.

35. On June 3, 2024 and June 10, 2024 Robinson CI allowed inmates to schedule social visits between 6:30 p.m. – 9:30 p.m. *See* Attachment 4.

36. Based on my review of records maintained by the DOC, on June 3, 2024, Robinson CI scheduled thirteen (13) contact visits, and ten (10) video visits between 6:30 p.m. – 9:30 p.m. *See* Attachment 4.

37. Based on my review of records maintained by the DOC, on June 10, 2024, Robinson CI scheduled five (5) contact visits, three (3) non-contact visits, and thirteen (13) video visits between 6:30 p.m. – 9:30 p.m. *See* Attachment 4.

## DECLARATION

I, Zelynette Caron, pursuant to Conn. Gen. Stat. § 1-24 and 28 U.S.C. § 1746, declare under the pains and penalties of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

6/5/25
Date

Zelynette Caron

7

# ATTACHMENT 1
## Courtney Green #320094 – Movement History

```
MOVEMENTS       NUMBER:    320094      NAME:  GREEN,COURTNEY           PAGE    1
FILE:  ROBINSON CI                     MED FILE:  OSBORN CI
                                        DATE    SEQ    LOCATION        JUR STA
DISCHARGED, SENTENCE TIME SERVED       11/19/2024 2  910 D/CHG ALL SNT 910 G
SENTENCE MODIFICATION                  11/19/2024 1  116 ROBINSON CI   116 G
TRANSFER AMONG DOC LOCATIONS            4/28/2021 1  116 ROBINSON CI   116 G
TRANSFER AMONG DOC LOCATIONS           10/21/2016 1  115 OSBORN CI     115 G
TRANSFER AMONG DOC LOCATIONS            3/31/2016 1  137 MCDGL/WLKR CI 137 G
TRANSFER AMONG DOC LOCATIONS            8/08/2014 1  140 CORR/RAD CC   140 G
TRANSFER AMONG DOC LOCATIONS            3/11/2010 1  125 CHESHIRE CI   125 G
TRANSFER AMONG DOC LOCATIONS            2/19/2010 1  114 MCDGL/WLKR CI 114 G
SENTENCED BY COURT                      7/24/2009 1  141 NORTHERN CI   141 G
START SERVING SENTENCE (1+)             7/20/2009 1  141 NORTHERN CI   141 G
TRANSFER AMONG DOC LOCATIONS            4/28/2009 1  141 NORTHERN CI   141 U
TRANSFER AMONG DOC LOCATIONS           12/08/2008 1  123 BRIDGEPORT CC 123 U
TRANSFER AMONG DOC LOCATIONS           11/26/2008 1  114 MCDGL/WLKR CI 114 U
SENTENCE EXPIRED, HOLD ON CT CHARGES    8/28/2008 1  123 BRIDGEPORT CC 123 U
TECHNICAL VIOL OF PAROLE                7/25/2008 1  123 BRIDGEPORT CC 123 G
RELEASE TO SUPERVISED PAROLE            8/28/2006 1  4DN PO-MARQUEZ    4P3 G
RELEASE TO COMMUNITY RELEASE            6/09/2006 1  29E MAPLE STREET  403 G


AG57 12/03/2024   CT DEPT OF CORRECTION - MOVEMENTS - RT60
```

**TRANSACTION:** P/N    **NUMBER:**  00320094                    ENTER FOR NEXT PAGE

```
MOVEMENTS       NUMBER:    320094      NAME:  GREEN,COURTNEY           PAGE   02
FILE:  ROBINSON CI                     MED FILE:  OSBORN CI
                                        DATE    SEQ    LOCATION        JUR STA
TRANSFER AMONG DOC LOCATIONS           10/18/2004 1  135 GATES CI      135 G
TRANSFER AMONG DOC LOCATIONS            9/09/2004 1  114 MCDGL/WLKR CI 114 G
READMISSION W/ SENTENCE GT 1 YEAR       8/31/2004 1  123 BRIDGEPORT CC 123 G
UNSENTENCED DISCHARGE ON BOND           3/27/2004 1  940 DCHG TO BOND  940 U
NEW ENTRY,ACCUSED-CONTINUED             3/26/2004 1  123 BRIDGEPORT CC 123 U
```

```
AG57 12/03/2024   CT DEPT OF CORRECTION - ALL MOVEMENTS-RT60        END
```

**TRANSACTION:** P/N    **NUMBER:**  00320094

Att. 1 to Ex B, Pg., 001

# ATTACHMENT 2
# ADMINISTRATIVE DIRECTIVE 6.7
## Searches Conducted in Correctional Facilities

| State of Connecticut Department of Correction | Directive Number 6.7 | Effective Date 01/30/2024 | Page 1 of 9 |
|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | Supersedes Searches Conducted in Correctional Facilities, Dated 06/29/2018 | | |
| Approved By *[signature]* Commissioner Angel Quiros | Title Searches Conducted in Correctional Facilities | | |

1. **Policy.** The Department of Correction shall maintain safety and security by conducting searches as provided for in this Directive.

2. **Authority and Reference.**
    a. Public Law 108-79, Prison Rape Elimination Act of 2003
    b. 28 C.F.R. 115, Prison Rape Elimination Act National Standards
    c. Connecticut General Statutes, Sections 18-81, 18-81v, and 53a-174 through 53a-174b.
    d. Applicable Case Law.
    e. Administrative Directives 6.2 Facility Post Orders and Logs; 6.5, Use of Force; 6.6, Reporting of Incidents; 6.8, Urinalysis; 6.9, Control of Contraband and Physical Evidence; 6.10, Inmate Property;6.12, Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention, 8.17 Gender Diverse and 10.6, Inmate Visits.

3. **Definitions and Acronyms.** For the purposes stated herein, the following definitions and acronyms apply:
    a. **Authorized Detector/Scanning System.** Any authorized equipment (e.g., BOSS chair, metal detector, etc.) used to scan for, and detect, concealed contraband.
    b. **Body Orifice Scanning System (BOSS Chair).** A scanning system designed to detect metal objects concealed in oral, anal, vaginal cavities or other parts of the body.
    c. **CI.** Correctional Institution.
    d. **Contraband.** An item that falls under the following criteria:
        i. Not authorized to be in any facility, Unit, area, vehicle, or surrounding grounds under the control of or contracted by the Department of Correction or in an inmate's possession;
        ii. that is authorized, but used in an unauthorized or prohibited manner,
        iii. that is authorized, but altered; or,
        iv. that ownership cannot be established.
    e. **Contractor.** A person or organization that agrees to furnish materials or to perform services for the Department. Contractors may include organizations which provide services to the Department without cost. Contractors providing services to the Department are subject to all applicable rules and regulations.
    f. **Controlled Strip-Search.** A strip-search in which Department personnel maintain physical, hands on control of an inmate through the use of restraints or approved restraint techniques for the purposes of safety and security.
    g. **Employee.** For the purposes of this Directive only, an employee shall be a person employed by the Department of Correction or anyone designated by the Commissioner or designee who is allowed unescorted access in a correctional facility.
    h. **General Facility Search.** A planned and systematic search of all areas within and around a correctional facility, including the grounds, parking areas, and employee offices and work areas.
    i. **Internal Medical Device.** For purposes of this directive, the term internal medical device shall include a pacemaker or defibrillator.
    j. **Intersex.** A person whose sexual or reproductive anatomy or chromosomal pattern does not fit typical definitions of male or female. Intersex medical conditions are sometimes referred to as Disorders of Sex Development.

Rev. 2/27/24, 6/4/24

**Att. 2 to Ex B, Pg., 001**

| Directive Number | Effective Date | Page **2** of **9** |
|---|---|---|
| **6.7** | **01/30/2024** | |

| Title |
|---|
| Searches Conducted in Correctional Facilities |

    k. <u>Manual Body Cavity Search.</u> The manual examination of an inmate's mouth, nose, ears and/or genital/rectal areas as provided by Section 8 of this Directive, this shall not include examinations conducted for medical purposes.

    l. <u>Pat Search.</u> A systematic observation and physical inspection, using the hands, of a person while clothed.

    m. <u>PREA.</u> Prison Rape Elimination Act.

    n. <u>Reasonable Suspicion.</u> Judgment based on specific objective facts and reasonable inferences drawn in light of experience, training and education.

    o. <u>Search.</u> Any inspection of a person, area or property.

    p. <u>Strip-Search.</u> A strip-search shall mean a visual body cavity search which includes a systematic visual inspection of an unclothed person's hair, body cavities (to include the individual's ears, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia. This search shall also include a physical search of the clothing and any personal effects.

    q. <u>Temporary Surrender.</u> An inmate admitted to a Department facility under arrest but without a court order, pending arraignment.

    r. <u>Transgender.</u> A person whose identity (i.e., internal sense of feeling male or female) is different from the person's assigned sex at birth.

    s. <u>Visitor.</u> For the purposes of this Directive only, a visitor shall be a person entering a correctional facility who is not an employee, contractor or an inmate.

4. <u>Inmate Pat Searches.</u>

    a. A pat search shall include an inspection of the person's clothing and any item in the person's possession.

    b. A pat search shall be conducted:

        i. On all inmates to be transported outside the facility;

        ii. At the conclusion of all contact visits;

        iii. Preceding a strip-search; or,

        iv. On a random basis to further any correctional purpose.

    c. Reasonable accommodations shall be made to provide for same gender pat searches of female inmates.

        i. When such accommodation cannot be made and a pat search of a female inmate is deemed essential without delay, then a cross gender pat search may be conducted.

        ii. All cross gender pat searches of female inmates shall be documented on CN 6604, Incident Report.

5. <u>Inmate Strip-Searches.</u>

    a. <u>General Guidelines.</u> An inmate strip-search shall normally be conducted in an area out of view of individuals not involved in the search process and shall not normally require physical contact by staff.

        i. All clothing and items in the inmate's possession shall be examined.

        ii. Reasonable accommodations shall be made to provide for same gender strip-searches. When such accommodation cannot be made and the strip-search is deemed to be essential without delay, then a cross gender strip-search shall be conducted.

        iii. All cross gender strip-searches shall be reported on CN 6604, Incident Report, in accordance with Administrative Directive 6.6, Reporting of Incidents.

    b. <u>Strip-Searches When Reasonable Suspicion is not required</u>. A strip-search shall be conducted for the following circumstances:

        i. Upon admission or return of a sentenced inmate, regardless of the offense (to include any inmate incarcerated for a fine), to a Department facility;

        ii. Upon admission or return to a Department facility when an inmate is:

            1. unsentenced, charged with a felony offense; or,

Rev. 2/27/24, 6/4/24

**Att. 2 to Ex B, Pg., 002**

| Directive Number | Effective Date | Page 3 of 9 |
|---|---|---|
| 6.7 | 01/30/2024 | |
| Title | | |
| Searches Conducted in Correctional Facilities | | |

       2. unsentenced, charged with a misdemeanor offense NOT listed on Attachment B, Offenses Requiring Reasonable Suspicion to Conduct a Strip-Search; or,

       3. a violation of probation, temporary surrender or an unsentenced youthful offender charged with a felony or for a misdemeanor offense NOT listed on Attachment B; or,

       4. a remand from the United States Department of Homeland Security (Immigration and Customs Enforcement); or,

       5. a remand from the United States Marshals Service; or,

       6. a temporary confinement of extradition in a third state; or,

       7. a Governor's Warrant detainee.

   iii. Upon readmission to a facility from a halfway house, parole, special parole, transitional supervision or any other community release program.

   iv. Upon inter-facility or out-of-state transfer provided that the inmate is sentenced.

   v. Upon entering and leaving a level 5 facility or a designated level 5 housing unit.

   vi. Upon initial placement in a specialized housing unit, to include the following:

       1. Administrative Segregation;

       2. Chronic Discipline;

       3. Security Risk Group Member;

       4. Medical Inpatient;

       5. Mental Health;

       6. Protective Custody; or,

       7. Restrictive Housing.

   vii. When the inmate has participated in a significant incident during the inmate's current incarceration.

   viii. When submitting a specimen for urinalysis, in accordance with Administrative Directive 6.8, Urinalysis.

   ix. At the conclusion of any contact visit, or after entering any public visiting area.

   x. During a planned general facility search or any other search conducted within a facility other than intake.

   xi. During a facility emergency (i.e., disturbance, hostage situation, etc.).

c. <u>Strip-Searches When Reasonable Suspicion is Required.</u>

   i. Reasonable suspicion in accordance with Attachment A, Strip-Search Decision Tree shall be established prior to conducting a strip-search in the following statuses:

       1. a misdemeanor offense listed on Attachment B; or,

       2. a violation of probation, temporary surrender or a youthful offender charged with a misdemeanor offense listed on Attachment B; or,

       3. an accused civil charge.

   ii. Reasonable suspicion that the inmate is concealing contraband shall be documented on Form CN 6701, Strip-Search Report and forwarded to the Shift Commander or designee for authorization to conduct a strip-search prior to any such search being performed. If reasonable suspicion that the inmate is concealing contraband is not established in accordance with this Directive, the inmate shall not be strip-searched.

       1. Once authorized to conduct a strip search due to reasonable suspicion that the inmate is concealing contraband, a Supervisor shall be present and a video camera continuously operating upon initial contact with the suspected inmate and throughout the strip search process.

       2. A strip search shall be video recorded by a trained operator. The camera shall continuously record the incident and ensure, as reasonably as possible, the inmate's entire body remains in the frame of the recording the duration of the incident.

Rev. 2/27/24, 6/4/24

| Directive Number | Effective Date | Page **4** of **9** |
|---|---|---|
| **6.7** | **01/30/2024** | |

| Title |
|---|
| Searches Conducted in Correctional Facilities |

    d. <u>Identification and Tracking of Minor Misdemeanor Inmates.</u> Upon admission or readmission, the Admissions and Processing Officer or other authorized staff shall review all incoming continuance mittimus/admitting documents to determine if a pretrial inmate is being held solely for a misdemeanor offense(s) listed on Attachment B. If the inmate is being held solely for a misdemeanor offense(s) listed on Attachment B, then CN 6702, Minor Misdemeanant Identification Form shall be completed and an appropriate computer entry made to establish a flag identifying the inmate as a minor misdemeanant. CN 6702, Minor Misdemeanant Identification Form shall be maintained in Section 3 of the inmate's master file. In the event there is a status change based on new charges, information or other relevant reasons, Section 3 of CN 6702, Minor Misdemeanant Identification Form shall be completed to initiate the removal of the flag from the computer screen.

    e. <u>Controlled Strip-Searches.</u> Controlled strip-searches shall be conducted as follows:

        i. <u>Reasons to Conduct Search.</u> Staff may conduct a hands on, controlled strip-search of an inmate:

            1. in the event the inmate refuses to comply with a strip-search as defined in Section 3(P) of this Directive;

            2. for a valid penological reason; or,

            3. when the inmate is confined at any unit designated by the Commissioner to conduct controlled strip-searches.

        ii. <u>Authorization, Observation and Video Documentation of Search.</u> A controlled strip-search shall be authorized and observed by a custody supervisor. When practicable, prior to conducting a controlled strip-search, verbal intervention shall be attempted in accordance with the intervention provisions of Administrative Directive 6.5, Use of Force. If the initial verbal intervention is unsuccessful, the custody supervisor shall summon a video camera, which shall document the final verbal intervention with the inmate, as well as the controlled strip-search.

        iii. <u>Conduct of Search.</u> In order to facilitate a controlled strip-search, the inmate's clothing may be systematically removed manually or removed via medical shears a portion at a time under the direction of the custody supervisor. If the inmate continues to be uncooperative, staff may manually position parts of the inmate's body in order to view all areas of the inmate's body, making every attempt to avoid physical contact with the genitals and rectum. The controlled strip-search shall only seek to observe all areas of the inmate's body to reasonably ensure the safety and security of the public, staff and inmates. Controlled strip searches may only be conducted by persons of the same gender as the inmate being searched.

        iv. <u>Written Documentation of Search.</u>

            1. A controlled strip-search shall be documented utilizing the following forms:

                a. CN 6604, Incident Report;

                b. CN 6501, Use of Force Report; and (when required),

            2. Completed forms shall be submitted to the Shift Commander for review.

            3. The documentation of controlled strip-searches conducted on a routine basis for inmates with an Administrative Segregation or Security Risk Group designation, or upon intake to the Restrictive Housing Unit and the Inpatient Mental Health Unit at Garner CI shall not be required. However, if at these facilities an inmate becomes non-compliant, combative or refuses to follow staff direction during a controlled strip-search, the incident shall be documented in accordance with Administrative Directives 6.5, Use of Force, and Administrative Directive 6.6., Reporting of Incidents.

Rev. 2/27/24, 6/4/24

**Att. 2 to Ex B, Pg., 004**

| Directive Number | Effective Date | Page 5 of 9 |
|---|---|---|
| 6.7 | 01/30/2024 | |
| Title | | |
| Searches Conducted in Correctional Facilities | | |

6. <u>Reasonable Suspicion.</u>
   a. <u>Determining Reasonable Suspicion</u>. Any of the following factors shall be taken into account when determining reasonable suspicion for an inmate strip-search:
      i. The nature of the crime or offense with which an inmate is charged (i.e., is the inmate's charge a felony or a misdemeanor NOT listed on Attachment B);
      ii. The circumstances of the individual's arrest or detention, if known;
      iii. The particular characteristics of the inmate (e.g., physical appearance, behavior, risk for self-harm, past criminal or correctional history, etc.);
      iv. Positive reading from authorized detector/scanning equipment or canine alert;
      v. Informant information in accordance with Section 6(B) of this Directive; or,
      vi. Other facts contributing to suspicion or lack thereof.
   b. <u>Determining Reasonable Suspicion Based on Informant Information.</u> If the information used to determine reasonable suspicion derives from an informant, the following factors should be considered and documented on CN 6604, Incident Report:
      i. The nature of the tip or information;
      ii. The reliability of the informant;
      iii. The degree of corroboration;
      iv. The motivation of the informant to be truthful; and,
      v. Other facts contributing to suspicion or lack thereof.
   c. <u>Posting of Reasonable Suspicion Criteria.</u> A copy of Attachment A and Attachment B shall be laminated and posted at each point of admission and other appropriate areas.

7. <u>Transgender inmates and/or inmates with an Intersexed Related Condition.</u>
   a. Transgender and/or Inmates with an Intersexed Related Condition shall be subject to pat searches and strip searches while under the custody of the Department of Correction.
      i. Supervisors shall select custodial staff members who complete a pat search or strip search on a transgendered inmate and Inmates with an intersex condition in accordance with Administrative 8.17, Gender Diverse.

8. <u>Inmate Manual Body Cavity Search.</u>
   a. An inmate manual body cavity search shall be performed only by a medical professional under the supervision of a licensed physician. An examination conducted for medical purposes shall not be considered a search as it applies to this Directive. In conducting manual body cavity searches, the following guidelines shall be followed:
      i. A manual body cavity search shall be conducted when there is reasonable suspicion that the inmate may be carrying contraband.
      ii. A manual body cavity search of an inmate may only be considered after reasonable, less intrusive measures of recovery of the suspected contraband have been considered or employed as appropriate (e.g., persuasion, self-retrieval, x-ray, expulsion, etc.).
         1. This may include placement in a dry cell or room under direct observation for a minimum of 72 hours if required.
         2. A manual body cavity search shall only be conducted upon approval by the Deputy Commissioner of Operations and Rehabilitative Services.
         3. The Chief Medical Officer or designee shall assign an appropriate health service employee in consultation with the Deputy Commissioner of Operations and Rehabilitative Services to conduct the search.

Rev. 2/27/24, 6/4/24

Att. 2 to Ex B, Pg., 005

| Directive Number<br>6.7 | Effective Date<br>01/30/2024 | Page **6** of **9** |
|---|---|---|
| Title<br>Searches Conducted in Correctional Facilities | | |

    4. A manual body cavity search shall be conducted in a clinical setting (i.e., Health Services Unit or outside hospital).

    5. When custody staff are required to be present, staff members of the same gender shall be utilized unless the inmate has an approved gender diverse management plan. If the inmate has an approved gender diverse management plan, then the supervisor overseeing the search shall make arrangements according to the inmate's preference for gender of custody staff who will be present.

iii. Upon completion of a manual body cavity search, CN 6604, Incident Report shall be completed in accordance with Administrative Directive 6.6, Reporting of Incidents, shall be completed by the custody designee and submitted to the Deputy Commissioner of Operations and Rehabilitative Services stating the reasons for the search, other options which were considered or employed, the individuals present when the search was conducted, and the findings of the search.

    1. In addition, a medical incident report shall be completed by the health service employee conducting the examination and submitted with the original incident report.

9. <u>Visual inspection during medication administration.</u>  A visual inspection of the oral (mouth) cavity by a custody and/or medical staff member shall be conducted when an employee dispenses medication. Oral cavity inspection shall be required prior to and after the inmate ingests any medication.

    a. The inmate shall be required to open the mouth, lift the tongue and move the tongue from side to side.

10. <u>Search by Means of Metal Detectors and Other Authorized Scanning/Detecting Systems.</u> Search by means of metal detectors and other authorized scanner/detecting systems shall be conducted as follows:

    a. During admission, transfer or routine transport of an inmate;

    b. Whenever an inmate is suspected of ingesting or inserting metallic contraband in a body cavity; and,

    c. On a random basis to further any correctional purpose.

        i. If a positive reading is indicated, CN 6701, Strip-Search Report shall be completed and a strip-search conducted in accordance with Section 5 of this Directive.

11. <u>Canine Searches.</u> Canine searches shall be utilized to provide a safe and secure environment for the public, employee and inmates by controlling the introduction, movement and use of contraband. Canine searches shall be utilized as authorized by the Unit Administrator.

12. <u>Non-Inmate Searches.</u> Non-inmates and their property may be subject to searches upon entering the perimeter or grounds of a correctional facility or any other site operated by the Department of Correction, as follows:

    a. <u>Visitors/Contractors.</u> A visitor/contractor shall be required to pass through a metal detector when initially entering the secure area of a correctional facility. In accordance with Section 18-81v of the Connecticut General Statutes, a visitor who activates a walk-through metal detector shall be given the opportunity to submit to a search with a portable or hand-held metal detector in order to gain entrance into the correctional facility. If the visitor consents to a search, such consent shall be documented on CN 100603, Visitor Search Consent Form in accordance with Administrative Directive 10.6, Inmate Visits. When the visitor consents to a search with a portable or hand-held metal detector, the visitor shall be escorted by a correction officer of the same sex to a separate room, restroom or other private location within the correctional facility, where the visitor shall first remove any object or article of clothing that activated the walk-through metal detector and then submit to a portable or

Rev. 2/27/24, 6/4/24

**Att. 2 to Ex B, Pg., 006**

| Directive Number **6.7** | Effective Date **01/30/2024** | Page **7** of **9** |
|---|---|---|
| Title | | |
| Searches Conducted in Correctional Facilities | | |

hand-held metal detector search. If the portable or hand-held metal detector is not activated during such search, the visitor shall be allowed to re-apply the object or article of clothing that activated the walk-through metal detector before exiting the separate room, restroom or other private location where the portable or hand-held metal detector search is conducted and shall be allowed to enter the correctional facility. If the portable or hand-held metal detector is activated during such search or if the visitor refuses to give consent to be searched, the visitor shall be denied access to the facility. Visitors who have an internal medical device and who either activate or cannot pass through a walk-through metal detector, shall NOT be searched with a portable or hand-held metal detector. The visitor may be screened by a pat search if he or she consents. If consent is provided and the pat search completed, a visit may be authorized under the terms and conditions deemed appropriate in the discretion of the Unit Administrator or designee. At all times, the Unit Administrator or designee shall maintain the right to permit, limit or deny a visit in furtherance of the safety and security of the facility. A custody supervisor shall be present, when available, during the pat search of a visitor. Should the visitor refuse to consent to a pat search, the supervisor shall contact the Duty Officer. The Duty Officer shall make the decision as to the status of the visit and the conditions there of.

    b. <u>Employees.</u> An employee, at a minimum, may be required to pass through a metal detector, submit to visual check/inspection of personal belongings brought into the facility to include but not limited to food containers/bags/purses/jackets or submit to a pat search when entering a facility. In addition, an employee may be subject to a strip-search based on reasonable suspicion that the employee is carrying contraband. Such search shall only be authorized by the Unit Administrator or higher authority. An employee and a supervisor of the same gender shall conduct such searches in a private area. Refusal to submit to a search may subject the employee to disciplinary action, up to and including dismissal from state service.

    c. <u>Unauthorized Items.</u> Each facility shall post a list of items that staff may not bring into the secured area of the facility or to any post in accordance with Attachment D, List of Unauthorized Items. A copy of Attachment D, List of Unauthorized Items shall be laminated and posted at each public entrance and staff access point. It shall be the employee's responsibility to seek clarification from a supervisor regarding the introduction of any questionable items into the facility.

13. <u>Vehicle Searches.</u> All vehicles entering facility property are subject to random or routine search with consent. Failure to give consent shall result in denial of access.

    a. <u>Posting and Notification.</u> A sign shall be posted at each facility entrance stating: "You are entering a correctional facility. All visitors and vehicles are subject to search by Department of Correction personnel. It is a crime to convey, pass or causing to be conveyed or passed into this facility any item that is prohibited by Sections 53a-174, 53a-174a and 53a-174b of the Connecticut General Statutes. Violators shall be prosecuted. A list of prohibited items is posted inside."

    b. <u>List of Prohibited Items.</u> A list of prohibited items shall be prominently posted in the lobby area utilizing Attachment C, List of Prohibited Items.

    c. <u>Vehicle Search procedures.</u> Each unit shall develop vehicle search procedures specific to that individual facility and incorporate them into relevant Post Orders, General Post Order Attachments and/or Unit Directives in accordance with Administrative Directive 1.3, Development Revision and Revision of Policies and Procedures, specific to searches conducted on vehicles entering and leaving the secured area of the compound. The facility procedure shall include, but is not limited to, search procedures for Department of Correction vehicles, outside Law Enforcement and contracted service/vendor vehicles.

Rev. 2/27/24, 6/4/24

Att. 2 to Ex B, Pg., 007

| Directive Number | Effective Date | Page 8 of 9 |
|---|---|---|
| 6.7 | 01/30/2024 | |

| Title |
|---|
| Searches Conducted in Correctional Facilities |

14. <u>Facility Searches.</u> Each unit shall develop Unit Directives and a search plan to meet the requirements of this Directive.

    a. <u>General Facility Searches</u>. A general facility search shall be authorized by the Unit Administrator. General facility searches shall be conducted at least annually at Level 2 and 3 security classification facilities and not less than twice each year at Level 4 and not less than three (3) times each calendar year at Level 5 security classification facilities. When a facility search is conducted the entire facility shall be searched prior to returning to normal operations. A copy of the search plan consistent with Attachment E, Reporting Requirements shall be submitted for approval to the District Administrator prior to commencing a general facility search.

    b. <u>Housing Unit/Area Searches.</u> Housing unit and area (e.g., kitchen, industry plants, gymnasium, etc.) searches shall be conducted routinely and periodically as authorized by the Shift Commander.

    c. <u>Cell, Room, Cubicle and Other Housing Area Searches.</u> A search of an inmate's cell, room, cubicle or other housing area shall be conducted by the assigned correction officer as directed by a supervisor or as required by facility policy. If the inmate is present in the cell, room, cubicle or other housing area, the inmate shall be removed and pat searched prior to the cell, room, cubicle or other housing area being searched. Cell, room, cubicle or other housing area searches shall be recorded in the station log and facility log in accordance with Administrative Directive 6.2, Facility Post Orders and Logs. Any time medication, medical equipment and/or medical supplies are confiscated from an inmate or the inmate's living area, said medication, medical equipment and/or medical supplies must be bagged and delivered to the Health Services Unit for review and disposition (i.e., disposal or redistribution).

    d. <u>Employee Work Areas.</u> Areas utilized by employees (e.g., employee offices and rooms, locker rooms, employee lounges, etc.) shall be searched during a general facility search.

    e. <u>Community Contract Agency Searches</u>. The Director of Parole and Community Services or designee shall develop and maintain procedures to conduct a search of each halfway house consistent with this Directive. Such searches shall be conducted annually, at a minimum.

15. <u>Treatment of Religious Articles and Items.</u> All religious articles and religious items, including but not limited to the Holy Bible, the Qur'an, and the Torah, shall be respected by staff and inmates at all times. Religious articles and religious items shall not be carelessly handled by staff when conducting searches or other authorized operational or security activities. Special care shall be taken to respect religious articles and religious items. Religious articles and religious items may be confiscated for cause in accordance with Administrative Directive 6.10, Inmate Property. Any questions or concerns regarding any religious article or item shall be referred to the appropriate chaplain and/or other subject matter expert, as appropriate. Native American medicine bags shall not normally be handled by staff. In cases where a medicine bag and/or its contents require examination by staff, staff shall instruct the inmate possessing the medicine bag to empty its contents on to a surface for inspection.

16. <u>Handling of Contraband and Physical Evidence.</u> All handling, documentation and disposal of contraband and physical evidence shall be in accordance with Administrative Directive 6.9, Control of Contraband and Physical Evidence.

17. <u>Staff Training.</u> Staff whose job classifications may require them to perform pat searches and/or strip searches shall be trained on how to conduct cross gender pat searches and searches of transgender and intersex inmates in a professional and respectful manner, and in the least intrusive manner possible that is consistent with security needs.

Rev. 2/27/24, 6/4/24

Att. 2 to Ex B, Pg., 008

| Directive Number 6.7 | Effective Date 01/30/2024 | Page **9** of **9** |
|---|---|---|

| Title |
|---|
| Searches Conducted in Correctional Facilities |

18. <u>Forms and Attachments.</u> The following forms and attachments are applicable to this Administrative Directive and shall be utilized for the intended function:
    a. CN 6701, Strip-Search Report;
    b. CN 6702, Minor Misdemeanant Identification Form;
    c. Attachment A, Strip-Search Decision Tree;
    d. Attachment B, Offenses Requiring Reasonable Suspicion to Conduct a Strip-Search;
    e. Attachment C, List of Prohibited Items;
    f. Attachment D, List of Unauthorized Items; and
    g. Attachment E, Reporting Requirements.

19. <u>Exceptions.</u> Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

Rev. 2/27/24, 6/4/24

**Att. 2 to Ex B, Pg., 009**

# ATTACHMENT 3

CN1301 - Request for Inclusion or Revision to an Administrative Directive

# Request for Inclusion or Revision to an Administrative Directive

**Connecticut Department of Correction**

CN 1301
REV 06/29/18

| Administrative Directive Number: 6.7 | Title: Searches Conducted in Correctional Facility |
|---|---|

☒ **I recommend the following inclusion or revision to the above referenced Administrative Directive** *(provide detailed explanation regarding reason for change):*

Regarding Administrative Directive 6.7 Searches Conducted in Correctional Facility subsection Strip-Searches when Reasonable Suspicion is not required **(see added language in bold:**

Page 3 Sec B Line ix: At the conclusion of any contact visit **and after entering any public visiting area an inmate has access to.**

Current language in Administrative Directive 6.7 Searches Conducted in a Correctional Facility states at the conclusion of any contact visit. Seeking to include any public area inmates have access to or discretion of unit administrator. Changing this language will allow facilities to enforce strips searches of inmates who have video and contact visitations happening in the same area at the same time due to access to the public. By strip searching all inmates who enter a public access visiting area regardless of contact or video visitation would help limit chances of introduction of contraband.

☐ See attached documents

| ORIGINATOR | | |
|---|---|---|
| Name: Jason Ouellette | Title: Lieutenant | Date: 5-16-24 |
| Signature: | Facility/Unit: Carl Robinson | |

| OFFICE OF STANDARDS AND POLICY REVIEW: | | |
|---|---|---|
| Reviewed by: ☒ | Office of Standards and Policy Staff signature: *Capt. DelPeschio* | Date: 5/16/24 |

| UNIT/DISTRICT/DIVISION RECOMMENDATIONS: | | | |
|---|---|---|---|
| Approved | Denied | | |
| ☒ | ☐ | Unit Administrator's signature: | Date: 5/16/24 |
| ☒ | ☐ | District Administrator's signature: (only needed if originating from facility) | Date: 5/23/24 |
| ☒ | ☐ | Division Administrator's signature: | Date: 5-23-24 |

| COMMISSIONER'S DECISION: | | | | |
|---|---|---|---|---|
| This request is: | ☒ APPROVED | ☐ DENIED | Effective date of request: | |
| ☐ | The language/provisions of this inclusion/revision shall be effective as of and subsequently added to the Administrative Directive at the next update: ___ | | | Date: |
| ☐ | This inclusion/revision shall be added to the Administrative Directive prior to: | | | Date: |
| ☐ | This inclusion/revision shall be added immediately to the Administrative Directive. | | | |
| Commissioner's signature: | | | | Date: 5/29/24 |

**Att. 3 to Ex B, Pg., 001**

# ATTACHMENT 4
# ROBINSON CI VISITOR LOGS



Att. 4 to Ex B, Pg., 001

| WEEKDAY | | SCHEDULE | | | | | | | | | | ROT#3 | DATE | 6/3/2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 min | | | Inmate Name | Inmate Number | Housing Unit | | Visitor # 1 Name | | DOB | Visitor #2 Name | | DOB | Visitor # 3 Name | DOB |
| 6:30PM - 7 | 1 | | | | | | | | | | | | | |
| VIDEO VIS | 2 | | | | | | | | | | | | | |
| 10 SPOTS | 3 | | | | | | | | | | | | | |
| | 4 | | | | | | | | | | | | | |
| | 5 | | | | | | | | | | | | | |
| | 6 | | | | | | | | | | | | | |
| | 7 | | | | | | | | | | | | | |
| | 8 | | | | | | | | | | | | | |
| | 9 | | | | | | | | | | | | | |
| | 10 | | | | | | | | | | | | | |
| 8:00PM -9 | 1 | M███ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | | |
| VIDEO VIS | 2 | W███ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | | |
| 10 SPOTS | 3 | B███ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | | |
| 9A | 4 | Green | 320094 | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | | ████ |
| | 5 | R███ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | | | | | |
| | 6 | F███ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | | | | | |
| | 7 | F███ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | | | | | |
| | 8 | M███ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | | | | | |
| | 9 | F███ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | | | | | |
| | 10 | M███ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | | | | | |
| CLEAN 8:00PM | | | | | | | | | | | | | | |

Att. 4 to Ex B, Pg., 002

# CRCI VISITING ROOM SEATING CHART

DATE 6-10-24 TIME 6:30 - 9:30 SHIFT 2nd

| | |
|---|---|
| 1A | A ████████████ |
| 1B | |
| 2A | M ████████ |
| 2B | |
| 3A | R ████████ |
| 3B | |
| 4A | S ████████ |
| 4B | |
| 5A | |
| 5B | |
| 6A | |
| 6B | |

| | |
|---|---|
| 7A | |
| 7B | |
| 8A | |
| 8B | |
| 9A | |
| 9B | |
| 10A | |
| 10B | |
| 11A | |
| 11B | |
| 12A | |
| 12B | |
| 13A | |
| 13B | |
| 14A | |
| 14B | |
| 15A | S ████████ |
| 15B | |

| | |
|---|---|
| 16A | |
| 16B | |
| 17A | |
| 17B | |
| 18A | |
| 18B | |
| 19A | |
| 19B | |
| 20A | |
| 20B | |
| 21A | |
| 21B | |
| 22A | |
| 22B | |
| 23A | |
| 23B | |
| 24A | |
| 24B | |

## NON-CONTACT VISITS

1. _____
2. D ████████ (4)
3. _____
4. S ████████
5. _____
6. _____
7. C ████████
8. _____
9. _____
10. _____
11. _____

| | |
|---|---|
| 26A | |
| 26B | |
| 27A | |
| 27B | |
| 28A | |
| 28B | |
| 29A | |
| 29B | |
| 30A | |
| 30B | |

| I/M | ADULTS | MINORS | |
|---|---|---|---|
| 8 | 13 | 2 | |
| 8 | 13 | 2 | TOTALS |

REVISED: 12/01/21

C/O _____

Att. 4 to Ex B, Pg., 003

| WEEKDAY | | SCHEDULE | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 min | | | Inmate Name | Inmate Number | Housing Unit | Visitor # 1 Name | DOB | Visitor #2 Name | DOB | Visitor # 3 Name | DOB | ROT#3  DATE  6/10/2024 |
| 6:30PM - 7 | 1 | ▮ | ███ | ██████ | | | | ███ | | | | |
| VIDEO VIS | 2 | D | ███ | | | | | | | | | |
| 10 SPOTS | 3 | G | ███ | | | | | | | | | |
| 8 | 4 | | | | | | | | | | | |
| | 5 | | | | | | | | | | | |
| | 6 | | | | | | | | | | | |
| | 7 | | | | | | | | | | | |
| | 8 | | | | | | | | | | | |
| | 9 | | | | | | | | | | | |
| | 10 | | | | | | | | | | | |
| 8:00PM -9 | 1 | F | ███ | ████ | | | | | | | |
| VIDEO VIS | 2 | H | ███ | | | | | | | | | |
| 10 SPOTS | 3 | V | ███ | | | | | | | | | |
| 9A | 4 | Green | 320094 | | | | | | | | | |
| | 5 | R | ███ | ████ | | | | | | | | |
| | 6 | L | █ | | | | | | | | | |
| | 7 | C | ███ | | | | | | | | | |
| | 8 | B | ███ | | | | | | | | | |
| | 9 | M | ███ | | | | | | | | | |
| | 10 | P | ███ | | | | | | | | | |

CLEAN 8:00PM

Att. 4 to Ex B, Pg., 004