SEP 9 2025 PM 1:35
FILED-USDC-CT-HARTFORD

United States District Court

District of Connecticut

Courtney Green

V

Commissioner Quiros, et al

No. 3:24-CV-01317-VD0

9 , 5 , 25

Plaintiff's Brief In Opposition To Defendant's Summary Judgment Motion

Statement of the case:

This is a 1983 action filed by Courtney Green seeking damages based on invasive / unreasonable searches in violation of his Fourth Amendment rights of the federal constitution by subjecting plaintiff to submit strip searches at conclusion of non - contact video visits absent reasonable suspicion. Defendants Quiros et al have moved for summary judgment as to the plaintiff's claim arguing that (1) their conduct did not violate the plaintiff's Fourth Amendment rights, (2) any strip searches of the plaintiff were conducted for legitimate purposes, (3) the defendants are entitled to qualified immunity because their actions were reasonable and did not violate any clearly established law.

Statement of Facts

On or about June 3, 2024, the plaintiff had a virtual video visit with an approved visitor (Compl. At par 21). Prior to the plaintiff's entry into the visiting room he was pat searched for contraband with negative findings and he was allowed to enter the visiting room. Id. After the one hour time duration for virtual video visits Defendant Starzyk came to the video visit area and announced that video visits were over. (Compl. At par 22). The plaintiff was instructed to line up at the door that leads to the offender holding area. Id. Once through the doors, Defendant Starzky instructed the plaintiff to a semi - partitioned stall where Defendant Starzyk put on a pair of gloves, and the plaintiff raised his arms in the air and turned around to submit to the standard pat search that follows after virtual video visits. (Compl. At par. 24).

1

Defendant Starzyk instructed the plaintiff to turn around, face forward and to remove his clothing piece by piece because he was being strip searched and not pat searched. (Compl. At 25). Strip searches are enunciated in administrative 6.7 section 3, subsection (p). (Compl. At par. 26). The plaintiff expressed his displeasure with Defendant Starzyk regarding strip searches after video visits and how administrative directive 6.7 does not authorize such conduct unto which Defendant Starzyk replied that he's aware that such conduct is not explicated in administrative directive 6.7 but he is just following his post orders. Compl. At par. 27. Defendant Starzyk instructed the plaintiff to address his issues regarding strip searches after virtual video visits with defendant Caron (Compl. At par. 28). Defendant Starzyk instructed the plaintiff again to remove his clothing articles for a visual inspection at his body cavities unto which the plaintiff complied with defendant Starzyk's instructions, got dressed and left without further incident. (Compl. At par. 29). On or about 6 - 7 - 2024, defendants Caron, Ogando toured the plaintiff's housing unit 9A, during this time the plaintiff addressed his concerns with said defendants regarding their policy that requires the plaintiff to submit to strip searches at the conclusion of virtual video visits when no such authority is promulgated in administrative directive 6.7 (Compl. At par. 30). Defendant apprised the plaintiff that they are currently working on changing the language in the directive to incorporate strip searches after non - contact, video visits. (Compl. At par. 31) Defendant Ogando also went on to state defendant Quiros signed off on a request to revise administrative directive 6.7 which will authorize strip searches after non - contact and virtual video visits, Id. The plaintiff replied to defendant Caron by expressing his position regarding the strip search policy after non - contact and video visits and how they lack probable cause and reasonable suspicion. (Compl. At par. 32). Defendant Caron responded to the plaintiff by telling him that" the strip search policy will remain as is, and will continue after non - contact and video visits. Id. On or around 6 - 10 - 2024 the plaintiff had a virtual video visit in Robinson CI's visiting room. (Compl. At par. 33). Upon the plaintiffs arrival in the visiting room he was pat searched with negative findings. And proceeded to his video visit. Id. At the conclusion of the plaintiff's

2

video visit a correctional officer announced recall and the plaintiff evacuated the area without incident. (Compl. At par. 34). When the plaintiff was in the holding area, defendant Coggeshall motioned for the plaintiff to come to him at a partition and the plaintiff complied with his instruction. (Compl. At par. 35). Defendant Coggeshall then instructed the plaintiff to remove his shirt, pants, socks, sneakers, and underwear, and hand said articles to him. Id. The plaintiff expressed his displeasure with defendant Coggeshall's instructions but after a few back and forths the plaintiff removed his clothing and submitted to defendant Coggeshall's direction to comply with a visual inspection of his body. (Compl. At pars. 36 - 37). Administrative directive 6.7 was revised by defendant Quiros to allow inmates to be strip searched at the conclusion of any contact visit, or after entering any public visiting area. (Compl. At pars. 38 - 39). In May of 2024 the plaintiff wrote a letter to defendant Quiros apprising him that defendant Caron instituted a policy that authorizes strip searches on inmates at the conclusion of non - contact and virtual video visits, defendant Quiros did not respond to plaintiff's correspondence the correspondence was forwarded to defendant Caron's office for a reply. (Compl. At par. 40). The plaintiff filed his administrative remedies challenging defendant Caron's policy regarding strip searches at the conclusion of non - contact virtual video visits and how they are unreasonable. (Compl. At 41). The plaintiff exhausted his administrative remedies available to him. (Compl. At par, 10).

A. Summary Judgment Standard

Summary judgement is to be granted only if the record before the court shows "that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law" Fed. R. Civ. P. 56 (a) see Anderson v. Liberty Lobby Inc., 477 U. S. 242, 256 (1986). Cowan v. Breen, 352 F. 3d 756, 760 (2d Cir. 2003). When a court makes a ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the non - moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson, 477 U. S. at 255; Matsu shita Elec. Indus, Co., v. Zenith Radio

3

Corp., 475 U. S. 574, 587 (1986). See also Aldrich v. Randolph Cent. Sch. Dist., 963 F. 2d 520, 523 (2d Cir. 1992) (Court is required to resolve all ambiguities and draw all inference in favor of the non - moving party). Anderson v. Lobby Inc., 477 U. S. 242, 247 (1986). The court may not weigh the evidence even when the court believes such evidence is implausible. See Anderson, 477 U. S. at 249 R. B. Ventures Ltd. v. Shane, 112 F.3d., 54, 58 - 59 (2d Cir 1995) only when reasonable minds could not differ as to the import of the evidence is summary judgment proper. Bryant v. Maffucci 923 F. 2d 979, 982 (2d Cir., 1991). See also Suburban Propane v. Proctor Gas Inc., 953 F.2d 780, 788 (2d Cir. 1992). If the non - moving party submits evidence that is" merely colorable or is not" significant probative" summary judgment may be granted. Anderson, 477 U. S. at 249 - 50. And where one party is proceeding pro se the court interprets the pro se parties paper liberally to raise the strongest argument they suggested. "Suggested. "See Abbas v. Dixon, 480 F.3d 636, (2d Cir., 2007). Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir., 1991). There mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See U. S. v. Diebold Inc., 369 U. S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962); Hawkins v. Steingat, 829 F.2d 317, 319, (1987); Consarc Corp v. Marine Midland Bank, NA., 996 F.2d 568, 572 (2d Cir., 1993). This standard bars the court from resolving disputed issues of facts. If there are material factual issues the court must deny summary judgment. See e.g. Knight v. U. S. Fire Insurance Co., 804 F.2d 9, 11. (2d Cir. 1986)., Cert. denied, 480 U. S. 932, 94 L. Ed 2d 761, 107 S. Ct 1569 (1987).

B. Argument

The Plaintiff Does Establish A Fourth Amendment Violation

"[I]nmates retain a limited right to bodily privacy under the Fourth Amendment. "Harris v. Miller, 818 F. 3d 49, 57 (2d Cir., 2016). "Courts assessing an inmate's claims that officers infringed his

4

or her right to bodily privacy must undertake a two - part inquiry: (1) First the court must determine whether the inmate has exhibited an actual subjective expectation of bodily privacy; and (2) second the court must determine 'whether the prison officials had sufficient justification to intrude on [the inmate's] fourth amendment rights."Id. (quoting Covino v. Patrissi, 967 F.2d 73, 77 - 78 (2d Cir., 1992). When considering the second question, "courts apply one of two separate but overlapping frameworks. "Id. "If the inmate's Fourth Amendment claim challenges a prison regulation or policy, courts typically analyze the claim under Turner v. Safely, 482 U. S. 78 (1987). "Id. "Under Turner the regulation is valid if it is reasonably related to a legitimate penological interests. "Id. at 57 - 58. Courts rely on the four factors discussed in Turner to decide if the regulation is reasonable. Id. (citing Covino, 967 F.2d at 78 - 79 (discussing the Turner factors)). On the other hand, "if the inmates's Fourth Amendment claim challenges an isolated search, courts typically apply the standard set forth in Bell v. Wolfish, 441 U. S. 520 (1979). "Id. Before the court determines whether Turner or Bell applies, it must determine whether the plaintiff had an "actual, subjective expectation of bodily privacy "when he was strip searched see id at 57 and whether "the subjective expectation is one that society is prepared to accept as reasonable. "White v. Doe No. 3:16-CV-01874 (JAM), 2021 WL 4034164, at *4 (D. Conn Sept. 3, 2021) (citing Covino, 967 F.2d at 77 (appropriate inquiry is whether the prisoner "has exhibited a subjective expectation of privacy and whether society is prepared to recognize that expectation of privacy as reasonable")). The strip search that the plaintiff was subjected to required him to lift his testicles, bend, squat and cough while spreading his buttocks. See compl. At par. 36. The plaintiff was also instructed to open his mouth using his hands that he just used to lift his testicles and spread his buttocks at defendant Coggeshall's direction. Id. "[T]here is no dispute that a visual body cavity search is a 'serious invasion of privacy." Velez - Shade v. Population Mgmt. No. 3:18CV1784 (JCH) 2019) WL 467 4767, At*9 (D. Conn. Sept. 2019) (citing Harris, 818 F.3d At 58). Next, the court must determine whether invading the plaintiff's privacy was justified. See Harris, 818 F.3d At 57 (quoting Covino, 967 F.2d At 77 - 78). Here the

plaintiff describes multiple strip searches. See Compl. At par. 41. If the plaintiff's strip search was an isolated incident, the court would analyze the justification for it under Bell v. Wolfish, 441 U. S. At 58 (applying Bell to challenges of an "isolated search"). In this instance the plaintiff's strip searches were conducted under a "routine strip search policy", thus subjecting him to multiple strip searches. (Compl. At par. 41). Since the plaintiff challenges a policy as opposed to an isolated incident the court must analyze the justification for the intrusion under Turner. See Harris, 818 F.3d At 57 (Turner applies to challenges to prison regulations or policy. To the contrary of the defendants position, which is explicated in detail at bottom when applying the Turner test to the facts of this case will show that the searches in question / policy is / was unrelated to a legitimate goal. The defendant's argument that if searches after contact visits are justified then searches after video visits, that co - occur with contact visits would also be constitutionally appropriate, must fail as a matter of law!!

 C. The Plaintiff's Challenge To The DOC Strip Search Policy States A Legitimate Claim As A Matter Of Law.

The Turner Court "listed four factors governing the review of prison regulations".

( i ) Whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it:

( ii ) Whether there are alternate means of exercising the right in question that remain open to prison inmates;

( iii ) Whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards and other inmates, and upon the allocation of prison resources generally; and

( iv ) Whether there are reasonable alternatives available to the prison authorities. "Covino, 967 F.2d At 78 - 79 (citing Turner v. Safely, 482 U. S. 78, 89 - 90 (1987).

"Correctional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies. "Florence

6

v. Bd of Chosen Freeholders, 566 U. S. 318, 322 (2012). Courts in this circuit have thus recognized that there is "a valid, rational connection between a correctional institution's post - classification strip search policy and the legitimate governmental interest of preventing contraband distribution within the correctional institution. "Sassi v. Dutchess Cnty. No. 9;16-CV-1450, 2019 U. S. Dist. Lexis 15387, 2019 WL 401951, At*14 ( N. D. N. Y. Jan. 23, 2019). This is so because a newly arriving inmate can secrete contraband into his body and distribute it to other inmates once inside the facility. See id. The same concerns apply when an inmate has a contact visit. See Block v. Rutherford, 468 U. S. 576, 586 (1984) noting that "[C]ontact visits … open the institution to the introduction of drugs, weapons and other contraband. Visitors can easily conceal guns, knives, drugs, or other contraband in countless ways and pass them to an inmate unnoticed by even the most vigilant observers.") Thus, the Supreme Court has upheld a prison policy of conducting visual body cavity searches after every contact visit with someone from outside the prison see Bell, 441 U. S. at 559 - 60. Nevertheless, the security concerns animating those decisions are not present here. The visits here are by video, not in person. See Compl., at par. 12. Nor does the visitor enter upon Robinson CI's premises for such visits. See Exh. 5 at #9. Thus, the feat of the plaintiff or any other prisoner at Robinson CI who participate in video visits being able to harbor, smuggle contraband into the institution highly unlikely and or improbable. See Compl., at 15. Defendant Starzyk acknowledged that strip searches at the conclusion of video visits are not authorized in administrative directive 6.7. See Compl., at par. 27. Administrative directive 6.7 is the policy that governs strip searches in Connecticut's prisons. See Exh. 3 at #16. Other courts have concluded that strip searches under similar circumstances are unjustified by a legitimate penological interest. See, e.g., Bono v. Saxbe, 620 F.2d 609, 617 (7th Cir. 1980) (observing policy of strip searching prisoners after non - contact visit is not justified by the rationale in Bell, which should not be extended to these searches "without a showing that there is some risk that contraband will be smuggled into [the prison] during non - contact, supervised visits or that

7

some other risk within the prison will be presented."). The defendant's strip search policy at the conclusion of video visits does not serve any legitimate governmental interest The remaining Turner factors are largely inapplicable here. As to "whether there are alternative means of exercising the right in question that remain open to prison inmates. "Covino, 967 F.2d at 78, the right in question" is the Fourth Amendment right to be free from unreasonable searches. If prison officials stop strip searching inmates after video visits, that right would remain respected. The "accommodation of the asserted constitutional right will not have an unreasonable impact upon guards and other inmates or upon the allocation of prison resources generally," id., (bracketed material added) because prison security would still be maintained and correctional officers would expend less time and effort strip searching inmates. And because there would be no further security risk by ending the policy " there are reasonable alternatives available to the prison authorities, in fact the prison would be no worse off if it stopped searching inmates after video visits."[A] strip search is unconstitutional if its is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish. "Jean - Laurent v. Wilkers on, 438 F. Supp. 2d 318, 323 (S. D.N.Y. 2006), aff'd, 461 F. app'x 18 (2d Cir. 2012) citing (Covino, 967 F.2d at 80 (citation omitted; Hodges v. Stanley 712 F. 2d at 34, 35 - 36 (2d Cir 1983) (second strip search performed soon after first strip search served no legitimate interest when prisoner was under continuous escort); Bono, 620 F.2d at 617). The defendant's argument that the plaintiff's challenge to the DOC strip search policy misses the mark. To begin, when the plaintiff was strip searched by defendant Starzyk at the conclusion of video visits on 6/3/24, the DOC did not have this policy in place via their administrative directive 6.7 that would warrant said action by Defendant Starzyk. See. Exh. 19 at 013 (ix). Defendant Starzyk's written policies required him to strip search inmates after contact visits where reasonable suspicion is not required. See Exh. 19 at 012 - 013. Nevertheless, defendant Starzk did not establish reasonable suspicion explicated in DOC policy as he should have done prior to strip searching the plaintiff. See Exh. 19 at 013 (cii). To add insult to injury, Defendant Starzyk is familiar with administrative directive 6.7. See

8

Exh. 9 at #3. Next, the defendants spend a considerable amount of time justifying the DOC strip policy; what the defendants' fail to realize is that the plaintiff had a reasonable expectation of limited bodily privacy even while in prison. The fourth amendment "protects" individual privacy against certain kinds of governmental intrusion...and it is well established that its protections extend to prisoners." Holland v. City of NY, No. 14-5517, F.3d, 2016 WL 3636249, at *7 (S.D.N.Y. June 24, 2016) (quoting Katz v. U. S. 389 U. S. 347 350 (1967) "The test of reasonableness, under the Fourth Amendment is not capable of precise definition or mechanical application" and each case" requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. "Bell, 441 U. S. at 559. Simply put, administrative directive 6.7 directs when prisoners can be strip searched when reasonable suspicion is not required and after video visits is not one. See Exh. 19 at 012 - 013. Administrative directive 6.7 gets its authority and reference from applicable case law. See Exh. 19 at :011 (d). In this instance, the applicable case law relevant here is Bell v. Wolfish, 441 U.S. at 558 - 560 (holding that inmates may be routinely strip, frisked after contact visits; but they may not be strip frisked after non - contact visits. Wherefore, the DOC strip search policy was / is violative of the Fourth Amendment's prohibition of unreasonable searches and seizure.

    D.  The Searches Conducted By Defendants Starzyk and Coggeshall Were Violative Under The Fourth Amendment.

In the previous section, the plaintiff outlined how the defendant's policy of strip searching the plaintiff after non - contact video visits serves no legitimate governmental interest under the Turner factors and it's an over exaggerated response... Nonetheless, the plaintiff invites the court to analyze the strip search conducted by Defendant Starzyk under the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979), because technically speaking, there was no policy or regulation in place under administrative directive 6.7 that required Defendant Starzyk to strip search the plaintiff at the conclusion of a video  visit on 6/3/24. See Exh. 19 at 012 - 013 ( ix ). That said, Defendant Starzyk's strip search of the plaintiff should be analyzed as an isolated

search, for all we know, based upon the evidence put forth in Exh. 19 at 013 ( ix ) Defendant Starzyk may have taken it upon himself to strip search the plaintiff without reasonable suspicion a day before the revised version of administrative directive 6.7 went into effect. See Exh. 11 at 0074 ( ix ). In Bell v. Wolfish, 441 U.S. at 588 - 60, the Supreme Court held that routine visual body cavity searches of a pre-trial detainee conducted after a contact visit by someone from outside the prison did not violate the detainees fourth amendment rights, even in the absence of either probable cause or reasonable suspicion that the detainee possessed contraband. Similarly so, other courts have taken the same approach in protecting prisoners from unreasonable searches. See also; Hurley v. Ward, 549 F. Supp. 174, 186 (S.D.N.Y. 1982) (J, Carter concluded that strip searches after contact visits were permissible, but that in "all other circumstances" body cavity searches absent some level of cause were deemed unreasonable Id. see also Bono v. Saxbe, 620 F. 2d 609, 617' (7th Cir. 1980) Bell did not approve of strip searches after non - contact visits absent some showing of particularized suspicion). Interestingly so, the defendants rely on Bono v. Saxbe, 527 F. Supp. 1182 (S.D.Ill. 1980). In support of their position to justify the need for strip searches after non - contact video visits. In Bono, 527 F. Supp. 1182 (S.D.Ill.1980) those inmates were not under constant observation whereas the plaintiff was under constant observation during video visits. See Compl., at par. 17.Next, there is no evidence adduced that the video visit booths are handled by inmate orderlies who would secrete contraband at these booths for other inmates nor is the plexi-glass in the visiting room compromised to enable an inmate to recover such contraband. In furtherance as to illustrate how the facts of this case are inapposite from Bono, 527. In Bono, 527, those inmates visitors were actually present in that prison, that is not the case here. In this instance when the plaintiff had his non - contact video visits(s), his visitors did not enter the premises of Robinson Ci's. See Compl. At par., 15. Even more interesting is that Defendant Caron acknowledges that prisoners can't receive contraband from their visitors during video visits see exh., 3 #20. This concession by Defendant Caron further evinces that their rationale

for performing strip searches on prisoners at the conclusion of video visits defy logic and are unreasonable. Also, the defendant's argument continue to miss their mark by illustrating how the plaintiff did not proffer that his strip searches were cross - gender searches; they were standard visual cavity searches that did not include any contact by the defendants. See (Doc. 1 at 5 - 8). And, since the plaintiff stated that the strip searches at Robinson CI take place within separate partitions adjacent to the visiting room. (Defs. local rule 56 (a) (1) St., at par. (15). True indeed there was no contact from the defendants, there was not a cross - gender search however during the plaintiff's strip search, other officers and prisoners who were not involved in the strip search process were able to see him in the nude because of insufficient partitions. See Compl., at par(s) 36 - 37. As to the strip search conducted by Defendant Coggeshall which was based upon a prison policy so the factors explicated in Turner v. Safely, 482 U.S. 78, 89 - 90 (1987) are applicable here. The four Turner factors already discussed in the previous section of this brief describe how the plaintiff was required to lift his testicles and bend, squat and cough while spreading his buttocks. See compl., at par., 36. This is the type of strip search plaintiff was subjected to by Defendant Coggeshall on 6/10/2024. See exh., 7 #22. "[T]here is no dispute that a visual body cavity search is a serious invasion of privacy. "Velez - Shade v. Population Mgmt. No. 3:18 CV 1784 ( JCH ), 2019 WL 467 *9 (D. Conn. Sept. 25, 2019) (citing Harris, 818, F. 3d at 58). Further justifying why defendant Coggeshall's strip search of the plaintiff was unlawful is (1). Staff directs inmates to sit at specific computers during video visits. See exh. 7 #16; therefore, it becomes even more improbable for a prisoner to try to collude with another prisoner to stash contraband for another prisoner to receive. (2) Nothing in Defendant Coggeshall's manual Administrative Direct 6.7) directed him to strip search the plaintiff at the conclusion of his video visit. See exh. 31 at p. 003 ( ix ). The central teaching of this matter is strip searches on prisoners who have contact visits with people from outside the facility are reasonable not prisoners who have contact with other prisoners. Hence, prisoners have contact with other prisoners throughout the prison (i.e. gym, chow hall, library, school) and they aren't strip

searched because of those interactions, nor during their interactions with teachers (from outside the facility) unless reasonable suspicion is established. See Hurley v. Ward, 549. F. Supp.174 (1982) (routine strip frisk searches may be required after contact visits by prisoners, but such routine searches are unreasonable and unjustified under all other circumstances).; see also Bell v. Wolfish, 441 U. S. 520 (1979) ( up holding on penological and institutional safety grounds, suspicionless visual body cavity searches of inmates following contact visits. Also noted in Hodges v. Stanley, 712 F.2d 34 (1983); Morgan v. Ward, 699 F. Supp. 1025 (1988) was the clear holding of both cases, which is a redundant or wholly unnecessary strip frisk is presumptively unreasonable. See also Hurley v. Ward, 584 F. 2d 609 ( 2d Cir., 1978). In sum, when analyzing the facts of this case and under the circumstances in which the plaintiff was strip searched, namely after non - contact video visits, when either applying the Bell factors or Turner factors in this instant offense, Defendants Starzyk and Coggeshall's strip search on the plaintiff does not pass constitutional muster

II.    The Defendants Are Not Entitled To Qualified Immunity

The defendants are not entitled to qualified immunity. Defendant Quiros did not have involvement in any of the strip searches plaintiff was subjected to however Defendant Quiros created the unconstitutional policy that subjected the plaintiff to the unreasonable searches at the conclusion non - contact video visits. See Tangreti v. Bachmann 983 F. 3d 609 ( 2d Cir., 2020 ) (quoting Ashcroff v. Iqbal, 556 U. S. 662 ( 2009) ( holding that a policy maker / senior official who promulgated an unconstitutional policy with a culpable mental state is more directly and personally involved in the constitutional violation, As to the remaining defendants, there is credible evidence that they all violated the constitution. Moreover it was clearly established that creating a blanket policy of strip searches following the conclusion of non - contact visits was per se unreasonable. No matter how the defendants try to spin it, their argument that an inmate participating in video visits may be able to obtain contraband from a visitor participating in a contact visit, such notion is a farce! The doctrine of qualified immunity shields police officers

acting in their official capacity from suits for damages under 42 U. S. C. 1983, unless their actions violates clearly established rights, of which an objectively reasonable official should have known. See Harlow v. Fitzgerald 457 U. S. 800, 818, 73 L. Ed. 2d 996, 102 S. ct. 2727 ( 1982 ); Ricciuti v. N. Y. C. Transit Authority, 124 F. 3d 123, 127 ( 2d Cir., 1997 ). This policy is justified in part by the risk of the "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties". Anderson v. Creighton, 483 U. S. 635, 638, 97 L. Ed. 2d 523 107 S. ct. 3034 ( 1987 ). Overcoming qualified immunity entails a two part process. First, a plaintiff must allege the violation of a clearly established constitutional right or statutory right, second, qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated the established right. See Rodriguez v. Conas, 888 F. 2d 899, 901 ( 1st Cir., 1989 ); see also Ashcroft v. Al kidd 563 U. S. 131 S. ct. 2074, 2080 ( 2011 ). In measuring "reasonableness", a court should consider the facts and circumstances of each particular case, including the crime committed its severity, the threat of danger to the officer and society; and whether the suspect is resisting arrest or attempting to evade arrest. See Graham v. Connor 490 U. S. 386, 396 ( 1989 ). Courts also acknowledge that police officers are often forced to make split - second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation. "Id at 397. The objective reasonableness is met and the defendant is entitled to immunity if officers or reasonable competence could disagree 'on the legality of the defendants actions. "Lennon v. Miller, 66 F. 3d 416, 420 ( 2d Cir., 1995 ) ( quoting Malley v. Briggs, 475 U. S. 335, 341, 89 L. Ed. 2d 271, 106 S. ct. 1092 ( 1986 ). Although the second step reasonableness inquiry requires a focus on the particular facts of a given case, a defendant is entitled to summary judgment on qualified immunity grounds when "no reasonable jury looking at the evidence in the light most favorable to and drawing all inferences most favorable, to the plaintiff, could conclude that it was objectively unreasonable for the defendants to believe that they were acting in a fashion that did not clearly violate established federally protected rights. Id.

( quoting Robinson, v. Via, 821 F. 2d 913, 921 ( 2d Cir., 1987). Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness. See 66 F. 3d at 420, 421. See also Hemphill, 141 F. 3d at 416 - 18. A L Kidd 563 U. S. at 131 S. ct.,at 2083 ( quoting Anderson v. Creighton, 483 U. S. 635, 640 ( 1987 ).

As to Defendant Caron

In this instant offense, it was apparent by 6/3/2024 that the plaintiff had a right to be protected against unreasonable searches and seizures by the government. See Const. Amend IV (stating that people shall be secure in their persons against unreasonable searches and seizures). Graham, 490 U. S. at 394 - 95. Defendant Caron was the Warden at Robinson CI during relevant times. See exh., 3 # 1. In February of 2024 defendant Caron stated that a memo was put out reminding staff of the importance of conducting strip searches at the conclusion of video visits. See exh., 4 # 23. The problem that lies, was that this policy went outside the scope of her administrative directive 6.7 which is the policy that governs strip searches. See exh., 3 # 16. At the time in question administrative directive only permitted strip searches at the conclusion of contact visits. See exh., 19 at 012 - 013. Nonetheless, even after the plaintiff writes a grievance apprising defendant Caron that strip searches after video visits not only contravene administrative directive 6.7 and the supreme courts in Bell v. Wolfish, 441 U. S. 520 ( 1979 ). See exh., 16 at 002 - 003. Instead of rectifying the situation defendant Caron gives an elaborate explanation justifying her policy, See Tangreti v. Bachmann, 983 F. 3d 609 ( 2d cir., 2020 ) (quoting Ashcroft v. Iqbal, 556 U. S. 662 ( 2009 ) ( holding that a policy maker / senior official who promulgated an unconstitutional policy is more directly and personally involved in the constitutional violation. See also Charles v. Maul, 214 F. 3d 350 ( 2d cir., 2000 ) (higher ranking officials are held to a higher standard of legal knowledge than their subordinates. Given that defendant Caron knew what administrative directive 6.7 and Bell v. Wolfish, 441, U. S. connoted

it was not "objectively reasonable" for her to mandate strip searches after video visits knowing that inmates can't receive contraband from their visitors during video visits. See exh., 3 # 20.

As to Defendant Quiros

Defendant Quiros has been the Chief Executive officer for 5yrs. See exh., 2 # 1. One of defendant Quiros' duties is to administer, control, coordinate, and establish rules for the administrative practices. See exh., 24. Nonetheless defendant Quiros did establish impermissible rules that went from prisoner being strip searched at the conclusion of contact visits; see exh., 19 at 013 ( ix ), which is in line with Bell, 441 U. S. 520, to prisoners being strip searched upon what is now recognized as a public visiting area. See exh., 31 at 003 ( ix ). Hence, Robinson CI's visiting room turned to a public visiting area in a matter of months in all of the years of the facilities existence!  This slight revision to administrative directive covertly allowed for plaintiff to be strip searched at the conclusion of video visits. See comp., at par. 39. Further establishing that defendant Quiros accused in the new strip search policy evidenced by exh., 21, where plaintiff response letter was forwarded to defendant Caron for a response, but Caron's response given was prospectively as to what the revision of administrative directive would read on 6/4/2024. See 31 at 001; 003 ( ix). It was apparent by May 30, 2024, that prisoners retain "a limited constitutional right of bodily privacy even in the prison context". Covino v. Patrissi, 967 F. 2d 73, 77 ( 2d cir., 19920. " Prisons are not beyond the reach of the constitution. No 'iron curtain' separates one from the other…Indeed, we have insisted that prisoners be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with objectives of incarceration. See Willis v. Artuz, 301 F. 3d 65, 67 ( 2d cir., 2002 ) accord Hudson v. Palmer, 468 U. S. 523. " Policy makers / senior officials who promulgated an unconstitutional policy is more directly and personally involved in the constitutional violation. See Tangreti v. Bachmann, 983 F. 3d 609 ( 2d cir., 2020 ). See also Charles v. Maul, 214 F. 3d 350 ( 2d cir., 2000 ) ( holding that higher ranking officials are held to a higher standard of legal knowledge than their subordinates.

As to Defendant Ogando

Defendant Ogando was the Deputy Warden of operations during relevant times. See exh.,5 #1. Ogando was charged with overseeing the operations at Robinson CI. See exh., 5 #2. Some of Defendant Ogando's duties require him to oversee staff, operations of custody and security. See exh. 27 :0056. More examples of Defendant Ogando's duties require him to ensure enforcement of agency and institution rules and regulation; interprets and administers pertinent laws. See exh. 27 0057. In March of 2024, the plaintiff wrote an inmate request regarding strip searches at the conclusion of video visits to non defendant, Deputy Warden, Carbone, only to be apprised that the plaintiff was writing to the wrong Deputy Warden and it is defendant Ogando who oversees corrections officers who are strip searching plaintiff after video visits. See exh. 15. It was apparent by March of 2024 that prisoners retain " a limited constitutional right of bodily privacy even in the prison context. " Covino v. Patrissi, 967 F. 2d 73, 77 (2d cir., 1992 ) " see also Tangreti v. Bachmann, 983 F. 3d 609 ( 2d cir., 2020 ) ( holding that policy makers senior officials who promulgated an unconstitutional policy is more directly and personally involved in the constitutional violation; see also Charles v. Maul, 214 F. 3d 350 ( 2d cir., 2000 ) ( holding that higher ranking officials are held to a higher standard of legal knowledge than their subordinates. Further illustrating Defendant Ogando's culpability was his tour of 9A housing the unit the plaintiff was housed in. See compl., at par. 30. During this tour the plaintiff and Defendant Ogando spoke and the plaintiff reminded him that " nothing in administrative directive 6.7 promulgates the use of strip searches following video visits. See compl., at par. 30. Defendant Ogando was aware of this. See compl., par. 31. Even more telling is Defendant Ogando's belief that strip searching inmates at the conclusion of video visits on 6-3-2024 was related to a legitimated penological goal. See exh. 6 # 20. Administrative directive did not encompass strip searches following video visits on 6-3-2024. See compl., at par. 27. Next the defendants argue that legal research reveals no Second Circuit Authority prohibits strip searches following mixed contact and video visits at Robinson CI. This argument fails as a matter of law. Legal research

16

reveals that a redundant or wholly unnecessary strip frisk is presumptively unreasonable. See Hurley v. Ward, 584 F. 2d 609 ( 2d cir., 1978 ); Hodges v. Stanley 712 F. 2d 34 ( 1983 ). Even more compelling were the defendants strip policy administrative directive 6.7 that is congruent with the holding in Bell v. Wolfish, 441 U. S. 520 ( 1979 ) ( upholding on penological and institutional safety grounds, suspicionless visual body cavity searches of inmates following contact visits. See also exh. 19, ;012 - 013. As noted in the previous section, the plaintiff and Defendants Starzyk, Coggeshall offer different versions as of what transpired on 6-3-24, 6-10,24 as to their conduct and manner, in which they strip searched the plaintiff in. Defendants Starzyk, Coggeshall did not put any defense on the disputed material facts that implicate their reasonableness of their strip search of the plaintiff when reasonable suspicion was required before doing such, instead they argue in their motion for summary judgment that their strip search of the plaintiff was related to legitimate security concerns. Here the plaintiff alleges that Defendants Starzky, Coggeshall strip searched the plaintiff after non - contact video visits without first establishing reasonable suspicion, which not only contravenes administrative directive 6.7 and the holding of Bell v. Wolfish, 441 U. S. 520 ( 1979 ). However, it is basic principle that once a defendant asserting qualified immunity has agreed to be bound by the plaintiff's version of facts. Therefore the reasonableness of the strip searches conducted by Defendant's Starzyk, Coggeshall at the conclusion of non - contact video visits remain a material fact in dispute and this court should deny the defendants qualified immunity and summary judgment on the qualified immunity grounds should be denied. See Hemphill, 141 F. 3d at 416 - 18.

III.    The Plaintiff Properly Exhausted His Administrative Remedies.

"Section 1997 e ( a ) provides: ' no act shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. "Ross v. Blake, 136 S. ct. 1850, 1856 ( 2016 ); The supreme court has held that inmates must

17

exhaust administrative remedies before filing any type of action " about prison life. See Porter v. Nussle, 534 U. S. at 532, regardless of whether or not the inmate may obtain specific relief he or she desires through the administrative process. See Booth v. Churner, 532 U. S.  731 741 ( 2001 ). An inmate who fails to file an administrative grievance may not bring the claim in federal court. Adekoya v. Fed. Bureau of Prisons, 375 F. App'x 119, 121 ( 2d cir., Apr. 29, 2010 ). It is undisputed that  the plaintiff was incarcerated when he brought his lawsuit challenging the prisons strip search practice at Robinson CI. It is also undisputed that the plaintiff exhausted his administrative remedies see exh. 18: 00 at : 007. The defendants notion that the plaintiff did not exhaust his administrative remedies are flat out absurd. Nevertheless, the single grievance that the plaintiff filed that only names Defendant Starzky is sufficient under the exhaustion requirement, because Ct. State prisons do not require a prisoner to identify any individual. See exh. 30 at 006 ( ii ). Thus, the requirement imposed in identifying an individual is to the staff member that the informal resolution was addressed to. See Id, and in doing so to fulfill the requirement, the plaintiff described how he wrote to Captain Martinez on 6-12-24 regarding strip searches following the conclusion of virtual video visits. See exh. 20 at :018 - 019. " When the grievance procedure do not require prisoners to identify the individual responsible for alleged misconduct, neither does PLRA for exhaustion purpose. See Jones, 549 U. S. at 218. However, interesting is the defendant's reliance on Sanchez v. Bell, No. 3:22-CV-1087 ( SVN ), 2024 U. S. Dist. Lexis 23064, at * 14 - * 15 ( D. Conn. Feb. 9, 2024), which does them no favors at all! In Bell: " To properly exhaust a claim. "A prisoner must allege facts sufficient to alert corrections officials to the nature of the claim, and provide enough information about the conduct at issue to allow prison officials to take appropriate responsive measures." Singh v. Lunch, 460 F. App'x 45, 47 ( 2d cir., 2012 ) ( summary order ) ( cleaned up ) ( quoting Johnson v. Testman, 380 F. 3d 691 697 ( 2d cir., 2004 ). If a plaintiff does not provide such description or notice, correction officials are not afforded the "opportunity to address complaints internally, "which congress has required before a plaintiff can pursue a federal case. Porter v. Nussle, 534 U. S. 516, 525 ( 2002 ). Here,

18

the plaintiff has exhausted his administrative remedies, as he was not required to identify Defendant Starzyk. See exh. 20 at :018 - 019.

IV.   Conclusion

For the foregoing reasons stated above, the court should deny the defendant's motion for summary judgment as to all the claims, as there remain material fact in dispute regarding the plaintiff's unreasonable search claims.

The following documents are attached as exhibits:

Exhibit 1: Def. Quiros Adm. Response.

Exhibit 2: Def. Quiros Interrogatorie Response.

Exhibit 3: Def. Caron Adm Response.

Exhibit 4: Def. Caron Interrogatorie Response.

Exhibit 5: Def. Ogando Adm. Response.

Exhibit 6: Def. Ogando Interrogatorie Response.

Exhibit 7: Def. Coggehall Adm. Response.

Exhibit 8: Def. Coggeshall Interrogatorie Response.

Exhibit 9: Def. Starzyk Adm. Response.

Exhibit 10: Def. Starzkyk Interrogatorie Response.

Exhibit 11: Bates stamp:0072 - 0080.

Exhibit 12: Bates stamp: 0081 - 0088

Exhibit 13: Bates stamp: 0070.

Exhibit 14: Bates stamp:0071.

Exhibit 15: Bates stamp: 004.

Exhibit 16: Bates stamp: 002 - 003.

Exhibit 17: Bates stamp: 005 - 006.

Exhibit 18: Bates stamp: 007 - 010.

Exhibit 19: Bates stamp: 011 - 016.

Exhibit 20: Bates stamp: 018 - 019.

Exhibit 21: Letter Dated May 30, 2024.

Exhibit 22: Bates stamp: 0070 - 0071.

Exhibit 23: Bates stamp: 0068 - 0069.

Exhibit 24: Bates stamp: 0051

Exhibit 25: Bates stamp: 0052 - 0053

Exhibit 26: Bates stamp: 0001 - 0002.

Exhibit 27: Bates stamp: 0056 - 0059.

Exhibit 28: Bates stamp: 0060 - 0063.

Exhibit 29: Bates stamp: 0064 - 0067.

Exhibit 30 Administrative Directive 9.6 pg 001 - 012.

Exhibit 31 Administrative Directive 6.7 Revised