

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | APRIL 9, 2025 |
| *Defendants.* | : | |

## DEFENDANT COMMISSIONER QUIROS RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS DATED MARCH 10, 2025

The defendant Commissioner Quiros hereby responds to Plaintiff's Request for Admissions dated March 10, 2025, as follows:

1. You were the commissioner of correction on June 6, 2024.

   **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

2. Your statutory authority is outlined in section 18-81 of Conn. General Statutes.

   **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

3. Plaintiff wrote you a letter in May of 2024.

   **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent plaintiff requests authentication of documents not within defendant's possession, custody, or control.

   **Response:** Notwithstanding and without waiving the foregoing objection: Quiros cannot admit or deny whether the plaintiff wrote a letter in May of

2024, despite reasonable inquiry the information known or presently available to the defendant is insufficient to render an admission or denial.

4. As commissioner of correction you promulgated the Administrative Directives.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the terms utilized are undefined, vague, ambiguous, and not limited in time or scope.

Response: Notwithstanding and without waiving the foregoing objection: **Admit in part.** Some Administrative Directives were promulgated by other commissioners.

5. You revised Administrative Directive 6.7 that went into effect on January 30, 2024.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the terms utilized are undefined, vague, and ambiguous.

Response: Notwithstanding and without waiving the foregoing objection: **Admit.**

6. Administrative Directive 6.7 does not mention that inmates are to be strip searched at the commencement of video visits.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

7. Administrative Directive 6.7 does mention that inmates are to be strip searched at the conclusion of contact visits.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

8. Defendant Caron was your subordinate during relevant times to this action.

   **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit Warden Caron was the unit administrator of Robinson CI at the times alleged in the complaint. Admit the Commissioner of Correction is the administrative head of the department and is responsible for the overall supervision and direction of all institutions, facilities, and activities of the department.**

9. Defendant Ogando was your subordinate during relevant times to this action.

   **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit Deputy Warden Ogando reported to the unit administrator at the times alleged in the complaint. Admit the Commissioner of Correction is the administrative head of the department and is responsible for the overall supervision and direction of all institutions, facilities, and activities of the department.**

10. Prisoner's maintain rights even while incarcerated.

    **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: Quiros cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

11. You have some legal knowledge.

    **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the term "some legal knowledge" is vague, ambiguous, and overbroad in scope.

3

**Response:** Notwithstanding and without waiving the foregoing objection: Quiros cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

12. Prisoner's who participate in video visits do not have contact with visitors from outside the facility.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the term "video visit" is undefined. Additionally, the request is otherwise vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: **Deny.**

13. You authorized prisoner's to be strip searched at the conclusion of video visits at Robinson CI.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Denied as phrased.** AD 6.7 mandates that a strip search shall be conducted after entering any public visit area. This may include areas with multiple inmates conducting "video visits".

14. Contact visits are the most likely source of how contraband is smuggled in Connecticut prisons.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects on the basis the request is overly broad, vague, and ambiguous; that the request solicits speculation; and on the basis the request seeks information regarding facilities not at issue in this action.

**Response:** Quiros stands on his objection.

15. Administrative directives are meant to be adhered by all department of correction employees.

4

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects on the basis the request is overly broad, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: It is admitted that Administrative Directives reflect the policy of the Department of Correction.

16. Administrative directive 6.7 does not mention that prisoner's are to be strip searched at the commencement of non - contact visits.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

17. Inmate Administrative Remedies that challenge department level policy are subject to level 3 review.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

18. You were the inmate administrative remedies level 3 reviewer as commissioner of correction.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part.** Level 3 review shall be made by the commissioner or his designee.

19. Attached CN9604 bearing IGP#116 - 24 - 105 is an authentic copy.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

20. Attached grievance bearing IGP#116 -24 105 challenged departmental policy regarding strip searches.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

21. Prisoner's maintain the right to limited bodily privacy while incarcerated.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects on the basis the request is overly broad, vague, ambiguous, and calls for speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: Quiros cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

22. You're familiar with the term "Reasonable Suspicion.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects on the basis the request is overly broad, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

23. You were aware of the policy at Robinson CI where prisoners were strip searched at the conclusion of non - contact visits.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects on the basis the request is overly broad, in that it is not limited in time, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: It is admitted that Administrative Directive 6.7 mandates a strip search after an inmate enters any public visiting area.

24. You were aware of the policy at Robinson CI where prisoner's were strip searched at the conclusion of video visits.

    **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects on the basis the request is overly broad, in that it is not limited in time, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: It is admitted that Administrative Directive 6.7 mandates a strip search after an inmate enters any public visiting area.

25. Video visits are conducted by utilizing a laptop, tablet, or mobile device with video capabilities.

    **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects on the basis the request is overly broad, vague, ambiguous and solicits speculation.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part. Video visits are conducted using laptops.**

 

 

DEFENDANTS
Commissioner Quiros, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*
      Dennis V. Mancini (ct30239)
      Assistant Attorney General
      State of Connecticut
      Office of the Attorney General
      165 Capitol Avenue
      Hartford, CT 06106
      E-Mail: dennis.mancini@ct.gov
      Tel: (860) 808-5450
      Fax: (860) 808-5591

7

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 9th day of April 2025:

> Courtney Green
> 30 Trowel Street
> Bridgeport, CT 06607
> greencourtney542@gmail.com

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General

8



| | Inmate Grievance Appeal Form - Level 2<br>Connecticut Department of Correction | CN 9604<br>REV<br>04/30/2021 |
|---|---|---|

| Inmate name: Courtney Green | | Inmate number: 320094 |
|---|---|---|
| Facility/Unit: Robinson CI | Housing unit: 9A-110 | Date: 4-5-2024 |
| IGP number: IIC-24-105 | | |

### Inmate Acknowledgement

- o Use this form to appeal a CN 9602, Inmate Grievance Form- Level 1.
- o When submitting this form, the following must be included for processing:
  - o All original documentation for prior resolution (e.g. Initial CN 9601, Inmate Request form; CN 9602, Inmate Grievance Form Level 1; etc.).
- o NOTE:
  - o Your appeal must be filed within five (5) calendar days of the Level 1 response and deposited in the "Administrative Remedies" box within the institution. A level 2 shall be rejected if all documentation from the level 1 response is not included.

### Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because: The level 1 response is erroneous. To begin this remedy challenges Departmental-level policy And is subject to level 3 review. See A.D. 9.C Sec. III. sub. sec. I, paragraph. a. Needless to say that A.D.C.7 which is promulgated by Comsr Quiros does Not mention or authorize strip searches At the conclusion of Non-contact/video visits. Nor does UA Caron cite to Any section of A.D. C.7

Inmate signature: CH                                   Date: 4-5-2024

### FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW

| Date received: 4/12/2024 | Disposition: Denied | Date of disposition: 4/18/2024 |
|---|---|---|

Reasons:

*You are appealing a level one grievance (116-24-105) regarding strip searches after a video visit at Robinson CI. The response provided by Warden Caron to your level 1 grievance was thorough and appropriate. Therefore, your grievance is denied.*

| Level 2 reviewer print name: *Washington* | Title: *District Administrator* |
|---|---|
| Level 2 reviewer signature: | Date: *4/18/2024* |

☐ This grievance may be appealed within five (5) Calendar days to Level 3.

☑ This decision is not subject to further appeal.

to justify her institute of a blanket policy of routine strip searches after video visits. Moreover, UA Carons' justification for instituting strip searches after video visits, where UA Caron relies/cites "Reasonable Suspicion", which she clearly misinterprets. "Reasonable Suspicion", an objectively judgment based on specific objective facts and reasonable inference drawn in light of experience, training and education. See A.D. C.7 Sec.3, sub. Sec N. Given, it is inconceivable for one to smuggle contraband through a video visit. Nor are their specific facts that prove otherwise. Since UA Caron cites "reasonable suspicion that means strip search reports have been generated (A.D. C.7 (C) II, which has not, and that "Reasonable Suspicion" has been determined in accord with A.D. C.7 (6) a 1 - C.7 (C). Which also has not, Carons' policy fails!

Lastly, Bell v. Wolfish, 441 U.S. 520 (1979) outlines that strip searches are be justified after contact visits not non-contact, wherefore their will be no qualified immunity defense. The Directives are useless if they aren't followed by Administrators and might as well be discared. For all the above stated reasons and cited Authority, I respectfully move for the level 2 reviewer to adhere to A.D. 1.3 Section 3, paragraph a, and reverse UA Carons' routine strip search policy after non-contact video visits.



EXH. 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | JUNE 6, 2025 |
| *Defendants.* | : | |

## DEFENDANT COMMISSIONER QUIROS RESPONSES TO PLAINTIFF'S

## REQUEST FOR INTERROGATORIES DATED APRIL 29, 2025

The defendant Commissioner Quiros hereby responds to Plaintiff's Request for interrogatories dated April 29, 2025[1], as follows:

1. How long have you been commissioner of correction for?

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: Approximately five (5) years.

2. Please identify the official (s) who are policy makers at Robinson.

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "policy makers" is vague and ambiguous. Finally, this request is duplicative of a previous request, not limited in time and scope, and unduly burdensome. See 26(b)(2)(C)(i).

3. Is Defendant Caron a policy maker at Robinson CI?

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "policy maker" is vague and ambiguous. Finally, this request is duplicative of a previous request. See 26(b)(2)(C)(i).

---

[1] Plaintiff's interrogatories were received on May 6, 2025.

4. Is Defendant Ogando a policy maker at Robinson CI?

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "policy maker" is vague and ambiguous. Finally, this request is duplicative of a previous request. See 26(b)(2)(C)(i).

5. Do you possess any knowledge of the law?

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "knowledge" is vague and ambiguous. Finally, this request is duplicative of a previous request. See 26(b)(2)(C)(i).

6. Please describe in as much detail as possible what was the subject matter being challenged in attached CN9604 bearing IGP number 116-24-105.

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, Quiros objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff executed a global release on or about April 24, 2024. Pursuant to that release all "*all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind*" were released as of the date of that agreement.

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

7. Is It true that attached CN9604 bearing IGP number 116-24-105 should have been subjected to level 3 review? If the answer is yes, no further explanation is needed, if the answer no, please expound as to your reasoning(s) why.

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, Quiros objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff executed a global release on or about April 24, 2024. Pursuant to that release all "*all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind*" were released as of the date of that agreement.

2

8. Have you been apprised of a case called Bell v Wolfish, 771 U.S. 520 (1979)?

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "Have you been apprised" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

9. Is it true that inmates retain some rights even while incarcerated?

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "some rights" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

10. Please explain why did you revise Administrative Directive 6.7 mandating that inmates be strip searched after entering any public visiting area.

    **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). In addition, this request is vague in that it is not limited in time and scope. See 26(b)(2)(C)(i).

    **Response:** Notwithstanding and without waiving the foregoing objection: To the extent Plaintiff refers to the revision approved on May 29, 2024, that change was made to limit and/or prevent introduction, dissemination, or distribution of contraband within correctional facilities.

11. Do you believe that requiring inmates, per Administrative Directive 6.7 submit to being strip searched at the conclusion of video visits is reasonably related to a legitimate penological goal? If your answer is yes, please explain how it is reasonably related to a legitimate penological goal; if your answer is no, then no further explanation is needed.

    **Part A:**
    **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Furthermore, the terms "reasonably related" and "legitimate penological goal" are vague and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Yes.**

    **Part B:**

3

**Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Furthermore, the terms "reasonably related" and "legitimate penological goal" are vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Under circumstances where there are video and contact visitations occurring in a public visiting area, or multiple video visits occurring in the same area, conducting a strip search before the inmates leave the public visiting area (e.g., visiting center) is reasonably related to the legitimate penological goal of limiting introduction, dissemination, or distribution of contraband within correctional facilities.

12. Please identify the document attached, dated May 30, 2024, as the term is defined in

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Furthermore, this question is vague and ambiguous because no document was attached, and the phrase "as the term is defined in" is an incomplete sentence rendering a response impossible.

**Plaintiff's interrogatory requests did not include a number 13.**

14. Please explain in as much detail as possible why it's not specified that inmates are required to submit to strip searches at the conclusion of video visits non or contact visits in Administrative Directive 6.7 section 5 (b), ix.

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Further, the term "as much detail as possible" is vague and ambiguous. Finally, the specific version of the Administrative Directive being asked about is unclear and thus ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: The current directive mandates a strip search be conducted after entering any public visiting area an inmate has access to. Thus, a strip search shall be conducted if a video visit or non-contact visit occurs in a public visiting area accessible to other inmates.

15. Are inmates currently strip searched at the conclusion of video visits? If the answer is yes then no further explanation is needed, if your answer is no,

4

please explain when the practice of strip searching inmates at the conclusion of video visits ceased.

**Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this interrogatory is not reasonably calculated to lead to discovery of admissible evidence and is therefore improper.

16. State the date in which video visits were incorporated within correctional facilities as another option for social visits.

**Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this interrogatory is not reasonably calculated to lead to discovery of admissible evidence and is therefore improper.

17. Who's custody was the plaintiff in on 6/3/2024, 6/10/24?

**Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: State of Connecticut, Department of Correction. The plaintiff was incarcerated in Carl Robinson CI on June 3, 2024 and June 10, 2024.

18. As Commissioner of Correction, do you ensure that inmates constitutional rights are protected?

**Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "protected" is vague, ambiguous, and not reasonably calculated to lead to discovery of admissible evidence.

19. Based upon your knowledge and experience, please explain the most likely source of how contraband is conveyed into a correctional facility during a visit; i.e., contact, non contact, or video visit.

**Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "most likely source" is vague, ambiguous, and not reasonably calculated to lead to discovery of admissible evidence.

20. Please state the date when the policy went into effect requiring inmates to submit to strip searches at the conclusion of video visits.

5

**Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this interrogatory is not reasonably calculated to lead to discovery of admissible evidence and is therefore improper.

21. When the plaintiff was strip searched on 6/3/2024, 6/10/2024 at the conclusion of video visits, do you believe that such strip searches were reasonably related to a legitimate penological goal.

**Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, Defendant Quiros was not present, nor is it alleged that he was present, at the time of any searches and would therefore be unable to provide a response to this interrogatory.

22. Based upon your knowledge and experience, do you believe that inmates can receive contraband through a computer screen during a video visit.

**Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this question is not reasonably calculated to lead to discovery of admissible evidence and is therefore improper. Quiros also objects to this request because it mischaracterizes relevant facts.

DEFENDANTS
Commissioner Quiros, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

6

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 6th day of June 2025:

    Courtney Green
    30 Trowel Street
    Bridgeport, CT 06607
    greencourtney542@gmail.com

                /s/ Dennis V. Mancini

                Dennis V. Mancini
                Assistant Attorney General



# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | APRIL 9, 2025 |
| *Defendants.* | : | |

## DEFENDANT WARDEN CARON RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS DATED MARCH 10, 2025

The defendant Warden Caron hereby responds to Plaintiff's Request for Admissions dated March 10, 2025, as follows:

1.  You were the Warden / Unit Administrator at Robinson CI during relevant times to this litigation.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

2.  Your statutory authority is outlined in section 18-7 of Conn. General Statutes.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

3.  Attached CN 9602 I GP #116-24-150 bearing DW Carbones' signature is an authentic copy.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial

4. Attached letter dated May 30, 2024 is an authentic copy.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

5. Attached CN 9602 I GP #116-24-105 bearing your signature is an authentic copy.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

6. Attached CN 9604 I GP #116-24-105 bearing District Administrator Washingtons' signature is an authentic copy.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial.

7. You're a policy maker at Robinson CI.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial.

2

8. You toured 9A housing unit on 6-7-2024.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial.

9. Plaintiff has been housed in 9A housing unit since April of 2021.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial.

10. Prisoner's maintain rights even while incarcerated.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial.

11. Prisoner's at Robinson CI are accorded virtual video visits.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, ambiguous, and not limited in time or scope.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

3

12. Video visits are conducted by utilizing a laptop, tablet or mobile device with video capabilities.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, ambiguous, and not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part. Video visits are conducted using laptops.**

13. Prisoner's who participate in video visits do not have contact with visitors from outside the facility.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the term "video visits" is undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: **Deny.**

14. Prisoner's who participate in video visits at Robinson CI are strip searched at the commencement of said visits.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms "video visits" and "said visits" are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Deny.**

15. You direct all staff, programs, and operations at Robinson CI.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial

16. Administrative Directive 6.7 is the policy that governs strip searches in Connecticut's prisons.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

17. Administrative Directive 6.7 does not mention that inmates will be strip searched at the conclusion of video visits.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

18. Administrative Directive 6.7 does mention that inmates will be strip searched at the conclusion of contact visits.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

19. Contact visits are the most likely source of how contraband is smuggled into Robinson CI.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects on the basis the request is overly broad, vague, ambiguous, and solicits speculation.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part.** The visiting room is one of the most likely sources of how contraband is smuggled into the facility.

20. Prisoner's can't receive contraband from their visitors during a video visit.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to

5

the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

21. Prisoner's who participate in non-contact visits are strip searched at the commencement of said visits.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: **Deny.**

22. Post orders instruct staff working visits to strip search inmates at the commencement of video visits.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: **Deny.**

23. You're familiar with term "Reasonable Suspicion" enunciated in Administrative Directive 6.7.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

24. Prisoner's at Robinson CI were not always strip searched at the conclusion of video visits.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, ambiguous, and not limited in time or scope.

6

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part.** When the visiting center was not open to the public, strip searches were not being conducted for video visits.

> DEFENDANTS
> Commissioner Quiros, et al.
>
> WILLIAM TONG
> ATTORNEY GENERAL
>
> BY: /s/ Dennis V. Mancini
>
> Dennis V. Mancini (ct30239)
> Assistant Attorney General
> State of Connecticut
> Office of the Attorney General
> 165 Capitol Avenue
> Hartford, CT 06106
> E-Mail: dennis.mancini@ct.gov
> Tel: (860) 808-5450
> Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 9th day of April 2025:

Courtney Green
30 Trowel Street
Bridgeport, CT 06607
greencourtney542@gmail.com

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General



# Inmate Grievance Form- Level 1
## Connecticut Department of Correction

CN 9602
REV
04/30/2021

Facility/Unit: Robinson CI

Date: 6-24-2024

Inmate name: Courtney Green

Inmate number: 320094

### INMATE ADVISEMENT

- Any inmate who files a grievance must follow all instructions in Section 5 and 6 of Administrative Directive 9.6, "Inmate Administrative Remedies."
- Any grievance which does not follow the instructions identified in the above mentioned sections shall be rejected.

### STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

ON 6-12-24 I wrote A CN 9601 to CAPTAIN MARTINEZ explaining to her that twice on second shift, I was strip searched by off-icer STArzyx following the conclusion of A Virtual Vidro Visit And when I Asked officer STArzxy which section(s) of

Inmate signature: CG

Date: 6-24-2024

- Deposit this form in the "Administrative Remedies" box .

### DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

| Date Received: | *06-26-2024* | IGP #: | *116-24-150* |
|---|---|---|---|

| Disposition: | *Rejected* | Date of Disposition: | *07-18-2024* |
|---|---|---|---|

Reason:
You have filed a Level I grievance at the Carl Robinson Correctional Institution in regards to strip searches after video visits. As outlined in AD 9.6 "Any repetitive request for an administrative remedy filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response shall be rejected". This is a repetitive request for remedy, as a response has been provided (116-24-105). Therefore, this grievance is rejected.

☒ This decision is not subject to further appeal.

☐ This matter may be appealed within 5 calendar days.

Staff Name Print: Alan Cadore

Signature: _____

Date: 7/18/24

Administrative Directive 6.7 authorizes strip searches following virtual video visits unto which officer Starzyk replied, "I'm just doing what is instructed of me and following my post orders."

On 6-20-2024 this writer saw Captain Marti- nez, who acknowledged receipt of my CN 9601 and she addressed the contents of my CN 9601 in person, so it wasn't given back to me so that's why CN 9601 is not attached. In short, Captain Martinez assured me that officer Starzyk was following orders as instructed and that strip searches after virtual video visits will continue which this writer clearly understands. My issue is that the "Caron" Administration has prospectively implement- ed strip searches at the conclusion of virtual video visits before any such revision to A.D. 6.7 has passed legal clearance to permit said strip searches.

The action that I think should happen is for the "Caron" Administration to adhere to applicable case law. See A.D. 6.7 section 2(d) which is Bell v. Wolfish, 141 U.S. at 558-560; that established that inmates may be routinely strip frisked after contact visits, but they may not be strip frisked after non- contact visits. See Bell at 559.



STATE OF CONNECTICUT
**DEPARTMENT OF CORRECTION**
**Carl Robinson Correctional Institution**
**285 SHAKER ROAD**
**ENFIELD, CONNECTICUT  06082**

TO:       I/M GREEN 320094

FROM:    Warden's Office

DATE:    May 30, 2024

SUBJECT:   Correspondence Received

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This correspondence is in response to the correspondence received in the Commissioner's office, which has been forwarded to this office for a reply.

In accordance to: _Administrative Directive 6.7 (b)(ix)_: _Strip Searches when Reasonable Suspicion is not required. A strip search shall be conducted for the following circumstances: (ix) At the conclusion of any contact visit,_ **or** _after entering any public visiting area._

The response received on your CN 9602 Inmate grievance is in accordance to A. D. 6.7 (b)(ix).

You are encouraged to remain Disciplinary Report Free, and reach out to your Counselor with any other questions.

Thank you.

CC:    I/M  GREENE 320094
       File
       Commissioner's Office

_An Equal Opportunity Employer_



## Inmate Grievance Form- Level 1
### Connecticut Department of Correction

CN 9602
REV
04/30/2021

| Facility/Unit: CRCI | Date: March 25, 2024 |
|---|---|
| Inmate name: Courtney Green | Inmate number: 320094 |

### INMATE ADVISEMENT

- Any inmate who files a grievance must follow all instructions in Section 5 and 6 of Administrative Directive 9.6, "Inmate Administrative Remedies."
- Any grievance which does not follow the instructions identified in the above mentioned sections shall be rejected.

### STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

I'm grieving Attached CN 9601 that's stamped DW's Office, so DW Ogando has constructive Knowledge of Attached CN 9601 Nrd it's contents, Morrover DW Ogando is fully AWArc of the practicc of the strip scarches being conducted At the conclusion of videovists. ON 3-15-24 (C/O Stewart strip seached MC), ON 3-23-24 (C/O langolis

Inmate signature: CG

Date: March 25, 2024

- Deposit this form in the "Administrative Remedies" box.

### DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

| Date Received: 03-25-2024 | IGP #: 116-24-105 |
|---|---|

| Disposition: Denied | Date of Disposition: 04-03-2024 |
|---|---|

Reason:

*You have filed a Level One Grievance regarding strip searches at the conclusion of visits at Robinson Correctional Institution. In an effort to allow the maximum amount of visits, with the limited space available, to the facility population, all Inmates share the same waiting area/ holding bullpen in the Visiting Center. Due to the close contact of all Inmates who are in the Visiting Center for their visits (Contact/Non-Contact/Video), there is reasonable suspicion for the use of strip searches to ensure the safety and security of the facility and the Inmate population it houses. Your grievance is denied.*

☐ This decision is not subject to further appeal.  ☑ This matter may be appealed within 5 calendar days.

Staff Name Print: Kander Cann

Signature: Nanzi Cann    Date: 4/15/24

strip searched me after conclusions of video visits, And the problem is that such practice is an unreasonable search, And violates A.D.C.7. Resolution requested is to cease the unreasonable searches, they are unconstitutional, As the Supreme Court's decision in Bell v. Wolfish, 441 U.S. 520 (1979), outlines when strip searches on prisoners Are permissible And after non-contact visits misses it's mark.



## Inmate Grievance Appeal Form - Level 2
### Connecticut Department of Correction

CN 9604
REV
04/30/2021

| Inmate name: Courtney Treen | | Inmate number: 320094 |
| Facility/Unit: Robinson CI | Housing unit: 9A-110 | Date: 4-5-2024 |
| IGP number: 11C-24-105 | | |

---

### Inmate Acknowledgement

o    Use this form to appeal a CN 9602, Inmate Grievance Form- Level 1.
o    When submitting this form, the following must be included for processing:
    o    All original documentation for prior resolution (e.g. Initial CN 9601, Inmate Request form; CN 9602, Inmate Grievance Form Level 1; etc.).
o    NOTE:
    o    Your appeal must be filed within five (5) calendar days of the Level 1 response and deposited in the "Administrative Remedies" box within the institution. A level 2 shall be rejected if all documentation from the level 1 response is not included.

---

### Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because: The level 1 response is erroneous To begin this remedy challenges Departmental-level policy And is subject to level 3 review. See A.D. 9.C Sec. III sub. sec. I. PARAgraph. a. Needless to say that A.D. C.7 which is promulgated by Comsr Quiros does Not mention reference or authorize strip searches At the conclusion of NoN-cont-Act / video Visits. Nor does UA CAron cite to ANy section of A.D. C.7

Inmate signature: CT                                    Date: 4-5-2024

---

FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW

| Date received: 4/12/2024 | Disposition: Denied | Date of disposition: 4/18/2024 |

Reasons:

*You are appealing a level one grievance (116-24-105) regarding strip searches after a video visit at Robinson CI. The response provided by Warden Caron to your level 1 grievance was thorough and appropriate. Therefore, your grievance is denied.*

| Level 2 reviewer print name: *Washington* | Title: *District Administrator* |
| Level 2 reviewer signature: | Date: *4/18/2024* |

☐ This grievance may be appealed within five (5) Calendar days to Level 3.

☑ This decision is not subject to further appeal.

to justify her institute of a blanket policy of routine strip searches after video visits. Moreover, UA Carons' justification for instituting strip searches after video visits, where UA Caron relies/cites "Reasonable Suspicion", which she clearly misinterprets. "Reasonable Suspicion"; An objectively judgment based on specific objective facts and reasonable inference drawn in light of experience, training and education. See A.D.C.7 Sec. 3, Sub. Sec. N. "Given", it is inconceivable for one to smuggle contraband through a video visit Nor are their specific facts that prove otherwise. Since UA Caron cites "reasonable suspicion" that means strip search reports have been generated (A.D.C.7 (C) II, which has not, and that "Reasonable Suspicion" has been determined in accord with A.D.C.7 (G) a 1-C.7 (C). which also has not, Carons' policy fails!

Lastly, Bell v. Wolfish, 441 U.S. 520 (1979) outlines that strip searches are not justified after contact visits not non-contact, wherefore their will be no qualified immunity defense. The Directives are useless if they aren't followed by Administrators and might as well be discared. For all the above stated reasons And cited Authority, I respectfully move for the level 2 reviewer to Adhere to A.D. 1.3 Section 3. paragraph a. And reverse UA Carons' routine strip search policy after Non-contact video visits.



Exh. 4

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | JUNE 6, 2025 |
| *Defendants.* | : | |

## DEFENDANT WARDEN CARON RESPONSES TO PLAINTIFF'S REQUEST

## FOR INTERROGATORIES RECEIVED ON MAY 6, 2025.

The defendant Warden Caron hereby responds to Plaintiff's Request for interrogatories received on May 6, 2025[1], as follows:

1.  How long have you been a Warden for at Robinson CI.

    **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: I have been a Warden at CRCI for 6 years.

2.  State verbatim what the visit room post order read that was in effect on 6-3-24.

    **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this request is duplicative of a previous request. See 26(b)(2)(C)(i). Caron also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence, would jeopardize the safety or security of the defendants, and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

3.  3.Identify all individual(s) responsible for formulating the visiting room post order that was in effect on 6-3-2024.

    **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "formulating" is vague and ambiguous. Caron also objects to this request

---

[1] The date on Plaintiff's interrogatory directed to Warden Caron is illegible.

because it is duplicative of previous discovery requests and therefore unduly burdensome.

4. Please identify all officials responsible for formulating and implementing policies at Robinson CI.

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the terms "formulating" and "implementing" are vague and ambiguous. Caron also objects to this request because it is duplicative of a previous request, overly broad, and not limited in time and scope.

5. Is it true that inmates retain some rights even while incarcerated?

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it is duplicative of a previous request.

6. Identify the official(s) responsible for directing all staff at Robinson CI.

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the terms "formulating" and "implementing" are vague and ambiguous. Caron also objects to this request because it is duplicative, overly broad, not limited in time and scope, and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

7. Are you familiar with the term "Reasonable Suspicion"?  If the answer is yes, please explain what "Reasonable Suspicion is.

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it is duplicative of a previous request.

8. Identify the official(s) who implemented the policy of strip searching inmates at the conclusion of video visits on 3-15-2-24 at Robinson CI.

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). See 26(b)(2)(C)(i). Caron also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff executed a global release on or about April 24, 2024. Pursuant to that release all "*all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind*" were released as of the date of that agreement. Finally,

2

Caron objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

9. As of even date, are inmates strip searched at the conclusion of video visits? If the answer is yes, no response is needed, if the answer is no, explain when inmates stopped being strip searched at the conclusion of video visits.

Part 1:
**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

Part 2:
**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

10. Based upon your knowledge and experience, please explain how an inmate participating in a video visit can obtain contraband from the visitor.

**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it is not limited in time, and mischaracterizes relevant facts.

11. Have you been apprised of a case called Bell v Wolfish, 771 U.S. 520 (1979) on

**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "Have you been apprised" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

**Plaintiff's interrogatory requests did not include numbers 12 & 13.**

14. In video preserved under export C177 visit room at approximately 03:17 up to 03:35, is it true that the area depicted is where inmates embrace their visitors at the beginning and end of contact visits?

**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

3

**Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

15. Please describe in as much detail as possible, what is the purpose of a post order.

**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: Post orders are detailed written instructions that outline specific duties and responsibility to the post that the individual is assigned to.

16. When the plaintiff was strip searched on 6/3/2024, 6/10/2024 at the conclusion of a video visit, were the strip searches reasonably related to a legitimate penological goal? If the answer is yes, please explain how.

**Part 1:**
**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, Defendant Caron was not present, nor is it alleged that she was present, at the time of any searches and would therefore be unable to provide a response to this interrogatory.

**Part 2:**
**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, Defendant Caron was not present, nor is it alleged that she was present, at the time of any searches and would therefore be unable to provide a response to this interrogatory.

17. It is true that Administrative Directive 1.3 section 22 c, i11 reads: other post order may be developed and implemented at the discretion of the Unit Administrator.

**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

18. Identify who the Unit Administrator is a Robinson Ci.

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it is vague and ambiguous in that it is not limited in time or scope and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

   **Response:** Notwithstanding and without waiving the foregoing objection: Assuming the plaintiff is referring to the current unit administrator, Warden Caron

19. Identify the official responsible for ensuring that the Unit Directives are created at Robinson CI.

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it is vague and ambiguous in that it is not limited in time or scope and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

   **Response:** Notwithstanding and without waiving the foregoing objection: Assuming the plaintiff is referring to the current process, the Unit Administration in collaboration with line supervisors discuss the detailed duties and post and also take into consideration the safety of the staff, the population and public.

20. Is it true that Administrative Directive 6.2 paragraph 4 a. reads. The purpose of the post and the duties and procedures to be followed on a daily basis to include emergency response requirement.

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

21. Please state the date in which the plaintiff was last found guilty of a disciplinary report.

    **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

    **Response:** Notwithstanding and without waiving the foregoing objection: I am unsure when the plaintiff received a disciplinary report. **[Attorney response]** DOC records indicate that Plaintiff's most recent DR was a "Contraband Class A" from Northern CI dated April 29, 2009.

22. Do you possess any knowledge of the law:

    **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

23. Please state the date when the policy went into effect requiring inmates to submit to strip searches at the conclusion of video visits in 2024 at Robinson CI.

    **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). See 26(b)(2)(C)(i). Caron also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff executed a global release on or about April 24, 2024. Pursuant to that release all "*all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind*" were released as of the date of that agreement. Finally, Caron objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

    Response: Notwithstanding and without waiving the foregoing objection: A notice was put out on 2/16/2024 reminding staff of the importance of conducting strip searched at the conclusion of visits in the visiting room to prevent any contraband entering the facility.

                                        DEFENDANTS
                                        Commissioner Quiros, et al.

                                        WILLIAM TONG
                                        ATTORNEY GENERAL

6



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | APRIL 9, 2025 |
| *Defendants.* | : | |

## DEFENDANT DEPUTY WARDEN OGANDO RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS DATED MARCH 9, 2025

The defendant Deputy Warden Ogando hereby responds to Plaintiff's Request for Admissions dated March 9, 2025, as follows:

1. You were the Deputy Warden of operations at Robinson CI during relevant times to this litigation.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

2. You were responsible for overseeing operations at Robinson CI during relevant times to this litigation.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

3. You're a policy maker at Robinson CI.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

4.  You toured 9A housing unit on 6 - 7 - 24.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

5.  You were responsible for overseeing custody staff at Robinson CI during relevant times to this litigation.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

6.  Plaintiff was housed in 9A on 6 - 7 -2024.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

7.  Prisoner's maintain rights even while incarcerated.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

    **Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

8. Prisoners at Robinson CI are accorded video visits.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

9. Visitors who participate in video visits do not enter Robinson CI premises to do so.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

10. Prisoner's who participate in video visits were strip searched at the commencement on 3 - 15 - 2024.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

11. Post orders instructed staff working visits to strip search prisoners at the commencement on 3 - 15 - 2024.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

12. You're familiar with Administrative Directive 6.7.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

13. Attached CN 9601 dated 3-16- 2024 was sent to you.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

14. Administrative Directive 6.7 does not mention, reference that prisoners are to to be strip searched at the conclusion of video visits.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

15. Administrative Directive 6.7 does mention that prisoner's are to be strip searched at the conclusion of contact visits.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

16. You were responsible for overseeing security at Robinson CI during relevant times to this litigation.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

4

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

17. The strip search policies at Robinson CI concerning video visits were in accordance with relevant court decisions on 3 - 15 - 2024.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the term "relevant court decisions" is undefined. Additionally, the request is otherwise vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

18. You're familiar with the term reasonable suspicion "enunciated" in Administrative Directive 6.7.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

19. Prisoners who participate in video visits do not have contact with visitors from outside the facility.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

5

20. You instituted the policy at Robinson CI that prisoner's were to be strip searched at the conclusion of video visits in February of 2024.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

21. Contact visits are the most likely source of how contraband is smuggled into Robinson CI.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part.** The visiting room is one of the most likely sources of how contraband is smuggled into the facility.

22. Prisoner's can't receive contraband through a computer screen during a video visit.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

23. One of your duties as Deputy Warden of operations require you to interpret and administer pertinent laws.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the term "pertinent laws" is undefined. Additionally, the request is otherwise vague and ambiguous.

6

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

24. The Commissioner of Correction promulgates the Administrative Directives.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admitted that the Connecticut General Statutes permits the commissioner of correction to promulgate administrative rules for Department of Correction facilities.**

25. A strip search is a visual inspection of an unclothed person's body cavities pursuant to Administrative Directive 6.7 section 3.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.


DEFENDANTS
Commissioner Quiros, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

7

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 9th day of April 2025:

Courtney Green
30 Trowel Street
Bridgeport, CT 06607
greencourtney542@gmail.com

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General

8

| | **Inmate Request Form** | CN 9601 |
|---|---|---|
| | **Connecticut Department of Correction** | REV |
| | | 04/30/2021 |

Inmate name: Courtney Green

Inmate number: 320094

Facility/Unit: CRCl

Housing unit: 9A-110

Date: 3-16-24

Submitted to: DW Gardner Ogando / Operations

Request: ON 3-15-24 I had A virtual visit, ANd upon CONClusioN of said visit, c/o stewart stripped me when I had NO coNtAct with ANyoNe from the outside. Moreover, the prActice of strip searchiNg iim's After a NoN-coNtAct visit is uNreAsoN-Able ANd violAtes A.D. 6.7 sectioN 5 ANd All of it's subsectioNs. As well beiNg uNcoNstitutioNAl. See Bell v. Wolfish, 441 U.S. 520 (1979) (iim's caN routiNely be strip seArched After coNtAct visits, iNitiAl or readmissioN to A fAcility; plAcemeNt iN RHU, PC, CC, ANd upoN reAsoNAble belief thAt AN iim mAy be cArryiNg CoNtrAbANd. PleAse ceAse this prActice, it's uNcoNstitutioNAl.

continue on back if necessary

Previous action taken:

MAR 2 2024

continue on back if necessary

Acted on by (print name): N Nyaliere

Title: Deen

Action taken and/or response:

You are writing to the wrong Deputy Warden. Deputy Warden Ogando Oversees the supervision of the Correction officers who are strip searching you. You need to write to him.

continue on back if necessary

Staff signature:

Date: 3/20/24



EXH. C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER OGANDO, et al. | : | JUNE 6, 2025 |
| *Defendants.* | : | |

## DEFENDANT DUPUTY WARDEN OGANDO RESPONSES TO PLAINTIFF'S

## REQUEST FOR INTERROGATORIES DATED APRIL 29, 2025

The defendant Deputy Warden Ogando hereby responds to Plaintiff's Request for interrogatories dated April 29, 2025[1], as follows:

1. How long have you been Deputy Warden of operations for at Robinson CI?

   **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: 2 years

2. Identify all official(s) responsible for implementing and formulating polices at Robinson CI

   **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "formulating policies" is vague and ambiguous. Ogando also objects to this request because it is duplicative, overly broad, and not limited in time and scope.

3. Identify all policy makers at Robinson CI

   **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because is duplicative, overly broad, and not limited in time and scope.

---

[1] Plaintiff's interrogatories were received on May 6, 2025.

4. Were you aware that inmates were strip searched at the conclusion of video visits in March of 2024

   **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff executed a global release on or about April 24, 2024. Pursuant to that release all *"all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind"* were released as of the date of that agreement.

5. Identify the individual(s) responsible for implementing and formulating the policy at Robinson CI requiring inmates to submit to strip searches at the conclusion of video visits in March of 2024

   **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff executed a global release on or about April 24, 2024. Pursuant to that release all *"all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind"* were released as of the date of that agreement. Finally, Ogando objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

6. Is it true that strip searching inmates at the conclusion of video visits fell within the realm of facility security?

   **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "fell within the realm" is vague and ambiguous. Ogando also objects to this request because it is overly broad, and not limited in time and scope.

7. Is it true that Administrative Directives 2.17 section 5, A, paragraph 16 states: Respect and protect the rights of inmates?

   **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this request is vague and ambiguous because it does not specific the specific version of the administrative directive it refers to.

2

**Response:** Notwithstanding and without waiving the foregoing objection: the document speaks for itself.

8. Are you aware that inmates maintain certain rights even while incarcerated? If your answer is yes, state the rights that you're familiar with that inmates maintain while incarcerated. If your answer is no, then no response is needed.

Part 1:
**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because it is duplicative.

Part 2:
**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because it is duplicative.

9. Is it true that the policy that was in effect on 3-15-2024 required inmates to submit to strip searches at the conclusion of video visits?

**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff executed a global release on or about April 24, 2024. Pursuant to that release all *"all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind"* were released as of the date of that agreement. Finally, Ogando objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

10. Identify the official(s) responsible for implementing, formulating post orders at Robinson

**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "formulating policies" is vague and ambiguous. Ogando also objects to this request because it is duplicative, overly broad, and not limited in time and scope.

**Plaintiff's interrogatory requests did not include a number 11.**

3

12. Are inmates required to submit to strip searches at the conclusion of video visits as of date of this document? If the answer is yes, then nothing further, if the answer is no please state when inmates were no longer required to submit to strip searches at the conclusion of video visits.

Part 1:
**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

Part 2:
**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

13. Are you familiar with the term "reasonable suspicion"? If yes, explain "reasonable suspicion."

**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because it is duplicative and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

14. Identify the official(s) responsible for maintaining records and submitting reports at Robinson CI.

**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because it is overly broad and not limited in time and scope.

15. Do you have any knowledge of the law? If the answer is yes, please state what type of knowledge you have of the law; if your answer is no, then nothing further.

Part 1:
**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "knowledge of the law" is vague and ambiguous. Finally, this request seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

4

Part 2:
**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "knowledge of the law" is vague and ambiguous. Finally, this request seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

16. Have you ever heard of a case called Bell v. Wolfish, 441 U. S. 520 (1979)?

    **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "Have you ever heard" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

17. Do staff at Robinson CI have to follow unlawful orders?

    **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "unlawful orders" is vague and ambiguous. Finally this request seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

18. State verbatim what the post orders for visits stated on 3-15-2024.

    **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this request is duplicative of a previous request. See 26(b)(2)(C)(i). Ogando also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff executed a global release on or about April 24, 2024. Pursuant to that release all "*all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind*" were released as of the date of that agreement. Finally, Ogando objects to this request because would jeopardize the safety or security of the defendants; and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

19. If an inmate refused to be strip searched on 6-10-2024 at the conclusion of a video visit, would said inmate be subject to disciplinary action? If yes, state the disciplinary action an inmate would be subject to.

    Part 1:
    **Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Furthermore, this question cannot be answered with a simple yes or no.

5

Part 2:

**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The situation will be reported, and a supervisor will be called to the area to address the refusal. The supervisor will assess the situation and determine the appropriate course of action based on facility policies. In this case, if the inmate continues to refuse, that inmate will be issued a disciplinary report for Interfering with safety and security and will be placed on administrative detention status pending adjudication of the charges of interfering with safety and security.

20. Do you believe that requiring inmates to submit to strip searches at the conclusion of video visits on 6-3-2024 was reasonably related to a legitimate penological goal?  If yes, explain how requiring inmates to submit to strip searches at the conclusion of video visits is reasonably related to a legitimate penological goal.

Part 1:

**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: Yes.

Part 2:

**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The rationale behind this requirement is based on the need to maintain a secure environment where the risk of potentially harmful contrabands and drugs being smuggled is minimized. Given that video visits may allow for communication and contact with outside individuals, it is vital for the facility to uphold strict protocols to deter any attempts to compromise safety.

Ultimately, this practice aligns with the facility's objectives of ensuring order, safety, and adherence to security regulations.

21. Given what Administrative Directive 2.17 section 5, subsection A, paragraph 16 reads; is it fair to say that inmates have rights?

6

**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando also objects to this request because it is duplicative.

22. Based upon your experience and knowledge have you ever known of a way for

**Objection:** Ogando respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Furthermore, this question is vague and ambiguous because no document was attached, and the phrase "have you ever known of a way for" is an incomplete sentence rendering a response impossible. Ogando also objects because this question exceeds the number of interrogatories allowed (including all discrete subparts) pursuant to FRCP 33(a).

DEFENDANTS
Commissioner Ogando, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

7

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 6th day of June 2025:

Courtney Green
30 Trowel Street
Bridgeport, CT 06607
greencourtney542@gmail.com

*/s/ Dennis V. Mancini*

Dennis V. Mancini
Assistant Attorney General



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | APRIL 9, 2025 |
| *Defendants.* | : | |

## DEFENDANT COGGESHALL RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS DATED MARCH 9, 2025

The defendant Coggeshall hereby responds to Plaintiff's Request for Admissions dated March 9, 2025, as follows:

1.  You were a correctional officer at Robinson CI during relevant times to this litigation.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

2.  Prisoner's maintain rights even while incarcerated.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

3. You're familiar with Administrative Directive 6.7.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

4. Administrative Directive 6.7 does not mention that inmates are to be strip searched at the conclusion of video visits.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

5. Administrative Directive 6.7 does not mention that inmates are to be strip searched at the conclusion of non - contact visits.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

6. Administrative Directive 6.7 does mention that inmates are to be strip searched at the commencement of contact visits.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

2

7. You worked visits on 6 - 10 -2024.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

8. 9A housing had video visits on 6 - 10 - 2024.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

9. You strip searched inmates at the conclusion of video visits on 6 - 10 - 2024.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

10. You strip searched inmates at the conclusion of non - contact visits on 6 - 10 - 2024.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

11. You don't have to follow unlawful orders.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

12. Post orders instructed you to strip search inmates at the conclusion of video visits 6 - 10 -2024.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

13. Post orders instructed you to strip search inmates at the conclusion of non - contact visits on 6 - 10 - 2024.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

14. One of your duties require you to perform strip searches on inmates as needed.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, ambiguous, and is not limited in scope or time.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part.** One of my duties as a correctional officer is to perform strip searches, but the term "as needed" is not part of A.D. 6.7.

4

15. Prisoner's who participate in video visits do not have contact with visitors from outside the facility.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the term "video visit" is undefined. Additionally, the request is otherwise vague, ambiguous, and solicits speculation.

    **Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

16. Staff directs inmates to sit at specified computers during video visits.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit**

17. Inmates can't receive contraband through a computer screen during video visits.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the term "contraband" is undefined. Additionally, the request is otherwise vague, ambiguous, and solicits speculation.

    **Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

18. Contact visits are the most likely source of how contraband is smuggled in Robinson CI.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague ambiguous, and solicits speculation.

5

**Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

19. Prisoner's maintain the right to limited bodily privacy while incarcerated.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

20. Inmates are pat searched prior to entering the visit room.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

21. You're familiar with the term "Reasonable Suspicion" enunciated in Administrative Directive 6.7.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

6

22. You strip searched plaintiff after a video visit on 6 - 10 - 2024.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

23. The definition of a strip search is enunciated in Administrative Directive 6.7.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

24. Inmates who participated in contact visits are not strip searched simultaneously with inmates who participate in video visits.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

25. The fourth amendment of the United States Constitution protects inmates from unreasonable searches in prison settings.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

7

DEFENDANTS
Commissioner Quiros, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ Dennis V. Mancini

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail:  dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

8

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 9th day of April 2025:

Courtney Green
30 Trowel Street
Bridgeport, CT 06607
greencourtney542@gmail.com

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General

9



EXH. 8

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | May 30, 2025 |
| *Defendants.* | : | |

## DEFENDANT COGGESHALL RESPONSES TO PLAINTIFF'S REQUEST FOR INTERROGATORIES DATED APRIL 30, 2025

The defendant Coggeshall hereby responds to Plaintiff's Request for

interrogatories dated April 30, 2025, as follows:

1. How long have you been a correction officer for at Robinson CI.

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: I have been employed at Robinson CI since January 26, 2018

2. Are you familiar with administrative directive 2.17 section 5, A paragraph 16.

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "familiar" is vague and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: Yes

3. Identify all individual(s) who instructed you to strip search inmates at the conclusion of video visits.

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The strip search of inmates at the conclusion of video visits is facility protocol at Carl Robinson CI, approved by the administration of the facility.

4. In video preservation under Export C178 visit desk at approximately 17:09, identify the individual depicted in the video.

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "the individual depicted in the video" is vague and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

5. In your response to admission #9, when you strip searched inmates at the conclusion of video visits on 6-10 -2024, do you believe that such strip searches were reasonably related to a legitimate penological goal? If the answer is yes, please state how it was reasonably related to a legitimate penological goal.

   **Part 1: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: I do believe that such strip searches were related to a legitimate correctional goal.

   **Part 2: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The inmates who receive video visits are in close proximity to the other inmates receiving contact visits and it certainly is possible for an inmate in the video visit area to get contraband.

6. State how may partitions there are in the offender holding area?

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: I cannot remember exactly but there are several.

7. Is it true that on Bates stamp :0064 an example of your duties reads;

2

performs pat or strip searches of inmates as needed?

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

8. Do you possess any knowledge of the law?

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "possess any knowledge of the law" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

9. Have you ever heard of a case called Bell v Wolfish, 441 U.S. 520 (1979)?

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "heard of" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

10. State your reasons(s) why you strip searched inmates at the conclusion of video visits on 6-10-2024, based on your response in admission #9.

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

11. Based upon your knowledge and experience, please explain how an inmate participating in a video visit can obtain contraband from a visitor.

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

12. Are you familiar with administrative directive 6.7.?  If yes, please state which section and or subjection instructed you to strip search inmates at the conclusion of video visits on 6-10-2024?

**Part 1: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "familiar" is vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Yes.

3

**Part 2: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: Section 5. paragraph 9 says that a strip search shall be conducted for this circumstance: At the conclusion of any contact visit, or after entering any public visiting area.

13. Were you assigned to the visiting post in June of 2024?  If yes, state the dates in which you were assigned to the visiting post.

**Part 1: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the terms "assigned" and "visiting post" are vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Yes.

**Part 2: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the terms "assigned" and "visiting post" are vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: June 10, 2024.

14. Were inmates supposed to be pat searched prior to entering the visiting room on 6-10-2024?

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "supposed to be" is vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Yes.

15. In as much detail as possible state what your duties entailed on 6-10-2024 while assigned to visits.

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "what your duties entailed" is vague and ambiguous.

4

**Response:** Notwithstanding and without waiving the foregoing objection: My duties included but were not limited to: calling housing units and telling the housing unit officers which inmates to send to the visiting room for visits.

16. State verbatim what your post order stated on 6-10-2024 while you were assigned to visits.

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this request is duplicative of a previous request. See 26(b)(2)(C)(i). Finally, Coggeshall objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence; would jeopardize the safety or security of the defendants; and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

17. Would you follow any unlawful order if given one by your supervisor?

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "unlawful order" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

   **Response:** Notwithstanding and without waiving the foregoing objection: If my supervisor gave me an order that was illegal or unlawful, I would not carry out the illegal order.

18. If an inmate refused to be strip searched at the conclusion of video visits on 6-10-2024, would that inmate be subject to disciplinary action? If yes, state what type(s) of disciplinary action would that inmate be subject to.

   **Part 1: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The details of any particular situation vary on a case-by-case basis.

   **Part 2: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: Disciplinary action for refusing to be strip searched could result in a disciplinary report for interfering with safety or security.

5

19. While assigned to the visiting post in June of 2024, have you ever interdicted (drugs) from an inmate that participated in a video visit? If yes, please state when and how many times you interdiction drugs from an inmate at the conclusion of a video visit.

**Part 1: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: I have not, personally.

**Part 2: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: No response is necessary.

20. Identify the individual(s) whose signature was on the visit post order that was in effect on 6-10-2024.

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this request is duplicative of a previous request. See 26(b)(2)(C)(i).

21. In video preserved under Export C177 visit room at approximately 03:38 up to 07:27, is it true that inmates can be observed entering the visit room and going to the video visit area?

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall also objects because this question exceeds the number of interrogatories allowed (including all discrete subparts) pursuant to FRCP 33(a).

**Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

22. In video preserved under Export C177 visit room, is it true that no visitors go around the left corner at no given time from the video depicted?

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall also objects because this question exceeds the number of interrogatories allowed (including all discrete subparts) pursuant to FRCP 33(a).

6

**Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

23. Based upon your experience and knowledge explain the most likely way, how contraband (drugs) are introduced into Robinson CI during visits; i.e., contact, video, and or non-contact visits.

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall also objects because this question exceeds the number of interrogatories allowed (including all discrete subparts) pursuant to FRCP 33(a).

DEFENDANTS
Commissioner Quiros, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

7

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this XX day of March 2025:

Courtney Green
30 Trowel Street
Bridgeport, CT 06607
greencourtney542@gmail.com

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General

8



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | APRIL 9, 2025 |
| *Defendants.* | : | |

## DEFENDANT STARZYK RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS DATED MARCH 9, 2025

The defendant Starzyk hereby responds to Plaintiff's Request for Admissions dated March 9, 2025, as follows:

1. You were a correctional officer at Robinson CI during relevant times to this litigation.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

2. Prisoners maintain rights even while incarcerated.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

   **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

3. You're familiar with Administrative Directive 6.7.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects

to the extent the term "familiar" is undefined. Additionally, the request is otherwise vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

4. Administrative Directive 6.7 does not mention that inmates are to be strip searched at the conclusion of video visits.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

5. You worked visits on 6-3-24.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

6. You strip searched inmates at the conclusion of video visits on 6-3-24.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

7. You strip searched the plaintiff at the conclusion of video visits on 6-3-24.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

2

8. 9A housing unit had video visits on 6-3-24.

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

> **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

9. Post orders instructed you to strip search inmates at the conclusion of video visits on 6-3-24.

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

> **Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

10. Administrative Directive 2.17 section 5, subsection A, paragraph 16 states; "Respect and protect the rights of inmates".

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

> **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

11. Staff directs inmates which computers to sit at during video visits.

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

> **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

12. Administrative Directive 6.7 does explicitly mention that inmates are to be strip searched at the conclusion of contact visits,

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

3

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

13. Reasonable suspicion must be established before an inmate is strip searched at the conclusion of a video visit.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

14. You don't have to follow unlawful orders given to you.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

15. Visitors are not allowed in the vicinity where video visits are conducted.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the term "in the vicinity" is undefined. Additionally, the request is otherwise vague, ambiguous, solicits speculation, and is not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

4

16. Contact visits are the most likely source of how contraband is smuggled into Robinson CI.

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

> **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

17. You're familiar with the term "Reasonable suspicion".

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

> **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

18. A strip search is a visual inspection of an unclothed person's body cavities pursuant to Administrative Directive 6.7.

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

> **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

19. Prisoners at Robinson CI weren't always strip searched at the conclusion of video visits.

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

> **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the

5

information known or presently available to him is insufficient to render an admission or denial.

20. Multiple inmates are strip searched in the offender holding area at the same time.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

21. Prisoners who participate in video visits do not have contact with visitors from outside the facility during said visits.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the term "contraband" is undefined. Additionally, the request is otherwise vague, ambiguous, solicits speculation, and is not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

22. Prisoners can't receive contraband through a computer screen during virtual video visits.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

23. Inmates that participate in virtual video visits are not strip searched simultaneously with inmates that participated in contact visits.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

24. One of your duties requires you to perform strip searches on inmates as needed.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part, deny in part.** One of my duties is to perform strip searches, but the term "as needed" is not part of A.D. 6.7

25. Inmates are pat searched prior to entering the visiting area.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

DEFENDANTS
Commissioner Quiros, et al.

7

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ Dennis V. Mancini

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail:  dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

8

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 9th day of April 2025:

Courtney Green
30 Trowel Street
Bridgeport, CT 06607
greencourtney542@gmail.com

*/s/ Dennis V. Mancini*

Dennis V. Mancini
Assistant Attorney General

9



EXH. 10

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | JUNE 6, 2025 |
| *Defendants.* | : | |

## DEFENDANT STARZYK RESPONSES TO PLAINTIFF'S REQUEST FOR

## INTERROGATORIES DATED APRIL 29, 2025

The defendant Starzyk hereby responds to Plaintiff's Request for interrogatories dated April 29, 2025[1], as follows:

1. How long have you been a correction officer for at Robinson CI.

   **Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: I have been a Correctional Officer at Robinson CI for approximately seven years.

2. Is it true that you were assigned to the visiting post on June 3, 2024: If yes, state the dates in which you were assigned to the visiting post.

   **Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects to this request because it is duplicative.

3. Is it true that you were assigned to the visiting post in June of 2024 for a 60 day period? If the answer is no, state how many days you were assigned to visits in June of 2024.

   **Part 1:**
   **Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also

---

[1] Plaintiff's interrogatories were received on May 6, 2025.

objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence.

**Response:** Notwithstanding and without waiving the foregoing objection: Despite reasonable inquiry the information known or presently available to me, I do not recall.

**Part 2:**
**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence.

**Response:** Notwithstanding and without waiving the foregoing objection: Despite reasonable inquiry the information known or presently available to me, I do not recall.

4. State verbatim what the post order stated on 6-3-2024 when you worked visits.

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this request is duplicative of a previous request. See 26(b)(2)(C)(i). Starzyk also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence, would jeopardize the safety or security of the defendants, and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

5. Is it true that Bates stamp: 0064 "Example of duty reads; performs pat or strip searches of inmates as needed.

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this request is duplicative of a previous request and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

6. In your response to admission #3, you admit to being familiar with administrative directive 6.7  Please identify what section of administrative directive 6.7 specifically mentions strip searching inmates at the conclusion of video visits.

2

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

7. Based upon your knowledge and experience do you believe that it's possible for an inmate to receive contraband through a computer screen during a video visit?

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects to this request because it is not limited in time and mischaracterizes relevant facts.

8. Would you follow an unlawful order if you were given one?

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

9. Are you familiar with administrative directive 2.17 section 5, A paragraph 16.

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). In addition, this request is vague in that it is not limited in time and scope. See 26(b)(2)(C)(i).

**Response:** Notwithstanding and without waiving the foregoing objection: To the extent Plaintiff is referring to the current version of A.D. 2.17, yes.

10. Is it true that inmates maintain rights even while incarcerated?

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this request is duplicative of a previous request and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

3

11. Given that administrative directive 6.7 mandates inmates to submit to strip searches at the conclusion of video visits based upon inmates entering a public visiting area, have you ever strip searched an inmate at the conclusion of a video visit?

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). In addition, this request is vague in that it is not limited in time and scope. See 26(b)(2)(C)(i).

**Response:** Notwithstanding and without waiving the foregoing objection: Yes.

12. Is it true that you worked on 6-10-2024?  If yes, did you work visits on 6-10-2024.

**Part 1:**
**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: Despite reasonable inquiry the information known or presently available to me, I do not recall. **[Attorney response]** DOC records indicate that CO Starzyk did work on June 10, 2024.

**Part 2:**
**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence.

**Response:** Notwithstanding and without waiving the foregoing objection: Despite reasonable inquiry the information known or presently available to me, I do not recall. **[Attorney response]** DOC records indicate that CO Starzyk did work visits on June 10, 2024.

**[Unnumbered, incomplete paragraph]** from an inmate that participated in a video visit?  If yes, please state when and how many times you interdicted drugs from an inmate at the conclusion of a video visit.

**Part 1:**
**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Furthermore,

4

this question is vague and ambiguous because it is an incomplete sentence rendering a response impossible.

**Part 2:**
**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Furthermore, this question is vague and ambiguous because it is an incomplete sentence rendering a response impossible.

**Plaintiff's interrogatory requests did not include numbers 13 & 14.**

15. Were you ever made aware of the plaintiff writing a grievance on you on 6-24-2024 for strip searching him at the conclusion of a video visit.

    **Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence.

    **Response:** Notwithstanding and without waiving the foregoing objection: Despite reasonable inquiry the information known or presently available to me, I do not recall.

16. If an inmate refused to be strip searched on 6-3-2024 at the conclusion of video visits on 6-10-2024, would that inmate be subject to disciplinary action for refusing?  If yes, state what type(s) of disciplinary action(s) would that inmate be subject to.

    **Part 1:**
    **Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects to this request because it is duplicative.

    **Part 2:**
    **Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects to this request because it is duplicative.

17. Identify all individual(s) who instructed you to strip search inmates at the conclusion of video visits on 6-3-2024.

5

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence.

**Response:** Notwithstanding and without waiving the foregoing objection: Despite reasonable inquiry the information known or presently available to me, I do not recall.

18. Have you ever heard of a case called Bell v Wolfish, 441 U.S. 520 (1979)?

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "Have you ever heard" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence. Finally, this request is not limited in time and scope and therefore unnecessarily burdensome.

19. Is it true that inmates are supposed to be pat searched prior to entering the visiting area?

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence.

20. In video preserved under Export C177 visit room at approximately 00:15, identify the correctional officer who appears on video camera.

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects to this request because "the correctional offier who appears on the video camera" is vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

21. In video preserved under Export C177 visit room at approximately 03:38 up to 07:27, is it true that inmates can be observed entering the visit room and going to the video visit area?

**Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

6

**Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

22. In video preserved under Export C177 visit room, is it true that no visitors go around the left corner at no given time from the video depicted?

    **Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects because this question exceeds the number of interrogatories allowed (including all discrete subparts) pursuant to FRCP 33(a).

    **Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

23. In video preserved under Export C177 visit room at approximately 08:00, identify the area of the visiting room where you are coming from i.e. (non-contact, video visit, contact visit.

    **Objection:** Starzyk respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk also objects because this question exceeds the number of interrogatories allowed (including all discrete subparts) pursuant to FRCP 33(a).

    **Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

DEFENDANTS
Commissioner Quiros, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106

7

E-Mail:  dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 6th day of June 2025:

Courtney Green
30 Trowel Street
Bridgeport, CT 06607
greencourtney542@gmail.com

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General

9



| State of Connecticut Department of Correction | Directive Number 6.7 | Effective Date 01/30/2024 | Page 1 of 9 |
|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | Supersedes Searches Conducted in Correctional Facilities, Dated 06/29/2018 | | |
| Approved By *[signature]* Commissioner Angel Quiros | Title Searches Conducted in Correctional Facilities | | |

1. <u>Policy.</u> The Department of Correction shall maintain safety and security by conducting searches as provided for in this Directive.

2. <u>Authority and Reference.</u>
   a. Public Law 108-79, Prison Rape Elimination Act of 2003
   b. 28 C.F.R. 115, Prison Rape Elimination Act National Standards
   c. Connecticut General Statutes, Sections 18-81, 18-81v, and 53a-174 through 53a-174b.
   d. Applicable Case Law.
   e. Administrative Directives 6.2 Facility Post Orders and Logs; 6.5, Use of Force; 6.6, Reporting of Incidents; 6.8, Urinalysis; 6.9, Control of Contraband and Physical Evidence; 6.10, Inmate Property;6.12, Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention, 8.17 Gender Diverse and 10.6, Inmate Visits.

3. <u>Definitions and Acronyms.</u> For the purposes stated herein, the following definitions and acronyms apply:
   a. <u>Authorized Detector/Scanning System.</u> Any authorized equipment (e.g., BOSS chair, metal detector, etc.) used to scan for, and detect, concealed contraband.
   b. <u>Body Orifice Scanning System (BOSS Chair).</u> A scanning system designed to detect metal objects concealed in oral, anal, vaginal cavities or other parts of the body.
   c. <u>CI.</u> Correctional Institution.
   d. <u>Contraband.</u> An item that falls under the following criteria:
      i. Not authorized to be in any facility, Unit, area, vehicle, or surrounding grounds under the control of or contracted by the Department of Correction or in an inmate's possession;
      ii. that is authorized, but used in an unauthorized or prohibited manner,
      iii. that is authorized, but altered; or,
      iv. that ownership cannot be established.
   e. <u>Contractor.</u> A person or organization that agrees to furnish materials or to perform services for the Department. Contractors may include organizations which provide services to the Department without cost. Contractors providing services to the Department are subject to all applicable rules and regulations.
   f. <u>Controlled Strip-Search.</u> A strip-search in which Department personnel maintain physical, hands on control of an inmate through the use of restraints or approved restraint techniques for the purposes of safety and security.
   g. <u>Employee.</u> For the purposes of this Directive only, an employee shall be a person employed by the Department of Correction or anyone designated by the Commissioner or designee who is allowed unescorted access in a correctional facility.
   h. <u>General Facility Search.</u> A planned and systematic search of all areas within and around a correctional facility, including the grounds, parking areas, and employee offices and work areas.
   i. <u>Internal Medical Device.</u> For purposes of this directive, the term internal medical device shall include a pacemaker or defibrillator.
   j. <u>Intersex.</u> A person whose sexual or reproductive anatomy or chromosomal pattern does not fit typical definitions of male or female. Intersex medical conditions are sometimes referred to as Disorders of Sex Development.

Rev. 2/27/24, 6/4/24

Green v. Quiros, 3:24-cv-1317 : 0072

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 2 of 9 |
|---|---|---|
| Title | | |
| Searches Conducted in Correctional Facilities | | |

k. Manual Body Cavity Search. The manual examination of an inmate's mouth, nose, ears and/or genital/rectal areas as provided by Section 8 of this Directive, this shall not include examinations conducted for medical purposes.

l. Pat Search. A systematic observation and physical inspection, using the hands, of a person while clothed.

m. PREA. Prison Rape Elimination Act.

n. Reasonable Suspicion. Judgment based on specific objective facts and reasonable inferences drawn in light of experience, training and education.

o. Search. Any inspection of a person, area or property.

p. Strip-Search. A strip-search shall mean a visual body cavity search which includes a systematic visual inspection of an unclothed person's hair, body cavities (to include the individual's ears, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia. This search shall also include a physical search of the clothing and any personal effects.

q. Temporary Surrender. An inmate admitted to a Department facility under arrest but without a court order, pending arraignment.

r. Transgender. A person whose identity (i.e., internal sense of feeling male or female) is different from the person's assigned sex at birth.

s. Visitor. For the purposes of this Directive only, a visitor shall be a person entering a correctional facility who is not an employee, contractor or an inmate.

4. Inmate Pat Searches.
   a. A pat search shall include an inspection of the person's clothing and any item in the person's possession.
   b. A pat search shall be conducted:
      i. On all inmates to be transported outside the facility;
      ii. At the conclusion of all contact visits;
      iii. Preceding a strip-search; or,
      iv. On a random basis to further any correctional purpose.
   c. Reasonable accommodations shall be made to provide for same gender pat searches of female inmates.
      i. When such accommodation cannot be made and a pat search of a female inmate is deemed essential without delay, then a cross gender pat search may be conducted.
      ii. All cross gender pat searches of female inmates shall be documented on CN 6604, Incident Report.

5. Inmate Strip-Searches.
   a. General Guidelines. An inmate strip-search shall normally be conducted in an area out of view of individuals not involved in the search process and shall not normally require physical contact by staff.
      i. All clothing and items in the inmate's possession shall be examined.
      ii. Reasonable accommodations shall be made to provide for same gender strip-searches. When such accommodation cannot be made and the strip-search is deemed to be essential without delay, then a cross gender strip-search shall be conducted.
      iii. All cross gender strip-searches shall be reported on CN 6604, Incident Report, in accordance with Administrative Directive 6.6, Reporting of Incidents.
   b. Strip-Searches When Reasonable Suspicion is not required. A strip-search shall be conducted for the following circumstances:
      i. Upon admission or return of a sentenced inmate, regardless of the offense (to include any inmate incarcerated for a fine), to a Department facility;
      ii. Upon admission or return to a Department facility when an inmate is:
         1. unsentenced, charged with a felony offense; or,

Rev. 2/27/24, 6/4/24

**Green v. Quiros, 3:24-cv-1317 : 0073**

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 2 of 9 |
|---|---|---|
| Title | Searches Conducted in Correctional Facilities | |

    k. <u>Manual Body Cavity Search</u>. The manual examination of an inmate's mouth, nose, ears and/or genital/rectal areas as provided by Section 8 of this Directive, this shall not include examinations conducted for medical purposes.

    l. <u>Pat Search</u>. A systematic observation and physical inspection, using the hands, of a person while clothed.

    m. <u>PREA</u>. <u>P</u>rison <u>R</u>ape <u>E</u>limination <u>A</u>ct.

    n. <u>Reasonable Suspicion</u>. Judgment based on specific objective facts and reasonable inferences drawn in light of experience, training and education.

    o. <u>Search</u>. Any inspection of a person, area or property.

    p. <u>Strip-Search</u>. A strip-search shall mean a visual body cavity search which includes a systematic visual inspection of an unclothed person's hair, body cavities (to include the individual's ears, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia. This search shall also include a physical search of the clothing and any personal effects.

    q. <u>Temporary Surrender</u>. An inmate admitted to a Department facility under arrest but without a court order, pending arraignment.

    r. <u>Transgender</u>. A person whose identity (i.e., internal sense of feeling male or female) is different from the person's assigned sex at birth.

    s. <u>Visitor</u>. For the purposes of this Directive only, a visitor shall be a person entering a correctional facility who is not an employee, contractor or an inmate.

4. <u>Inmate Pat Searches</u>.

    a. A pat search shall include an inspection of the person's clothing and any item in the person's possession.

    b. A pat search shall be conducted:
        i. On all inmates to be transported outside the facility;
        ii. At the conclusion of all contact visits;
        iii. Preceding a strip-search; or,
        iv. On a random basis to further any correctional purpose.

    c. Reasonable accommodations shall be made to provide for same gender pat searches of female inmates.
        i. When such accommodation cannot be made and a pat search of a female inmate is deemed essential without delay, then a cross gender pat search may be conducted.
        ii. All cross gender pat searches of female inmates shall be documented on CN 6604, Incident Report.

5. <u>Inmate Strip-Searches</u>.

    a. <u>General Guidelines</u>. An inmate strip-search shall normally be conducted in an area out of view of individuals not involved in the search process and shall not normally require physical contact by staff.
        i. All clothing and items in the inmate's possession shall be examined.
        ii. Reasonable accommodations shall be made to provide for same gender strip-searches. When such accommodation cannot be made and the strip-search is deemed to be essential without delay, then a cross gender strip-search shall be conducted.
        iii. All cross gender strip-searches shall be reported on CN 6604, Incident Report, in accordance with Administrative Directive 6.6, Reporting of Incidents.

    b. <u>Strip-Searches When Reasonable Suspicion is not required</u>. A strip-search shall be conducted for the following circumstances:
        i. Upon admission or return of a sentenced inmate, regardless of the offense (to include any inmate incarcerated for a fine), to a Department facility;
        ii. Upon admission or return to a Department facility when an inmate is:
            1. unsentenced, charged with a felony offense; or,

Rev. 2/27/24, 6/4/24

**Green v. Quiros, 3:24-cv-1317 : 0073**

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 3 of 9 |
|---|---|---|
| Title | Searches Conducted in Correctional Facilities | |

2. unsentenced, charged with a misdemeanor offense NOT listed on Attachment B, Offenses Requiring Reasonable Suspicion to Conduct a Strip-Search; or,
3. a violation of probation, temporary surrender or an unsentenced youthful offender charged with a felony or for a misdemeanor offense NOT listed on Attachment B; or,
4. a remand from the United States Department of Homeland Security (Immigration and Customs Enforcement); or,
5. a remand from the United States Marshals Service; or,
6. a temporary confinement of extradition in a third state; or,
7. a Governor's Warrant detainee.

iii. Upon readmission to a facility from a halfway house, parole, special parole, transitional supervision or any other community release program.

iv. Upon inter-facility or out-of-state transfer provided that the inmate is sentenced.

v. Upon entering and leaving a level 5 facility or a designated level 5 housing unit.

vi. Upon initial placement in a specialized housing unit, to include the following:
1. Administrative Segregation;
2. Chronic Discipline;
3. Security Risk Group Member;
4. Medical Inpatient;
5. Mental Health;
6. Protective Custody; or,
7. Restrictive Housing.

vii. When the inmate has participated in a significant incident during the inmate's current incarceration.

viii. When submitting a specimen for urinalysis, in accordance with Administrative Directive 6.8, Urinalysis.

ix. At the conclusion of any contact visit, or after entering any public visiting area.

x. During a planned general facility search or any other search conducted within a facility other than intake.

xi. During a facility emergency (i.e., disturbance, hostage situation, etc.).

c. Strip-Searches When Reasonable Suspicion is Required.

i. Reasonable suspicion in accordance with Attachment A, Strip-Search Decision Tree shall be established prior to conducting a strip-search in the following statuses:
1. a misdemeanor offense listed on Attachment B; or,
2. a violation of probation, temporary surrender or a youthful offender charged with a misdemeanor offense listed on Attachment B; or,
3. an accused civil charge.

ii. Reasonable suspicion that the inmate is concealing contraband shall be documented on Form CN 6701, Strip-Search Report and forwarded to the Shift Commander or designee for authorization to conduct a strip-search prior to any such search being performed. If reasonable suspicion that the inmate is concealing contraband is not established in accordance with this Directive, the inmate shall not be strip-searched.
1. Once authorized to conduct a strip search due to reasonable suspicion that the inmate is concealing contraband, a Supervisor shall be present and a video camera continuously operating upon initial contact with the suspected inmate and throughout the strip search process.
2. A strip search shall be video recorded by a trained operator. The camera shall continuously record the incident and ensure, as reasonably as possible, the inmate's entire body remains in the frame of the recording the duration of the incident.

Rev. 2/27/24, 6/4/24

**Green v. Quiros, 3:24-cv-1317 : 0074**

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 4 of 9 |
|---|---|---|
| Title | Searches Conducted in Correctional Facilities | |

d. **Identification and Tracking of Minor Misdemeanor Inmates.** Upon admission or readmission, the Admissions and Processing Officer or other authorized staff shall review all incoming continuance mittimus/admitting documents to determine if a pretrial inmate is being held solely for a misdemeanor offense(s) listed on Attachment B. If the inmate is being held solely for a misdemeanor offense(s) listed on Attachment B, then CN 6702, Minor Misdemeanant Identification Form shall be completed and an appropriate computer entry made to establish a flag identifying the inmate as a minor misdemeanant. CN 6702, Minor Misdemeanant Identification Form shall be maintained in Section 3 of the inmate's master file. In the event there is a status change based on new charges, information or other relevant reasons, Section 3 of CN 6702, Minor Misdemeanant Identification Form shall be completed to initiate the removal of the flag from the computer screen.

e. **Controlled Strip-Searches.** Controlled strip-searches shall be conducted as follows:

   i. **Reasons to Conduct Search.** Staff may conduct a hands on, controlled strip-search of an inmate:

     1. in the event the inmate refuses to comply with a strip-search as defined in Section 3(P) of this Directive;

     2. for a valid penological reason; or,

     3. when the inmate is confined at any unit designated by the Commissioner to conduct controlled strip-searches.

   ii. **Authorization, Observation and Video Documentation of Search.** A controlled strip-search shall be authorized and observed by a custody supervisor. When practicable, prior to conducting a controlled strip-search, verbal intervention shall be attempted in accordance with the intervention provisions of Administrative Directive 6.5, Use of Force. If the initial verbal intervention is unsuccessful, the custody supervisor shall summon a video camera, which shall document the final verbal intervention with the inmate, as well as the controlled strip-search.

   iii. **Conduct of Search.** In order to facilitate a controlled strip-search, the inmate's clothing may be systematically removed manually or removed via medical shears a portion at a time under the direction of the custody supervisor. If the inmate continues to be uncooperative, staff may manually position parts of the inmate's body in order to view all areas of the inmate's body, making every attempt to avoid physical contact with the genitals and rectum. The controlled strip-search shall only seek to observe all areas of the inmate's body to reasonably ensure the safety and security of the public, staff and inmates. Controlled strip searches may only be conducted by persons of the same gender as the inmate being searched.

   iv. **Written Documentation of Search.**

     1. A controlled strip-search shall be documented utilizing the following forms:

       a. CN 6604, Incident Report;

       b. CN 6501, Use of Force Report; and (when required),

     2. Completed forms shall be submitted to the Shift Commander for review.

     3. The documentation of controlled strip-searches conducted on a routine basis for inmates with an Administrative Segregation or Security Risk Group designation, or upon intake to the Restrictive Housing Unit and the Inpatient Mental Health Unit at Garner CI shall not be required. However, if at these facilities an inmate becomes non-compliant, combative or refuses to follow staff direction during a controlled strip-search, the incident shall be documented in accordance with Administrative Directives 6.5, Use of Force, and Administrative Directive 6.6., Reporting of Incidents.

Green v. Quiros, 3:24-cv-1317 : 0075

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 5 of 9 |
|---|---|---|
| Title | Searches Conducted in Correctional Facilities | |

6. Reasonable Suspicion.
   a. Determining Reasonable Suspicion. Any of the following factors shall be taken into account when determining reasonable suspicion for an inmate strip-search:
      i. The nature of the crime or offense with which an inmate is charged (i.e., is the inmate's charge a felony or a misdemeanor NOT listed on Attachment B);
      ii. The circumstances of the individual's arrest or detention, if known;
      iii. The particular characteristics of the inmate (e.g., physical appearance, behavior, risk for self-harm, past criminal or correctional history, etc.);
      iv. Positive reading from authorized detector/scanning equipment or canine alert;
      v. Informant information in accordance with Section 6(B) of this Directive; or,
      vi. Other facts contributing to suspicion or lack thereof.
   b. Determining Reasonable Suspicion Based on Informant Information. If the information used to determine reasonable suspicion derives from an informant, the following factors should be considered and documented on CN 6604, Incident Report:
      i. The nature of the tip or information;
      ii. The reliability of the informant;
      iii. The degree of corroboration;
      iv. The motivation of the informant to be truthful; and,
      v. Other facts contributing to suspicion or lack thereof.
   c. Posting of Reasonable Suspicion Criteria. A copy of Attachment A and Attachment B shall be laminated and posted at each point of admission and other appropriate areas.

7. Transgender inmates and/or inmates with an Intersexed Related Condition.
   a. Transgender and/or Inmates with an Intersexed Related Condition shall be subject to pat searches and strip searches while under the custody of the Department of Correction.
      i. Supervisors shall select custodial staff members who complete a pat search or strip search on a transgendered inmate and Inmates with an intersex condition in accordance with Administrative 8.17, Gender Diverse.

8. Inmate Manual Body Cavity Search.
   a. An inmate manual body cavity search shall be performed only by a medical professional under the supervision of a licensed physician. An examination conducted for medical purposes shall not be considered a search as it applies to this Directive. In conducting manual body cavity searches, the following guidelines shall be followed:
      i. A manual body cavity search shall be conducted when there is reasonable suspicion that the inmate may be carrying contraband.
      ii. A manual body cavity search of an inmate may only be considered after reasonable, less intrusive measures of recovery of the suspected contraband have been considered or employed as appropriate (e.g., persuasion, self-retrieval, x-ray, expulsion, etc.).
         1. This may include placement in a dry cell or room under direct observation for a minimum of 72 hours if required.
         2. A manual body cavity search shall only be conducted upon approval by the Deputy Commissioner of Operations and Rehabilitative Services.
         3. The Chief Medical Officer or designee shall assign an appropriate health service employee in consultation with the Deputy Commissioner of Operations and Rehabilitative Services to conduct the search.

Rev. 2/27/24, 6/4/24

Green v. Quiros, 3:24-cv-1317 : 0076

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 6 of 9 |
|---|---|---|
| Title | | |
| Searches Conducted in Correctional Facilities | | |

4. A manual body cavity search shall be conducted in a clinical setting (i.e., Health Services Unit or outside hospital).

5. When custody staff are required to be present, staff members of the same gender shall be utilized unless the inmate has an approved gender diverse management plan. If the inmate has an approved gender diverse management plan, then the supervisor overseeing the search shall make arrangements according to the inmate's preference for gender of custody staff who will be present.

iii. Upon completion of a manual body cavity search, CN 6604, Incident Report shall be completed in accordance with Administrative Directive 6.6, Reporting of Incidents, shall be completed by the custody designee and submitted to the Deputy Commissioner of Operations and Rehabilitative Services stating the reasons for the search, other options which were considered or employed, the individuals present when the search was conducted, and the findings of the search.

1. In addition, a medical incident report shall be completed by the health service employee conducting the examination and submitted with the original incident report.

9. Visual inspection during medication administration. A visual inspection of the oral (mouth) cavity by a custody and/or medical staff member shall be conducted when an employee dispenses medication. Oral cavity inspection shall be required prior to and after the inmate ingests any medication.

a. The inmate shall be required to open the mouth, lift the tongue and move the tongue from side to side.

10. Search by Means of Metal Detectors and Other Authorized Scanning/Detecting Systems. Search by means of metal detectors and other authorized scanner/detecting systems shall be conducted as follows:

a. During admission, transfer or routine transport of an inmate;

b. Whenever an inmate is suspected of ingesting or inserting metallic contraband in a body cavity; and,

c. On a random basis to further any correctional purpose.

i. If a positive reading is indicated, CN 6701, Strip-Search Report shall be completed and a strip-search conducted in accordance with Section 5 of this Directive.

11. Canine Searches. Canine searches shall be utilized to provide a safe and secure environment for the public, employee and inmates by controlling the introduction, movement and use of contraband. Canine searches shall be utilized as authorized by the Unit Administrator.

12. Non-Inmate Searches. Non-inmates and their property may be subject to searches upon entering the perimeter or grounds of a correctional facility or any other site operated by the Department of Correction, as follows:

a. Visitors/Contractors. A visitor/contractor shall be required to pass through a metal detector when initially entering the secure area of a correctional facility. In accordance with Section 18-81v of the Connecticut General Statutes, a visitor who activates a walk-through metal detector shall be given the opportunity to submit to a search with a portable or hand-held metal detector in order to gain entrance into the correctional facility. If the visitor consents to a search, such consent shall be documented on CN 100603, Visitor Search Consent Form in accordance with Administrative Directive 10.6, Inmate Visits. When the visitor consents to a search with a portable or hand-held metal detector, the visitor shall be escorted by a correction officer of the same sex to a separate room, restroom or other private location within the correctional facility, where the visitor shall first remove any object or article of clothing that activated the walk-through metal detector and then submit to a portable or

Rev. 2/27/24, 6/4/24

Green v. Quiros, 3:24-cv-1317 : 0077

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 7 of 9 |
|---|---|---|
| Title | | |
| Searches Conducted in Correctional Facilities | | |

hand-held metal detector search. If the portable or hand-held metal detector is not activated during such search, the visitor shall be allowed to re-apply the object or article of clothing that activated the walk-through metal detector before exiting the separate room, restroom or other private location where the portable or hand-held metal detector search is conducted and shall be allowed to enter the correctional facility. If the portable or hand-held metal detector is activated during such search or if the visitor refuses to give consent to be searched, the visitor shall be denied access to the facility. Visitors who have an internal medical device and who either activate or cannot pass through a walk-through metal detector, shall NOT be searched with a portable or hand-held metal detector. The visitor may be screened by a pat search if he or she consents. If consent is provided and the pat search completed, a visit may be authorized under the terms and conditions deemed appropriate in the discretion of the Unit Administrator or designee. At all times, the Unit Administrator or designee shall maintain the right to permit, limit or deny a visit in furtherance of the safety and security of the facility. A custody supervisor shall be present, when available, during the pat search of a visitor. Should the visitor refuse to consent to a pat search, the supervisor shall contact the Duty Officer. The Duty Officer shall make the decision as to the status of the visit and the conditions there of.

b. Employees. An employee, at a minimum, may be required to pass through a metal detector, submit to visual check/inspection of personal belongings brought into the facility to include but not limited to food containers/bags/purses/jackets or submit to a pat search when entering a facility. In addition, an employee may be subject to a strip-search based on reasonable suspicion that the employee is carrying contraband. Such search shall only be authorized by the Unit Administrator or higher authority. An employee and a supervisor of the same gender shall conduct such searches in a private area. Refusal to submit to a search may subject the employee to disciplinary action, up to and including dismissal from state service.

c. Unauthorized Items. Each facility shall post a list of items that staff may not bring into the secured area of the facility or to any post in accordance with Attachment D, List of Unauthorized Items. A copy of Attachment D, List of Unauthorized Items shall be laminated and posted at each public entrance and staff access point. It shall be the employee's responsibility to seek clarification from a supervisor regarding the introduction of any questionable items into the facility.

13. Vehicle Searches. All vehicles entering facility property are subject to random or routine search with consent. Failure to give consent shall result in denial of access.

a. Posting and Notification. A sign shall be posted at each facility entrance stating: "You are entering a correctional facility. All visitors and vehicles are subject to search by Department of Correction personnel. It is a crime to convey, pass or causing to be conveyed or passed into this facility any item that is prohibited by Sections 53a-174, 53a-174a and 53a-174b of the Connecticut General Statutes. Violators shall be prosecuted. A list of prohibited items is posted inside."

b. List of Prohibited Items. A list of prohibited items shall be prominently posted in the lobby area utilizing Attachment C, List of Prohibited Items.

c. Vehicle Search procedures. Each unit shall develop vehicle search procedures specific to that individual facility and incorporate them into relevant Post Orders, General Post Order Attachments and/or Unit Directives in accordance with Administrative Directive 1.3, Development Revision and Revision of Policies and Procedures, specific to searches conducted on vehicles entering and leaving the secured area of the compound. The facility procedure shall include, but is not limited to, search procedures for Department of Correction vehicles, outside Law Enforcement and contracted service/vendor vehicles.

Rev. 2/27/24, 6/4/24

Green v. Quiros, 3:24-cv-1317 : 0078

| Directive Number | Effective Date | Page 8 of 9 |
|---|---|---|
| 6.7 | 01/30/2024 | |
| Title | | |
| Searches Conducted in Correctional Facilities | | |

14. <u>Facility Searches</u>. Each unit shall develop Unit Directives and a search plan to meet the requirements of this Directive.

    a. <u>General Facility Searches</u>. A general facility search shall be authorized by the Unit Administrator. General facility searches shall be conducted at least annually at Level 2 and 3 security classification facilities and not less than twice each year at Level 4 and not less than three (3) times each calendar year at Level 5 security classification facilities. When a facility search is conducted the entire facility shall be searched prior to returning to normal operations. A copy of the search plan consistent with Attachment E, Reporting Requirements shall be submitted for approval to the District Administrator prior to commencing a general facility search.

    b. <u>Housing Unit/Area Searches.</u> Housing unit and area (e.g., kitchen, industry plants, gymnasium, etc.) searches shall be conducted routinely and periodically as authorized by the Shift Commander.

    c. <u>Cell, Room, Cubicle and Other Housing Area Searches</u>. A search of an inmate's cell, room, cubicle or other housing area shall be conducted by the assigned correction officer as directed by a supervisor or as required by facility policy. If the inmate is present in the cell, room, cubicle or other housing area, the inmate shall be removed and pat searched prior to the cell, room, cubicle or other housing area being searched. Cell, room, cubicle or other housing area searches shall be recorded in the station log and facility log in accordance with Administrative Directive 6.2, Facility Post Orders and Logs. Any time medication, medical equipment and/or medical supplies are confiscated from an inmate or the inmate's living area, said medication, medical equipment and/or medical supplies must be bagged and delivered to the Health Services Unit for review and disposition (i.e., disposal or redistribution).

    d. <u>Employee Work Areas.</u> Areas utilized by employees (e.g., employee offices and rooms, locker rooms, employee lounges, etc.) shall be searched during a general facility search.

    e. <u>Community Contract Agency Searches</u>. The Director of Parole and Community Services or designee shall develop and maintain procedures to conduct a search of each halfway house consistent with this Directive. Such searches shall be conducted annually, at a minimum.

15. <u>Treatment of Religious Articles and Items.</u> All religious articles and religious items, including but not limited to the Holy Bible, the Qur'an, and the Torah, shall be respected by staff and inmates at all times. Religious articles and religious items shall not be carelessly handled by staff when conducting searches or other authorized operational or security activities. Special care shall be taken to respect religious articles and religious items. Religious articles and religious items may be confiscated for cause in accordance with Administrative Directive 6.10, Inmate Property. Any questions or concerns regarding any religious article or item shall be referred to the appropriate chaplain and/or other subject matter expert, as appropriate. Native American medicine bags shall not normally be handled by staff. In cases where a medicine bag and/or its contents require examination by staff, staff shall instruct the inmate possessing the medicine bag to empty its contents on to a surface for inspection.

16. <u>Handling of Contraband and Physical Evidence.</u> All handling, documentation and disposal of contraband and physical evidence shall be in accordance with Administrative Directive 6.9, Control of Contraband and Physical Evidence.

17. <u>Staff Training.</u> Staff whose job classifications may require them to perform pat searches and/or strip searches shall be trained on how to conduct cross gender pat searches and searches of transgender and intersex inmates in a professional and respectful manner, and in the least intrusive manner possible that is consistent with security needs.

Rev. 2/27/24, 6/4/24

Green v. Quiros, 3:24-cv-1317 : 0079

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 9 of 9 |
|---|---|---|
| Title | | |
| Searches Conducted in Correctional Facilities | | |

18. Forms and Attachments. The following forms and attachments are applicable to this Administrative Directive and shall be utilized for the intended function:
   a. CN 6701, Strip-Search Report;
   b. CN 6702, Minor Misdemeanant Identification Form;
   c. Attachment A, Strip-Search Decision Tree;
   d. Attachment B, Offenses Requiring Reasonable Suspicion to Conduct a Strip-Search;
   e. Attachment C, List of Prohibited Items;
   f. Attachment D, List of Unauthorized Items; and
   g. Attachment E, Reporting Requirements.

19. Exceptions. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

Rev. 2/27/24, 6/4/24

Green v. Quiros, 3:24-cv-1317 : 0080



EXH. 12

| | State of Connecticut Department of Correction | Directive Number 6.7 | Effective Date 06/29/18 | Page 1 of 8 |
|---|---|---|---|---|
| | **ADMINISTRATIVE DIRECTIVE** | Supersedes Searches Conducted in Correctional Facilities, Dated 8/15/2014 | | |
| Approved By  *[signature]*  Commissioner Scott Semple | | Title  Searches Conducted in Correctional Facilities | | |

1. <u>Policy.</u> The Department of Correction shall maintain safety and security by conducting searches as provided for in this Directive.

2. <u>Authority and Reference.</u>
   a. Public Law 108-79, Prison Rape Elimination Act of 2003
   b. 28 C.F.R. 115, Prison Rape Elimination Act National Standards
   c. Connecticut General Statutes, Sections 18-81, 18-81v, and 53a-174 through 53a-174b.
   d. Applicable Case Law.
   e. Administrative Directives 6.2 Facility Post Orders and Logs; 6.5, Use of Force; 6.6, Reporting of Incidents; 6.8, Urinalysis; 6.9, Control of Contraband and Physical Evidence; 6.10, Inmate Property; 6.12, Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention, 8.17 Gender Non-Conforming and 10.6, Inmate Visits.

3. <u>Definitions and Acronyms.</u> For the purposes stated herein, the following definitions and acronyms apply:
   a. <u>Authorized Detector/Scanning System.</u> Any authorized equipment (e.g., BOSS chair, metal detector, etc.) used to scan for, and detect, concealed contraband.
   b. <u>Body Orifice Scanning System (BOSS Chair).</u> A scanning system designed to detect metal objects concealed in oral, anal, vaginal cavities or other parts of the body.
   c. <u>CI.</u> Correctional Institution.
   d. <u>Contraband.</u> An item that falls under the following criteria:
      i. Not authorized to be in any facility, Unit, area, vehicle, or surrounding grounds under the control of or contracted by the Department of Correction or in an inmate's possession;
      ii. that is authorized, but used in an unauthorized or prohibited manner,
      iii. that is authorized, but altered; or,
      iv. that ownership cannot be established.
   e. <u>Contractor.</u> A person or organization that agrees to furnish materials or to perform services for the Department. Contractors may include organizations which provide services to the Department without cost. Contractors providing services to the Department are subject to all applicable rules and regulations.
   f. <u>Controlled Strip-Search.</u> A strip-search in which Department personnel maintain physical, hands on control of an inmate through the use of restraints or approved restraint techniques for the purposes of safety and security.
   g. <u>Employee.</u> For the purposes of this Directive only, an employee shall be a person employed by the Department of Correction or anyone designated by the Commissioner or designee who is allowed unescorted access in a correctional facility.
   h. <u>General Facility Search.</u> A planned and systematic search of all areas within and around a correctional facility, including the grounds, parking areas, and employee offices and work areas.
   i. <u>Internal Medical Device.</u> For purposes of this directive, the term internal medical device shall include a pacemaker or defibrillator.
   j. <u>Intersex.</u> A person whose sexual or reproductive anatomy or chromosomal pattern does not fit typical definitions of male or female. Intersex medical conditions are sometimes referred to as Disorders of Sex Development.
   k. <u>Manual Body Cavity Search.</u> The manual examination of an inmate's mouth, nose, ears and/or genital/rectal areas as provided by Section 8 of this Directive, this shall not include examinations conducted for medical purposes.

Green v. Quiros, 3:24-cv-1317 : 0081

| Directive Number | Effective Date | Page 2 of 8 |
|---|---|---|
| 6.7 | 06/29/18 | |
| Title | | |
| Searches Conducted in Correctional Facilities | | |

      l. **Pat Search.** A systematic observation and physical inspection, using the hands, of a person while clothed.

      m. **PREA.** Prison Rape Elimination Act.

      n. **Reasonable Suspicion.** Judgment based on specific objective facts and reasonable inferences drawn in light of experience, training and education.

      o. **Search.** Any inspection of a person, area or property.

      p. **Strip-Search.** A strip-search shall mean a visual body cavity search which includes a systematic visual inspection of an unclothed person's hair, body cavities (to include the individual's ears, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia. This search shall also include a physical search of the clothing and any personal effects.

      q. **Temporary Surrender.** An inmate admitted to a Department facility under arrest but without a court order, pending arraignment.

      r. **Transgender.** A person whose identity (i.e., internal sense of feeling male or female) is different from the person's assigned sex at birth.

      s. **Visitor.** For the purposes of this Directive only, a visitor shall be a person entering a correctional facility who is not an employee, contractor or an inmate.

4. **Inmate Pat Searches.**

      a. A pat search shall include an inspection of the person's clothing and any item in the person's possession.

      b. A pat search shall be conducted:

         i. On all inmates to be transported outside the facility;

        ii. At the conclusion of all contact visits;

      iii. Preceding a strip-search; or,

       iv. On a random basis to further any correctional purpose.

      c. Reasonable accommodations shall be made to provide for same gender pat searches of female inmates.

         i. When such accommodation cannot be made and a pat search of a female inmate is deemed essential without delay, then a cross gender pat search may be conducted.

        ii. All cross gender pat searches of female inmates shall be documented on CN 6601, Incident Report.

5. **Inmate Strip-Searches.**

      a. **General Guidelines.** An inmate strip-search shall normally be conducted in an area out of view of individuals not involved in the search process and shall not normally require physical contact by staff.

         i. All clothing and items in the inmate's possession shall be examined.

        ii. Reasonable accommodations shall be made to provide for same gender strip-searches. When such accommodation cannot be made and the strip-search is deemed to be essential without delay, then a cross gender strip-search shall be conducted.

       iii. All cross gender strip-searches shall be reported on CN 6601, Incident Report, in accordance with Administrative Directive 6.6, Reporting of Incidents.

      b. **Strip-Searches When Reasonable Suspicion is not required.** A strip-search shall be conducted for the following circumstances:

         i. Upon admission or return of a sentenced inmate, regardless of the offense (to include any inmate incarcerated for a fine), to a Department facility;

        ii. Upon admission or return to a Department facility when an inmate is:

           1. unsentenced, charged with a felony offense; or,

           2. unsentenced, charged with a misdemeanor offense NOT listed on Attachment B, Offenses Requiring Reasonable Suspicion to Conduct a Strip-Search; or,

           3. a violation of probation, temporary surrender or an unsentenced youthful offender charged with a felony or for a misdemeanor offense NOT listed on Attachment B; or,

**Green v. Quiros, 3:24-cv-1317 : 0082**

| Directive Number 6.7 | Effective Date 06/29/18 | Page 3 of 8 |
|---|---|---|
| Title | Searches Conducted in Correctional Facilities | |

           4. a remand from the United States Department of Homeland Security (Immigration and Customs Enforcement); or,

           5. a remand from the United States Marshals Service; or,

           6. a temporary confinement of extradition in a third state; or,

           7. a Governor's Warrant detainee.

    iii. Upon readmission to a facility from a halfway house, parole, special parole, transitional supervision or any other community release program.

    iv. Upon inter-facility or out-of-state transfer provided that the inmate is sentenced.

    v. Upon entering and leaving a level 5 facility or a designated level 5 housing unit.

    vi. Upon initial placement in a specialized housing unit, to include the following:

           1. Administrative Segregation;

           2. Chronic Discipline;

           3. Security Risk Group Member;

           4. Medical Inpatient;

           5. Mental Health;

           6. Protective Custody; or,

           7. Restrictive Housing.

    vii. When the inmate has participated in a significant incident during the inmate's current incarceration.

    viii. When submitting a specimen for urinalysis, in accordance with Administrative Directive 6.8, Urinalysis.

    ix. At the conclusion of any contact visit.

    x. During a planned general facility search or any other search conducted within a facility other than intake.

    xi. During a facility emergency (i.e., disturbance, hostage situation, etc.).

  c. Strip-Searches When Reasonable Suspicion is Required.

    i. Reasonable suspicion in accordance with Attachment A, Strip-Search Decision Tree shall be established prior to conducting a strip-search in the following statuses:

           1. a misdemeanor offense listed on Attachment B; or,

           2. a violation of probation, temporary surrender or a youthful offender charged with a misdemeanor offense listed on Attachment B; or,

           3. an accused civil charge.

    ii. Reasonable suspicion that the inmate is concealing contraband shall be documented on Form CN 6701, Strip-Search Report and forwarded to the Shift Commander or designee for authorization to conduct a strip-search prior to any such search being performed. If reasonable suspicion that the inmate is concealing contraband is not established in accordance with this Directive, the inmate shall not be strip-searched.

  d. Identification and Tracking of Minor Misdemeanor Inmates. Upon admission or readmssion, the Admissions and Processing Officer or other authorized staff shall review all incoming continuance mittimus/admitting documents to determine if a pretrial inmate is being held solely for a misdemeanor offense(s) listed on Attachment B. If the inmate is being held solely for a misdemeanor offense(s) listed on Attachment B, then CN 6702, Minor Misdemeanant Identification Form shall be completed and an appropriate computer entry made to establish a flag identifying the inmate as a minor misdemeanant. CN 6702, Minor Misdemeanant Identification Form shall be maintained in Section 3 of the inmate's master file. In the event there is a status change based on new charges, information or other relevant reasons, Section 3 of CN 6702, Minor Misdemeanant Identification Form shall be completed to initiate the removal of the flag from the computer screen.

  e. Controlled Strip-Searches. Controlled strip-searches shall be conducted as follows:

    i. Reasons to Conduct Search. Staff may conduct a hands on, controlled strip-search of an inmate:

Green v. Quiros, 3:24-cv-1317 : 0083

| Directive Number 6.7 | Effective Date 06/29/18 | Page 4 of 8 |
|---|---|---|

| Title |
|---|
| Searches Conducted in Correctional Facilities |

1. in the event the inmate refuses to comply with a strip-search as defined in Section 3(Q) of this Directive;
2. for a valid penological reason; or,
3. when the inmate is confined at Northern CI, Garner CI, or any other unit designated by the Commissioner to conduct controlled strip-searches.

 ii. <u>Authorization, Observation and Video Documentation of Search.</u> A controlled strip-search shall be authorized and observed by a custody supervisor. When practicable, prior to conducting a controlled strip-search, verbal intervention shall be attempted in accordance with the intervention provisions of Administrative Directive 6.5, Use of Force. If the initial verbal intervention is unsuccessful, the custody supervisor shall summon a video camera, which shall document the final verbal intervention with the inmate, as well as the controlled strip-search.

 iii. <u>Conduct of Search.</u> In order to facilitate a controlled strip-search, the inmate's clothing may be systematically removed manually or removed via medical shears a portion at a time under the direction of the custody supervisor. If the inmate continues to be uncooperative, staff may manually position parts of the inmate's body in order to view all areas of the inmate's body, making every attempt to avoid physical contact with the genitals and rectum. The controlled strip-search shall only seek to observe all areas of the inmate's body to reasonably ensure the safety and security of the public, staff and inmates. Controlled strip searches may only be conducted by persons of the same gender as the inmate being searched.

 iv. <u>Written Documentation of Search.</u>
  1. A controlled strip-search shall be documented utilizing the following forms:
   a. CN 6601, Incident Report;
   b. CN 6501, Use of Force Report; and (when required),
   c. CN 6502, Use of Firearms, Impact Weapons or Chemical Agents.
  2. Completed forms shall be submitted to the Shift Commander for review.
  3. The documentation of controlled strip-searches conducted on a routine basis at Northern CI or upon intake to the Restrictive Housing Unit and the Inpatient Mental Health Unit at Garner CI shall not be required. However, if at these facilities an inmate becomes non-compliant, combative or refuses to follow staff direction during a controlled strip-search, the incident shall be documented in accordance with Administrative Directives 6.5, Use of Force, and Administrative Directive 6.6., Reporting of Incidents.

6. <u>Reasonable Suspicion.</u>
 a. <u>Determining Reasonable Suspicion.</u> Any of the following factors shall be taken into account when determining reasonable suspicion for an inmate strip-search:
  i. The nature of the crime or offense with which an inmate is charged (i.e., is the inmate's charge a felony or a misdemeanor NOT listed on Attachment B);
  ii. The circumstances of the individual's arrest or detention, if known;
  iii. The particular characteristics of the inmate (e.g., physical appearance, behavior, risk for self-harm, past criminal or correctional history, etc.);
  iv. Positive reading from authorized detector/scanning equipment or canine alert;
  v. Informant information in accordance with Section 6(B) of this Directive; or,
  vi. Other facts contributing to suspicion or lack thereof.
 b. <u>Determining Reasonable Suspicion Based on Informant Information.</u> If the information used to determine reasonable suspicion derives from an informant,

Green v. Quiros, 3:24-cv-1317 : 0084

| Directive Number 6.7 | Effective Date 06/29/18 | Page 5 of 8 |
|---|---|---|
| Title | Searches Conducted in Correctional Facilities | |

the following factors should be considered and documented on CN 6601, Incident Report:

    i. The nature of the tip or information;

    ii. The reliability of the informant;

    iii. The degree of corroboration;

    iv. The motivation of the informant to be truthful; and,

    v. Other facts contributing to suspicion or lack thereof.

  c. Posting of Reasonable Suspicion Criteria. A copy of Attachment A and Attachment B shall be laminated and posted at each point of admission and other appropriate areas.

7. Transgender inmates and/or inmates with an Intersexed Related Condition.

  a. Transgender and/or Inmates with an Intersexed Related Condition shall be subject to pat searches and strip searches while under the custody of the Department of Correction.

    i. Supervisors shall select custodial staff members who complete a pat search or strip search on a transgendered inmate and Inmates with an intersex condition in accordance with Administrative 8.17, Gender Non-Conforming.

8. Inmate Manual Body Cavity Search.

  a. An inmate manual body cavity search shall be performed only by a medical professional under the supervision of a licensed physician. An examination conducted for medical purposes shall not be considered a search as it applies to this Directive. In conducting manual body cavity searches, the following guidelines shall be followed:

    i. A manual body cavity search shall be conducted when there is reasonable suspicion that the inmate may be carrying contraband.

    ii. A manual body cavity search of an inmate may only be considered after reasonable, less intrusive measures of recovery of the suspected contraband have been considered or employed as appropriate (e.g., persuasion, self-retrieval, x-ray, expulsion, etc.).

      1. This may include placement in a dry cell or room under direct observation for a minimum of 72 hours if required.

      2. A manual body cavity search shall only be conducted upon approval by the Deputy Commissioner of Operations and Rehabilitative Services.

      3. The Chief Medical Officer or designee shall assign an appropriate health service employee in consultation with the Deputy Commissioner of Operations and Rehabilitative Services to conduct the search.

      4. A manual body cavity search shall be conducted in a clinical setting (i.e., Health Services Unit or outside hospital).

      5. When custody staff are required to be present, staff members of the same gender shall be utilized unless the inmate has an approved gender nonconforming management plan. If the inmate has an approved gender non-conforming management plan, then the supervisor overseeing the search shall make arrangements according to the inmate's preference for gender of custody staff who will be present.

    iii. Upon completion of a manual body cavity search, CN 6601, Incident Report shall be completed in accordance with Administrative Directive 6.6, Reporting of Incidents, shall be completed by the custody designee and submitted to the Deputy Commissioner of Operations and Rehabilitative Services stating the reasons for the search, other options which were considered or employed, the individuals present when the search was conducted, and the findings of the search.

      1. In addition, a medical incident report shall be completed by the health service employee conducting the examination and submitted with the original incident report.

**Green v. Quiros, 3:24-cv-1317 : 0085**

| Directive Number | Effective Date | Page 6 of 8 |
|---|---|---|
| 6.7 | 06/29/18 | |
| Title | | |
| Searches Conducted in Correctional Facilities | | |

9. Visual inspection during medication administration. A visual inspection of the oral (mouth) cavity by a custody and/or medical staff member shall be conducted when an employee dispenses medication. Oral cavity inspection shall be required prior to and after the inmate ingests any medication.
   a. The inmate shall be required to open the mouth, lift the tongue and move the tongue from side to side.

10. Search by Means of Metal Detectors and Other Authorized Scanning/Detecting Systems. Search by means of metal detectors and other authorized scanner/detecting systems shall be conducted as follows:
    a. During admission, transfer or routine transport of an inmate;
    b. Whenever an inmate is suspected of ingesting or inserting metallic contraband in a body cavity; and,
    c. On a random basis to further any correctional purpose.
       i. If a positive reading is indicated, CN 6701, Strip-Search Report shall be completed and a strip-search conducted in accordance with Section 5 of this Directive.

11. Canine Searches. Canine searches shall be utilized to provide a safe and secure environment for the public, employee and inmates by controlling the introduction, movement and use of contraband. Canine searches shall be utilized as authorized by the Unit Administrator.

12. Non-Inmate Searches. Non-inmates and their property may be subject to searches upon entering the perimeter or grounds of a correctional facility or any other site operated by the Department of Correction, as follows:
    a. Visitors/Contractors. A visitor/contractor shall be required to pass through a metal detector when initially entering the secure area of a correctional facility. In accordance with Section 18-81v of the Connecticut General Statutes, a visitor who activates a walk-through metal detector shall be given the opportunity to submit to a search with a portable or hand-held metal detector in order to gain entrance into the correctional facility. If the visitor consents to a search, such consent shall be documented on CN 100603, Visitor Search Consent Form in accordance with Administrative Directive 10.6, Inmate Visits. When the visitor consents to a search with a portable or hand-held metal detector, the visitor shall be escorted by a correction officer of the same sex to a separate room, restroom or other private location within the correctional facility, where the visitor shall first remove any object or article of clothing that activated the walk-through metal detector and then submit to a portable or hand-held metal detector search. If the portable or hand-held metal detector is not activated during such search, the visitor shall be allowed to re-apply the object or article of clothing that activated the walk-through metal detector before exiting the separate room, restroom or other private location where the portable or hand-held metal detector search is conducted and shall be allowed to enter the correctional facility. If the portable or hand-held metal detector is activated during such search or if the visitor refuses to give consent to be searched, the visitor shall be denied access to the facility. Visitors who have an internal medical device and who either activate or cannot pass through a walk-through metal detector, shall NOT be searched with a portable or hand-held metal detector. The visitor may be screened by a pat search if he or she consents. If consent is provided and the pat search completed, a visit may be authorized under the terms and conditions deemed appropriate in the discretion of the Unit Administrator or designee. At all times, the Unit Administrator or designee shall maintain the right to permit, limit or deny a visit in furtherance of the safety and security of the facility. A custody supervisor shall be present, when available, during the pat search of a visitor. Should the visitor refuse to consent to a pat search, the supervisor shall contact the Duty Officer. The Duty Officer shall make the decision as to the status of the visit and the conditions there of.

Green v. Quiros, 3:24-cv-1317 : 0086

| Directive Number | Effective Date | Page 7 of 8 |
|---|---|---|
| 6.7 | 06/29/18 | |

| Title |
|---|
| Searches Conducted in Correctional Facilities |

b. Employees. An employee, at a minimum, may be required to pass through a metal detector, submit to visual check/inspection of personal belongings brought into the facility to include but not limited to food containers/bags/purses/jackets or submit to a pat search when entering a facility. In addition, an employee may be subject to a strip-search based on reasonable suspicion that the employee is carrying contraband. Such search shall only be authorized by the Unit Administrator or higher authority. An employee and a supervisor of the same gender shall conduct such searches in a private area. Refusal to submit to a search may subject the employee to disciplinary action, up to and including dismissal from state service.

c. Unauthorized Items. Each facility shall post a list of items that staff may not bring into the secured area of the facility or to any post in accordance with Attachment D, List of Unauthorized Items. A copy of Attachment D, List of Unauthorized Items shall be laminated and posted at each public entrance and staff access point. It shall be the employee's responsibility to seek clarification from a supervisor regarding the introduction of any questionable items into the facility.

13. Vehicle Searches. All vehicles entering facility property are subject to random or routine search with consent. Failure to give consent shall result in denial of access.

a. Posting and Notification. A sign shall be posted at each facility entrance stating: "You are entering a correctional facility. All visitors and vehicles are subject to search by Department of Correction personnel. It is a crime to convey, pass or causing to be conveyed or passed into this facility any item that is prohibited by Sections 53a-174, 53a-174a and 53a-174b of the Connecticut General Statutes. Violators shall be prosecuted. A list of prohibited items is posted inside."

b. List of Prohibited Items. A list of prohibited items shall be prominently posted in the lobby area utilizing Attachment C, List of Prohibited Items.

c. Vehicle Search procedures. Each unit shall develop vehicle search procedures specific to that individual facility and incorporate them into relevant Post Orders, General Post Order Attachments and/or Unit Directives in accordance with Administrative Directive 1.3, Development Revision and Revision of Policies and Procedures, specific to searches conducted on vehicles entering and leaving the secured area of the compound. The facility procedure shall include, but is not limited to, search procedures for Department of Correction vehicles, outside Law Enforcement and contracted service/vendor vehicles.

14. Facility Searches. Each unit shall develop Unit Directives and a unit search plan to meet the requirements of this Directive. The Unit Directive and plan shall include:

a. General Facility Searches. A general facility search shall be authorized by the Unit Administrator. General facility searches shall be conducted at least annually at Level 2 and 3 security classification facilities and not less than twice each year at Level 4 and not less than three (3) times each calendar year at Level 5 security classification facilities. When a facility search is conducted the entire facility shall be searched prior to returning to normal operations. The appropriate District Administrator shall be notified prior to a general facility search.

b. Housing Unit/Area Searches. Housing unit and area (e.g., kitchen, industry plants, gymnasium, etc.) searches shall be conducted routinely and periodically as authorized by the Shift Commander.

c. Cell, Room, Cubicle and Other Housing Area Searches. A search of an inmate's cell, room, cubicle or other housing area shall be conducted by the assigned correction officer as directed by a supervisor or as required by facility policy. If the inmate is present in the cell, room, cubicle or other housing area, the inmate shall be removed and pat searched prior to the cell, room, cubicle or other housing area being searched. Cell, room, cubicle or other housing area searches shall be recorded in the station log and facility log in accordance with Administrative Directive 6.2, Facility Post Orders and Logs.

Green v. Quiros, 3:24-cv-1317 : 0087

| Directive Number 6.7 | Effective Date 06/29/18 | Page 8 of 8 |
|---|---|---|
| Title | Searches Conducted in Correctional Facilities | |

Any time medication, medical equipment and/or medical supplies are confiscated from an inmate or the inmate's living area, said medication, medical equipment and/or medical supplies must be bagged and delivered to the Health Services Unit for review and disposition (i.e., disposal or redistribution).

   d. **Employee Work Areas.** Areas utilized by employees (e.g., employee offices and rooms, locker rooms, employee lounges, etc.) shall be searched during a general facility search.

   e. **Community Contract Agency Searches.** The Director of Parole and Community Services or designee shall develop and maintain procedures to conduct a search of each halfway house consistent with this Directive. Such searches shall be conducted annually, at a minimum.

15. **Treatment of Religious Articles and Items.** All religious articles and religious items, including but not limited to the Holy Bible, the Qur'an, and the Torah, shall be respected by staff and inmates at all times. Religious articles and religious items shall not be carelessly handled by staff when conducting searches or other authorized operational or security activities. Special care shall be taken to respect religious articles and religious items. Religious articles and religious items may be confiscated for cause in accordance with Administrative Directive 6.10, Inmate Property. Any questions or concerns regarding any religious article or item shall be referred to the appropriate chaplain and/or other subject matter expert, as appropriate. Native American medicine bags shall not normally be handled by staff. In cases where a medicine bag and/or its contents require examination by staff, staff shall instruct the inmate possessing the medicine bag to empty its contents on to a surface for inspection.

16. **Handling of Contraband and Physical Evidence.** All handling, documentation and disposal of contraband and physical evidence shall be in accordance with Administrative Directive 6.9, Control of Contraband and Physical Evidence.

17. **Staff Training.** Staff whose job classifications may require them to perform pat searches and/or strip searches shall be trained on how to conduct cross gender pat searches and searches of transgender and intersex inmates in a professional and respectful manner, and in the least intrusive manner possible that is consistent with security needs.

18. **Forms and Attachments.** The following forms and attachments are applicable to this Administrative Directive and shall be utilized for the intended function:
   a. CN 6701, Strip-Search Report;
   b. CN 6702, Minor Misdemeanant Identification Form;
   c. Attachment A, Strip-Search Decision Tree;
   d. Attachment B, Offenses Requiring Reasonable Suspicion to Conduct a Strip-Search;
   e. Attachment C, List of Prohibited Items; and,
   f. Attachment D, List of Unauthorized Items.

19. **Exceptions.** Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

Green v. Quiros, 3:24-cv-1317 : 0088



## WEEKDAY    SCHEDULE

ROT#3    DATE    6/3/2024

| 60 min | | Inmate Name | Inmate Number | Housing Unit | Visitor # 1 Name | DOB | Visitor #2 Name | DOB | Visitor # 3 Name | DOB |
|---|---|---|---|---|---|---|---|---|---|---|
| 6:30PM - 7 | 1 | | | | | | | | | |
| VIDEO VIS | 2 | | | | | | | | | |
| 10 SPOTS | 3 | | | | | | | | | |
| | 4 | | | | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 9 | | | | | | | | | |
| | 10 | | | | | | | | | |
| 8:00PM -9 | 1 | | | | | | | | | |
| VIDEO VIS | 2 | | | | | | | | | |
| 10 SPOTS | 3 | | | | | | | | | |
| 9A | 4 | Green | 320094 | 9A 110 | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 9 | | | | | | | | | |
| | 10 | | | | | | | | | |

CLEAN 8:00PM

Green v. Quiros, 3:24-cv-1317 : 0070



EXH. 14



WEEKDAY    SCHEDULE                                     ROT#3    DATE    6/10/2024

| 60 min | | Inmate Name | Inmate Number | Housing Unit | Visitor # 1 Name | DOB | Visitor #2 Name | DOB | Visitor # 3 Name | DOB |
|---|---|---|---|---|---|---|---|---|---|---|
| 6:30PM - 7 | 1 | | | | | | | | | |
| VIDEO VIS | 2 | | | | | | | | | |
| 10 SPOTS | 3 | | | | | | | | | |
| 8 | 4 | | | | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 9 | | | | | | | | | |
| | 10 | | | | | | | | | |
| 8:00PM -9 | 1 | | | | | | | | | |
| VIDEO VIS | 2 | | | | | | | | | |
| 10 SPOTS | 3 | | | | | | | | | |
| 9A | 4 | Green | 320094 | 9A 110 | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 9 | | | | | | | | | |
| | 10 | | | | | | | | | |

CLEAN 8:00PM

Green v. Quiros, 3:24-cv-1317 : 0071



| | **Inmate Request Form** | CN 9601 |
|---|---|---|
| | **Connecticut Department of Correction** | REV |
| | | 04/30/2021 |

Inmate name: Courtney Green

Inmate number: 320094

Facility/Unit: CRCI

Housing unit: 9A-110

Date: 3-16-24

Submitted to: DW Ogando / Operations

Request: ON 3-15-24 I had a virtual visit, and upon conclusion of said visit, c/o Stewart stripped me when I had no contact with anyone from the outside. Moreover, the practice of strip searching IIM's after a non-contact visit is unreasonable and violates A.D. C.7 section 5 and all of it's subsections, as well being unconstitutional. See Bell v. Wolfish, 441 U.S. 520 (1979) (IIM's can routinely be strip searched after contact visits, initial or readmission to a facility; placement in RHU, PC, CC, and upon reasonable belief that an IIM may be carrying contraband. Please cease this practice, it's unconstitutional.

*continue on back if necessary*

Previous action taken:

MAR 20 2024

*continue on back if necessary*

Acted on by (print name): N Nyalinne

Title: Dec 7

Action taken and/or response:

You are writing to the wrong Deputy Warden. Deputy Warden Ogando oversees the supervision of the Correction Officers who are strip searching you. You need to write to him.

*continue on back if necessary*

Staff signature:

Date: 3/20/24



EXH. 1C



# Inmate Grievance Form- Level 1
## Connecticut Department of Correction

CN 9602
REV
04/30/2021

| | |
|---|---|
| Facility/Unit: CRCI | Date: March 25, 2024 |
| Inmate name: Courtney Green | Inmate number: 320094 |

### INMATE ADVISEMENT

- Any inmate who files a grievance must follow all instructions in Section 5 and 6 of Administrative Directive 9.6, "Inmate Administrative Remedies."
- Any grievance which does not follow the instructions identified in the above mentioned sections shall be rejected.

### STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

I'm grieving Attached CN 9601 that's stamped DW's Office, so DW Ogando has constructive Knowledge of Attached CN 9601 And it's contents. Moreover DW Ogando is fully Aware of the practice of the strip searches being conducted At the conclusion of video visits. On 3-15-24 (C/O Stewart strip seached me), on 3-23-24 (C/O Langolis

Inmate signature: CG

Date: March 25, 2024

- Deposit this form in the "Administrative Remedies" box

### DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

| Date Received: 03-25-2024 | IGP #: 116-24-105 |
|---|---|
| Disposition: **Denied** | Date of Disposition: 04-03-2024 |

Reason:

*You have filed a Level One Grievance regarding strip searches at the conclusion of visits at Robinson Correctional Institution. In an effort to allow the maximum amount of visits, with the limited space available, to the facility population, all Inmates share the same waiting area/ holding bullpen in the Visiting Center. Due to the close contact of all Inmates who are in the Visiting Center for their visits (Contact/Non-Contact/Video), there is reasonable suspicion for the use of strip searches to ensure the safety and security of the facility and the Inmate population it houses. Your grievance is denied.*

| ☐ This decision is not subject to further appeal. | ☑ This matter may be appealed within 5 calendar days. |
|---|---|

Staff Name Print: Warden Camon

Signature: Warden Camon

Date: 4/3/24

strip searched me after conclusions of video visits, and the problem is that such practice is an unreasonable search and violates A.D.C.7 Resolution requested is to cease the unreasonable searches, they are unconstitutional, as the Supreme Court's decision in Bell v. Wolfish, 441 U.S. 520 (1979), outlines when strip searches on prisoners are permissible and after non-contact visits misses it's mark.





8:00PM -9:

VIDEO VISI

10 SPOTS

9A

| | | | | |
|---|---|---|---|---|
| Green | 320094 | 9A 110 | | |

FRIDAY  3-15-24

Green v. Quiros, 3:24-cv-1317 : 005



| 60 min | | Inmate Name | Inmate Number | Housing Unit | Visitor # 1 Name | DOB | Visitor #2 Name | DOB | Visitor # 3 Name | DOB |
|--------|--|-------------|---------------|--------------|------------------|-----|-----------------|-----|------------------|-----|
| 9:00AM-10 | 1 | | | | | | | | | |
| VIDEO VISIT | 2 | | | | | | | | | |
| 10 SPOTS | 3 | | | | | | | | | |
| 9A | 4 | | | | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | Green | 320094 | 9A 110 | | | | | | |
| | 9 | | | | | | | | | |
| | 10 | | | | | | | | | |

SATURDAY   3-23-24

Green v. Quiros, 3:24-cv-1317 : 006



EXH. 18

# Inmate Grievance Appeal Form - Level 2
## Connecticut Department of Correction

CN 9604
REV
04/30/2021

Inmate name: Courtney Green

Inmate number: 320094

Facility/Unit: Robinson CI

Housing unit: 9A-110

Date: 4-5-2024

IGP number: 11C-24-105

## Inmate Acknowledgement

- Use this form to appeal a CN 9602, Inmate Grievance Form- Level 1.
- When submitting this form, the following must be included for processing:
  - o All original documentation for prior resolution (e.g. Initial CN 9601, Inmate Request form; CN 9602, Inmate Grievance Form Level 1; etc.).
- NOTE:
  - o Your appeal must be filed within five (5) calendar days of the Level 1 response and deposited in the "Administrative Remedies" box within the institution. A level 2 shall be rejected if all documentation from the level 1 response is not included.

## Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because: The level 1 response is erroneous. To begin this remedy challenges Departmental-level policy And is subject to level 3 review. See A.D. 9.6 Sec. III. Sub. Sec. i., paragraph. a. Needless to say that A.D.C.7 which is promulgated by Comsr Quiros does Not mention reference or Authorize strip searches At the conclusion of Non-contact/video visits. Nor does UA Caron cite to Any section of A.D. C.7

Inmate signature: CG

Date: 4-5-2024

---

Date received: 4/12/2024

Disposition: **Denied**

Date of disposition: 4/18/2024

Reasons:

*You are appealing a level one grievance (116-24-105) regarding strip searches after a video visit at Robinson CI. The response provided by Warden Caron to your level 1 grievance was thorough and appropriate. Therefore, your grievance is denied.*

Level 2 reviewer print name: *Washington*

Title: *District Administrator*

Level 2 reviewer signature:

Date: *4/18/2024*

☐ This grievance may be appealed within five (5) Calendar days to Level 3.

☑ This decision is not subject to further appeal.

Green v. Quiros, 3:24-cv-1317 : 007

*556 The District Court

not shown that the rest
[petitioners] can show a
approached by the War
must be rejected." 439
148-149. The Court of /
observe the search of h
any detainee who becai

The Court of Appeals di
District Court stated tha
founded on the Fourth A
facility has no reasonab
provides no protection fi
realities of institutional c
a diminished scope. Id.,
privacy after commitmer
Amendment.

It is difficult to see how tl
that room searches repr
prohibited such searche:
required to conduct such
courts' rulings. Permittin
conceivable beneficial ef
simply facilitates the safe

_RESEARCH_

_USED TO_

_Answer._
_116-24-105_
_116-24-098_

pretrial detainees because MCC officials had
court stated that "[a]t least until or unless
vers of control—a kind of showing not remotely
ig inmates while their rooms are searched
nmates suspected guards of thievery. Id., at
on whatsoever not to permit a detainee to
although the court permitted the removal of

ilied in invalidating the room-search rule. The
id indicated that this interest in privacy was
irgued that a person confined in a detention
ill and that therefore the Fourth Amendment
S. 139, 143-144 (1962). In any case, given the
it a detainee retained necessarily would be of
etains such a diminished expectation of
om-search rule does not violate the Fourth

m-search rule. No one can rationally doubt
District Court nor the Court of Appeals
ghts would not suggest that a warrant is
ms may be searched, even after the lower
he invasion of their privacy; its only
lucting the search. The room-search rule
icede may be conducted. The rule itself,

then, does not render the searches "unreasonable" within the meaning of the Fourth Amendment.[38]

*558 **D**

Inmates at all Bureau of Prisons facilities, including the MCC, are required to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution.[39] Corrections officials testified that visual cavity searches were necessary not only to discover but also to deter the smuggling of weapons, drugs, and other contraband into the institution. App. 70-72, 83-84. The District Court upheld the strip-search procedure but prohibited the body-cavity searches, absent probable cause to believe that the inmate is concealing contraband. 439 F. Supp., at 147-148. Because petitioners proved only one instance in the MCC's short history where contraband was found during a body-cavity search, the Court of Appeals affirmed. In its view, the "gross violation of personal privacy inherent in such a search cannot be out-weighed by the government's security interest in maintaining a practice of so little actual utility." 573 F. 2d, at 131.

Admittedly, this practice instinctively gives us the most pause. However, assuming for present purposes that inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections facility, see _Lanza v. New York, supra_; _Stroud v. United States_, 251 U. S. 15, 21 (1919), we nonetheless conclude that these searches do not violate that Amendment. The Fourth Amendment prohibits only unreasonable searches, _Carroll v. United States_, 267 U. S. 132, 147 (1925), and under the circumstances, we do not believe that these searches are unreasonable.

*559 The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. E. g., _United States v. Ramsey_, 431 U. S. 606 (1977); _United States v. Martinez-Fuerte_, 428 U. S. 543 (1976); _United States v. Brignoni-Ponce_, 422 U. S. 873 (1975); _Terry v. Ohio_, 392 U. S. 1 (1968); _Katz v. United States_, 389 U. S. 347 (1967); _Schmerber v. California_, 384 U. S. 757 (1966). A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them

*556 The District Court held that this procedure could not stand as applied to pretrial detainees because MCC officials had not shown that the restriction was justified by "compelling necessity."[37] The court stated that "[a]t least until or unless [petitioners] can show a pattern of violence or other disruptions taxing the powers of control—a kind of showing not remotely approached by the Warden's expressions—the security argument for banishing inmates while their rooms are searched must be rejected." 439 F. Supp., at 149. It also noted that in many instances inmates suspected guards of thievery. Id., at 148-149. The Court of Appeals agreed with the District Court. It saw "no reason whatsoever not to permit a detainee to observe the search of his room and belongings from a reasonable distance," although the court permitted the removal of any detainee who became "obstructive." 573 F. 2d, at 132.

The Court of Appeals did not identify the constitutional provision on which it relied in invalidating the room-search rule. The District Court stated that the rule infringed the detainee's interest in privacy and indicated that this interest in privacy was founded on the Fourth Amendment. 439 F. Supp., at 149-150. It may well be argued that a person confined in a detention facility has no reasonable expectation of privacy with respect to his room or cell and that therefore the Fourth Amendment provides no protection for such a *557 person. Cf. Lanza v. New York, 370 U. S. 139, 143-144 (1962). In any case, given the realities of institutional confinement, any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope. Id., at 143. Assuming, arguendo, that a pretrial detainee retains such a diminished expectation of privacy after commitment to a custodial facility, we nonetheless find that the room-search rule does not violate the Fourth Amendment.

It is difficult to see how the detainee's interest in privacy is infringed by the room-search rule. No one can rationally doubt that room searches represent an appropriate security measure and neither the District Court nor the Court of Appeals prohibited such searches. And even the most zealous advocate of prisoners' rights would not suggest that a warrant is required to conduct such a search. Detainees' drawers, beds, and personal items may be searched, even after the lower courts' rulings. Permitting detainees to observe the searches does not lessen the invasion of their privacy; its only conceivable beneficial effect would be to prevent theft or misuse by those conducting the search. The room-search rule simply facilitates the safe and effective performance of the search which all concede may be conducted. The rule itself, then, does not render the searches "unreasonable" within the meaning of the Fourth Amendment.[38]

*558 D

Inmates at all Bureau of Prisons facilities, including the MCC, are required to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution.[39] Corrections officials testified that visual cavity searches were necessary not only to discover but also to deter the smuggling of weapons, drugs, and other contraband into the institution. App. 70-72, 83-84. The District Court upheld the strip-search procedure but prohibited the body-cavity searches, absent probable cause to believe that the inmate is concealing contraband. 439 F. Supp., at 147-148. Because petitioners proved only one instance in the MCC's short history where contraband was found during a body-cavity search, the Court of Appeals affirmed. In its view, the "gross violation of personal privacy inherent in such a search cannot be out-weighed by the government's security interest in maintaining a practice of so little actual utility." 573 F. 2d, at 131.

Admittedly, this practice instinctively gives us the most pause. However, assuming for present purposes that inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections facility, see Lanza v. New York, supra; Stroud v. United States, 251 U. S. 15, 21 (1919), we nonetheless conclude that these searches do not violate that Amendment. The Fourth Amendment prohibits only unreasonable searches, Carroll v. United States, 267 U. S. 132, 147 (1925), and under the circumstances, we do not believe that these searches are unreasonable.

*559 The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. E. g., United States v. Ramsey, 431 U. S. 606 (1977); United States v. Martinez-Fuerte, 428 U. S. 543 (1976); United States v. Brignoni-Ponce, 422 U. S. 873 (1975); Terry v. Ohio, 392 U. S. 1 (1968); Katz v. United States, 389 U. S. 347 (1967); Schmerber v. California, 384 U. S. 757 (1966). A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them

in body cavities are documented in this record, App. 71-76, and in other cases. E. g., _Ferraro v. United States, 590 F. 2d 335 (CA6 1978)_; _United States v. Park, 521 F. 2d 1381, 1382 (CA9 1975)_. That there has been only one instance where an MCC inmate was discovered attempting to smuggle contraband into the institution on his person may be more a testament to the effectiveness of this search technique as a deterrent than to any lack of interest on the part of the inmates to secrete and import such items when the opportunity arises.[40]

*560 We do not underestimate the degree to which these searches may invade the personal privacy of inmates. Nor do we doubt, as the District Court noted, that on occasion a security guard may conduct the search in an abusive fashion. _439 F. Supp., at 147_. Such abuse cannot be condoned. The searches must be conducted in a reasonable manner. _Schmerber v. California, supra, at 771-772_. But we deal here with the question whether visual body-cavity inspections as contemplated by the MCC rules can _ever_ be conducted on less than probable cause. Balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates, we conclude that they can.[41]

## IV

Nor do we think that the four MCC security restrictions and practices described in Part III, _supra,_ constitute "punishment" *561 in violation of the rights of pretrial detainees under the Due Process Clause of the Fifth Amendment.[42] Neither the District Court nor the Court of Appeals suggested that these restrictions and practices were employed by MCC officials with an intent to punish the pretrial detainees housed there.[43] Respondents do not even make such a suggestion; they simply argue that the restrictions were greater than necessary to satisfy petitioners' legitimate interest in maintaining security. Brief for Respondents 51-53. Therefore, the determination whether these restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose. See _supra,_ at 538-539. Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both. _supra,_ at 539-540; see _supra,_ at 546-547, and n. 28. For the reasons set forth in Part III, _supra,_ we think that these particular restrictions and practices were reasonable responses by MCC officials to legitimate security concerns. Respondents simply have not met their heavy *562 burden of showing that these officials have exaggerated their response to the genuine security considerations that actuated these restrictions and practices. See n. 23, _supra._ And as might be expected of restrictions applicable to pretrial detainees, these restrictions were of only limited duration so far as the MCC pretrial detainees were concerned. See n. 3, _supra._

## V

There was a time not too long ago when the federal judiciary took a completely "hands-off" approach to the problem of prison administration. In recent years, however, these courts largely have discarded this "hands-off" attitude and have waded into this complex arena. The deplorable conditions and Draconian restrictions of some of our Nation's prisons are too well known to require recounting here, and the federal courts rightly have condemned these sordid aspects of our prison systems. But many of these same courts have, in the name of the Constitution, become increasingly enmeshed in the minutiae of prison operations. Judges, after all, are human. They, no less than others in our society, have a natural tendency to believe that their individual solutions to often intractable problems are better and more workable than those of the persons who are actually charged with and trained in the running of the particular institution under examination. But under the Constitution, the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan. This does not mean that constitutional rights are not to be scrupulously observed. It does mean, however, that the inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution or, in the case of a federal prison, a statute. The wide range of "judgment calls" that meet constitutional and statutory requirements are confided to officials outside of the Judicial Branch of Government.

*563 The judgment of the Court of Appeals is, accordingly, reversed, and the case is remanded for proceedings consistent with this opinion.

_It is so ordered._

MR. JUSTICE POWELL, concurring in part and dissenting in part.

Green v. Quiros, 3:24-cv-1317 : 010    11/31



| State of Connecticut Department of Correction | Directive Number 6.7 | Effective Date 01/30/2024 | Page 1 of 9 |
|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | Supersedes<br>Searches Conducted in Correctional Facilities, Dated 06/29/2018 | | |
| Approved By<br><br>Commissioner Angel Quiros | Title<br><br>Searches Conducted in Correctional Facilities | | |

1. <u>Policy.</u> The Department of Correction shall maintain safety and security by conducting searches as provided for in this Directive.

2. <u>Authority and Reference.</u>
   a. Public Law 108-79, Prison Rape Elimination Act of 2003
   b. 28 C.F.R. 115, Prison Rape Elimination Act National Standards
   c. Connecticut General Statutes, Sections 18-81, 18-81v, and 53a-174 through 53a-174b.
   d. Applicable Case Law.
   e. Administrative Directives 6.2 Facility Post Orders and Logs; 6.5, Use of Force; 6.6, Reporting of Incidents; 6.8, Urinalysis; 6.9, Control of Contraband and Physical Evidence; 6.10, Inmate Property;6.12, Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention, 8.17 Gender Diverse and 10.6, Inmate Visits.

3. <u>Definitions and Acronyms.</u> For the purposes stated herein, the following definitions and acronyms apply:
   a. <u>Authorized Detector/Scanning System.</u> Any authorized equipment (e.g., BOSS chair, metal detector, etc.) used to scan for, and detect, concealed contraband.
   b. <u>Body Orifice Scanning System (BOSS Chair).</u> A scanning system designed to detect metal objects concealed in oral, anal, vaginal cavities or other parts of the body.
   c. <u>CI.</u> Correctional Institution.
   d. <u>Contraband.</u> An item that falls under the following criteria:
      i. Not authorized to be in any facility, Unit, area, vehicle, or surrounding grounds under the control of or contracted by the Department of Correction or in an inmate's possession;
      ii. that is authorized, but used in an unauthorized or prohibited manner,
      iii. that is authorized, but altered; or,
      iv. that ownership cannot be established.
   e. <u>Contractor.</u> A person or organization that agrees to furnish materials or to perform services for the Department. Contractors may include organizations which provide services to the Department without cost. Contractors providing services to the Department are subject to all applicable rules and regulations.
   f. <u>Controlled Strip-Search.</u> A strip-search in which Department personnel maintain physical, hands on control of an inmate through the use of restraints or approved restraint techniques for the purposes of safety and security.
   g. <u>Employee.</u> For the purposes of this Directive only, an employee shall be a person employed by the Department of Correction or anyone designated by the Commissioner or designee who is allowed unescorted access in a correctional facility.
   h. <u>General Facility Search.</u> A planned and systematic search of all areas within and around a correctional facility, including the grounds, parking areas, and employee offices and work areas.
   i. <u>Internal Medical Device.</u> For purposes of this directive, the term internal medical device shall include a pacemaker or defibrillator.
   j. <u>Intersex.</u> A person whose sexual or reproductive anatomy or chromosomal pattern does not fit typical definitions of male or female. Intersex medical conditions are sometimes referred to as Disorders of Sex Development.

Rev. 2/27/24

Green v. Quiros, 3:24-cv-1317 : 011

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 2 of 9 |
|---|---|---|
| Title | Searches Conducted in Correctional Facilities | |

    k. <u>Manual Body Cavity Search.</u> The manual examination of an inmate's mouth, nose, ears and/or genital/rectal areas as provided by Section 8 of this Directive, this shall not include examinations conducted for medical purposes.

    l. <u>Pat Search.</u> A systematic observation and physical inspection, using the hands, of a person while clothed.

    m. <u>PREA.</u> <u>P</u>rison <u>R</u>ape <u>E</u>limination <u>A</u>ct.

    n. <u>Reasonable Suspicion.</u> Judgment based on specific objective facts and reasonable inferences drawn in light of experience, training and education.

    o. <u>Search.</u> Any inspection of a person, area or property.

    p. <u>Strip-Search.</u> A strip-search shall mean a visual body cavity search which includes a systematic visual inspection of an unclothed person's hair, body cavities (to include the individual's ears, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia. This search shall also include a physical search of the clothing and any personal effects.

    q. <u>Temporary Surrender.</u> An inmate admitted to a Department facility under arrest but without a court order, pending arraignment.

    r. <u>Transgender.</u> A person whose identity (i.e., internal sense of feeling male or female) is different from the person's assigned sex at birth.

    s. <u>Visitor.</u> For the purposes of this Directive only, a visitor shall be a person entering a correctional facility who is not an employee, contractor or an inmate.

4. <u>Inmate Pat Searches.</u>

    a. A pat search shall include an inspection of the person's clothing and any item in the person's possession.

    b. A pat search shall be conducted:
        i. On all inmates to be transported outside the facility;
        ii. At the conclusion of all contact visits;
        iii. Preceding a strip-search; or,
        iv. On a random basis to further any correctional purpose.

    c. Reasonable accommodations shall be made to provide for same gender pat searches of female inmates.
        i. When such accommodation cannot be made and a pat search of a female inmate is deemed essential without delay, then a cross gender pat search may be conducted.
        ii. All cross gender pat searches of female inmates shall be documented on CN 6604, Incident Report.

5. <u>Inmate Strip-Searches.</u>

    a. <u>General Guidelines.</u> An inmate strip-search shall normally be conducted in an area out of view of individuals not involved in the search process and shall not normally require physical contact by staff.
        i. All clothing and items in the inmate's possession shall be examined.
        ii. Reasonable accommodations shall be made to provide for same gender strip-searches. When such accommodation cannot be made and the strip-search is deemed to be essential without delay, then a cross gender strip-search shall be conducted.
        iii. All cross gender strip-searches shall be reported on CN 6604, Incident Report, in accordance with Administrative Directive 6.6, Reporting of Incidents.

    b. <u>Strip-Searches When Reasonable Suspicion is not required.</u> A strip-search shall be conducted for the following circumstances:
        i. Upon admission or return of a sentenced inmate, regardless of the offense (to include any inmate incarcerated for a fine), to a Department facility;
        ii. Upon admission or return to a Department facility when an inmate is:
            1. unsentenced, charged with a felony offense; or,

Rev. 2/27/24

Green v. Quiros, 3:24-cv-1317 : 012

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 3 of 9 |
|---|---|---|
| Title | Searches Conducted in Correctional Facilities | |

2. unsentenced, charged with a misdemeanor offense NOT listed on Attachment B, Offenses Requiring Reasonable Suspicion to Conduct a Strip-Search; or,
3. a violation of probation, temporary surrender or an unsentenced youthful offender charged with a felony or for a misdemeanor offense NOT listed on Attachment B; or,
4. a remand from the United States Department of Homeland Security (Immigration and Customs Enforcement); or,
5. a remand from the United States Marshals Service; or,
6. a temporary confinement of extradition in a third state; or,
7. a Governor's Warrant detainee.

  iii. Upon readmission to a facility from a halfway house, parole, special parole, transitional supervision or any other community release program.

  iv. Upon inter-facility or out-of-state transfer provided that the inmate is sentenced.

  v. Upon entering and leaving a level 5 facility or a designated level 5 housing unit.

  vi. Upon initial placement in a specialized housing unit, to include the following:
1. Administrative Segregation;
2. Chronic Discipline;
3. Security Risk Group Member;
4. Medical Inpatient;
5. Mental Health;
6. Protective Custody; or,
7. Restrictive Housing.

  vii. When the inmate has participated in a significant incident during the inmate's current incarceration.

  viii. When submitting a specimen for urinalysis, in accordance with Administrative Directive 6.8, Urinalysis.

  ix. At the conclusion of any contact visit.

  x. During a planned general facility search or any other search conducted within a facility other than intake.

  xi. During a facility emergency (i.e., disturbance, hostage situation, etc.).

c. Strip-Searches When Reasonable Suspicion is Required.

  i. Reasonable suspicion in accordance with Attachment A, Strip-Search Decision Tree shall be established prior to conducting a strip-search in the following statuses:
1. a misdemeanor offense listed on Attachment B; or,
2. a violation of probation, temporary surrender or a youthful offender charged with a misdemeanor offense listed on Attachment B; or,
3. an accused civil charge.

  ii. Reasonable suspicion that the inmate is concealing contraband shall be documented on Form CN 6701, Strip-Search Report and forwarded to the Shift Commander or designee for authorization to conduct a strip-search prior to any such search being performed. If reasonable suspicion that the inmate is concealing contraband is not established in accordance with this Directive, the inmate shall not be strip-searched.
1. Once authorized to conduct a strip search due to reasonable suspicion that the inmate is concealing contraband, a Supervisor shall be present and a video camera continuously operating upon initial contact with the suspected inmate and throughout the strip search process.
2. A strip search shall be video recorded by a trained operator. The camera shall continuously record the incident and ensure, as reasonably as possible, the inmate's entire body remains in the frame of the recording the duration of the incident.

Rev. 2/27/24

Green v. Quiros, 3:24-cv-1317 : 013

| Directive Number 6.7 | Effective Date 01/30/2024 | Page 4 of 9 |
|---|---|---|
| Title | Searches Conducted in Correctional Facilities | |

    d. <u>Identification and Tracking of Minor Misdemeanor Inmates.</u> Upon admission or readmission, the Admissions and Processing Officer or other authorized staff shall review all incoming continuance mittimus/admitting documents to determine if a pretrial inmate is being held solely for a misdemeanor offense(s) listed on Attachment B. If the inmate is being held solely for a misdemeanor offense(s) listed on Attachment B, then CN 6702, Minor Misdemeanant Identification Form shall be completed and an appropriate computer entry made to establish a flag identifying the inmate as a minor misdemeanant. CN 6702, Minor Misdemeanant Identification Form shall be maintained in Section 3 of the inmate's master file. In the event there is a status change based on new charges, information or other relevant reasons, Section 3 of CN 6702, Minor Misdemeanant Identification Form shall be completed to initiate the removal of the flag from the computer screen.

    e. <u>Controlled Strip-Searches.</u> Controlled strip-searches shall be conducted as follows:

        i. <u>Reasons to Conduct Search.</u> Staff may conduct a hands on, controlled strip-search of an inmate:

            1. in the event the inmate refuses to comply with a strip-search as defined in Section 3(P) of this Directive;

            2. for a valid penological reason; or,

            3. when the inmate is confined at any unit designated by the Commissioner to conduct controlled strip-searches.

        ii. <u>Authorization, Observation and Video Documentation of Search.</u> A controlled strip-search shall be authorized and observed by a custody supervisor. When practicable, prior to conducting a controlled strip-search, verbal intervention shall be attempted in accordance with the intervention provisions of Administrative Directive 6.5, Use of Force. If the initial verbal intervention is unsuccessful, the custody supervisor shall summon a video camera, which shall document the final verbal intervention with the inmate, as well as the controlled strip-search.

        iii. <u>Conduct of Search.</u> In order to facilitate a controlled strip-search, the inmate's clothing may be systematically removed manually or removed via medical shears a portion at a time under the direction of the custody supervisor. If the inmate continues to be uncooperative, staff may manually position parts of the inmate's body in order to view all areas of the inmate's body, making every attempt to avoid physical contact with the genitals and rectum. The controlled strip-search shall only seek to observe all areas of the inmate's body to reasonably ensure the safety and security of the public, staff and inmates. Controlled strip searches may only be conducted by persons of the same gender as the inmate being searched.

        iv. <u>Written Documentation of Search.</u>

            1. A controlled strip-search shall be documented utilizing the following forms:

                a. CN 6604, Incident Report;

                b. CN 6501, Use of Force Report; and (when required),

            2. Completed forms shall be submitted to the Shift Commander for review.

            3. The documentation of controlled strip-searches conducted on a routine basis for inmates with an Administrative Segregation or Security Risk Group designation, or upon intake to the Restrictive Housing Unit and the Inpatient Mental Health Unit at Garner CI shall not be required. However, if at these facilities an inmate becomes non-compliant, combative or refuses to follow staff direction during a controlled strip-search, the incident shall be documented in accordance with Administrative Directives 6.5, Use of Force, and Administrative Directive 6.6., Reporting of Incidents.

Rev. 2/27/24

Green v. Quiros, 3:24-cv-1317 : 014

| Directive Number | Effective Date | Page 5 of 9 |
|---|---|---|
| 6.7 | 01/30/2024 | |
| Title | | |
| Searches Conducted in Correctional Facilities | | |

6. Reasonable Suspicion.
    a. Determining Reasonable Suspicion. Any of the following factors shall be taken into account when determining reasonable suspicion for an inmate strip-search:
        i. The nature of the crime or offense with which an inmate is charged (i.e., is the inmate's charge a felony or a misdemeanor NOT listed on Attachment B);
        ii. The circumstances of the individual's arrest or detention, if known;
        iii. The particular characteristics of the inmate (e.g., physical appearance, behavior, risk for self-harm, past criminal or correctional history, etc.);
        iv. Positive reading from authorized detector/scanning equipment or canine alert;
        v. Informant information in accordance with Section 6(B) of this Directive; or,
        vi. Other facts contributing to suspicion or lack thereof.
    b. Determining Reasonable Suspicion Based on Informant Information. If the information used to determine reasonable suspicion derives from an informant, the following factors should be considered and documented on CN 6604, Incident Report:
        i. The nature of the tip or information;
        ii. The reliability of the informant;
        iii. The degree of corroboration;
        iv. The motivation of the informant to be truthful; and,
        v. Other facts contributing to suspicion or lack thereof.
    c. Posting of Reasonable Suspicion Criteria. A copy of Attachment A and Attachment B shall be laminated and posted at each point of admission and other appropriate areas.

7. Transgender inmates and/or inmates with an Intersexed Related Condition.
    a. Transgender and/or Inmates with an Intersexed Related Condition shall be subject to pat searches and strip searches while under the custody of the Department of Correction.
        i. Supervisors shall select custodial staff members who complete a pat search or strip search on a transgendered inmate and Inmates with an intersex condition in accordance with Administrative 8.17, Gender Diverse.

8. Inmate Manual Body Cavity Search.
    a. An inmate manual body cavity search shall be performed only by a medical professional under the supervision of a licensed physician. An examination conducted for medical purposes shall not be considered a search as it applies to this Directive. In conducting manual body cavity searches, the following guidelines shall be followed:
        i. A manual body cavity search shall be conducted when there is reasonable suspicion that the inmate may be carrying contraband.
        ii. A manual body cavity search of an inmate may only be considered after reasonable, less intrusive measures of recovery of the suspected contraband have been considered or employed as appropriate (e.g., persuasion, self-retrieval, x-ray, expulsion, etc.).
            1. This may include placement in a dry cell or room under direct observation for a minimum of 72 hours if required.
            2. A manual body cavity search shall only be conducted upon approval by the Deputy Commissioner of Operations and Rehabilitative Services.
            3. The Chief Medical Officer or designee shall assign an appropriate health service employee in consultation with the Deputy Commissioner of Operations and Rehabilitative Services to conduct the search.

Rev. 2/27/24

Green v. Quiros, 3:24-cv-1317 : 015

| Directive Number<br>6.7 | Effective Date<br>01/30/2024 | Page 6 of 9 |
|---|---|---|
| Title | | |

Searches Conducted in Correctional Facilities

    4. A manual body cavity search shall be conducted in a clinical setting (i.e., Health Services Unit or outside hospital).

    5. When custody staff are required to be present, staff members of the same gender shall be utilized unless the inmate has an approved gender diverse management plan. If the inmate has an approved gender diverse management plan, then the supervisor overseeing the search shall make arrangements according to the inmate's preference for gender of custody staff who will be present.

iii. Upon completion of a manual body cavity search, CN 6604, Incident Report shall be completed in accordance with Administrative Directive 6.6, Reporting of Incidents, shall be completed by the custody designee and submitted to the Deputy Commissioner of Operations and Rehabilitative Services stating the reasons for the search, other options which were considered or employed, the individuals present when the search was conducted, and the findings of the search.

    1. In addition, a medical incident report shall be completed by the health service employee conducting the examination and submitted with the original incident report.

9. <u>Visual inspection during medication administration.</u> A visual inspection of the oral (mouth) cavity by a custody and/or medical staff member shall be conducted when an employee dispenses medication. Oral cavity inspection shall be required prior to and after the inmate ingests any medication.

    a. The inmate shall be required to open the mouth, lift the tongue and move the tongue from side to side.

10. <u>Search by Means of Metal Detectors and Other Authorized Scanning/Detecting Systems.</u> Search by means of metal detectors and other authorized scanner/detecting systems shall be conducted as follows:

    a. During admission, transfer or routine transport of an inmate;

    b. Whenever an inmate is suspected of ingesting or inserting metallic contraband in a body cavity; and,

    c. On a random basis to further any correctional purpose.

        i. If a positive reading is indicated, CN 6701, Strip-Search Report shall be completed and a strip-search conducted in accordance with Section 5 of this Directive.

11. <u>Canine Searches.</u> Canine searches shall be utilized to provide a safe and secure environment for the public, employee and inmates by controlling the introduction, movement and use of contraband. Canine searches shall be utilized as authorized by the Unit Administrator.

12. <u>Non-Inmate Searches.</u> Non-inmates and their property may be subject to searches upon entering the perimeter or grounds of a correctional facility or any other site operated by the Department of Correction, as follows:

    a. <u>Visitors/Contractors.</u> A visitor/contractor shall be required to pass through a metal detector when initially entering the secure area of a correctional facility. In accordance with Section 18-81v of the Connecticut General Statutes, a visitor who activates a walk-through metal detector shall be given the opportunity to submit to a search with a portable or hand-held metal detector in order to gain entrance into the correctional facility. If the visitor consents to a search, such consent shall be documented on CN 100603, Visitor Search Consent Form in accordance with Administrative Directive 10.6, Inmate Visits. When the visitor consents to a search with a portable or hand-held metal detector, the visitor shall be escorted by a correction officer of the same sex to a separate room, restroom or other private location within the correctional facility, where the visitor shall first remove any object or article of clothing that activated the walk-through metal detector and then submit to a portable or

Rev. 2/27/24

Green v. Quiros, 3:24-cv-1317 : 016





| | Inmate Grievance Form- Level 1 | CN 9602 |
|---|---|---|
| | **Connecticut Department of Correction** | REV 04/30/2021 |

Facility/Unit: Robinson CI

Date: 6-24-2024

Inmate name: Courtney Green

Inmate number: 320094

## INMATE ADVISEMENT

- Any inmate who files a grievance must follow all instructions in Section 5 and 6 of Administrative Directive 9.6, "Inmate Administrative Remedies."
- Any grievance which does not follow the instructions identified in the above mentioned sections shall be rejected.

## STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

ON 6-12-24 I wrote A CN 9601 to CAPTAIN MARTINEZ explaining to her that twice on second shift, I was strip searched by officer Starzyk following the conclusion of A virtual video visit And when I Asked officer Starzky which section(s) of

Inmate signature: CG

Date: 6-24-2024

- Deposit this form in the "Administrative Remedies" box .

## DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

| Date Received: | 06-26-2024 | IGP #: | 116-24-150 |
|---|---|---|---|
| Disposition: | *Rejected* | Date of Disposition: | *07-18-2024* |

Reason:
    You have filed a Level 1 grievance at the Carl Robinson Correctional Institution in regards to strip searches after video visits. As outlined in AD 9.6 "Any repetitive request for an administrative remedy filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response shall be rejected". This is a repetitive request for remedy, as a response has been provided (116-24-105). Therefore, this grievance is rejected.

☒ This decision is not subject to further appeal.  ☐ This matter may be appealed within 5 calendar days.

Staff Name Print: Alex Cordner

Signature:  Date: 7/18/24

Green v. Quiros, 3:24-cv-1317 : 018

Administrative Directive 6.7 Authorizes strip searches following virtual video visits unto which officer Starzyk replied, "I'm just doing what is instructed of me and following my post orders.

On 6-20-2024, this writer saw Captain Martinez, who acknowled receipt of my CN 9601 and she addressed the contents of my CN 9601 in person, so it wasn't given back to me so that's why CN 9601 is not attached. In short, Captain Martinez assured me that officer Starzyk was following orders as instructed and that strip searches after virtual video visits will continue which this writer clearly understands. My issue is that the "Caron" administration has prospectively implemented strip searches at the conclusion of virtual video visits before any such revision to A.D. 6.7 has passed legal clearance to permit said strip searches.

The action that I think should happen is for the "Caron" administration to adhere to Applicable case law. See A.D. 6.7 section 2(d) which is Bell v. Wolfish, 441 U.S. at 558-560; that established that inmates may be routinely strip frisked after contact visits; but they may not be strip frisked after non-contact visits. See Bell at 559.





# STATE OF CONNECTICUT
## DEPARTMENT OF CORRECTION
### Carl Robinson Correctional Institution
#### 285 SHAKER ROAD
#### ENFIELD, CONNECTICUT 06082

TO:        I/M GREEN 320094

FROM:      Warden's Office

DATE:      May 30, 2024

SUBJECT:   Correspondence Received

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This correspondence is in response to the correspondence received in the Commissioner's office, which has been forwarded to this office for a reply.

In accordance to: _Administrative Directive 6.7 (b)(ix): Strip Searches when Reasonable Suspicion is not required. A strip search shall be conducted for the following circumstances: (ix) At the conclusion of any contact visit, **or** after entering any public visiting area._

The response received on your CN 9602 Inmate grievance is in accordance to A. D. 6.7 (b)(ix).

You are encouraged to remain Disciplinary Report Free, and reach out to your Counselor with any other questions.

Thank you.

CC:    I/M  GREENE 320094
       File
       Commissioner's Office



EXH. 22

## WEEKDAY    SCHEDULE                                    ROT#3    DATE    6/3/2024

| 60 min | | Inmate Name | Inmate Number | Housing Unit | Visitor # 1 Name | DOB | Visitor #2 Name | DOB | Visitor # 3 Name | DOB |
|---|---|---|---|---|---|---|---|---|---|---|
| 6:30PM - 7 | 1 | | | | | | | | | |
| VIDEO VIS | 2 | | | | | | | | | |
| 10 SPOTS | 3 | | | | | | | | | |
| | 4 | | | | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 9 | | | | | | | | | |
| | 10 | | | | | | | | | |
| 8:00PM -9 | 1 | | | | | | | | | |
| VIDEO VIS | 2 | | | | | | | | | |
| 10 SPOTS | 3 | | | | | | | | | |
| 9A | 4 | Green | 320094 | 9A 110 | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 9 | | | | | | | | | |
| | 10 | | | | | | | | | |

CLEAN 8:00PM

Green v. Quiros, 3:24-cv-1317 : 0070

sentence for exemplary conduct and meritorious achievement and gave the authority of the warden to employ prisoners outside prison walls to the commissioner; 1969 act deleted references to terms of not more than one year; P.A. 76-358 made provisions applicable to terms of sentence made before October 1, 1976; P.A. 86-186 changed the name of the Connecticut Correctional Institution, Cheshire to the John R. Manson Youth Institution, Cheshire; P.A. 97-245 added provision that if the prisoner is hospitalized, the cost thereof shall be paid as provided in Sec. 18-52a.

See Sec. 13a-250 re use of correctional institution inmates as laborers in construction of highways and bridges.

See Sec. 18-89 re contracts for labor or services of inmates.

See Sec. 54-128 re penalty for violation of parole.

Functions such as commutation of sentences may be reposed in officers of these institutions. 116 C. 140. For purposes of determining diminution of sentence, terms imposed under several counts regarded as one continuous term. 129 C. 164. Cited. 130 C. 111; 166 C. 178. "Good time" credit may be earned during time served prior to or after sentencing. 169 C. 540, 541. Cited. 176 C. 638; 181 C. 85; 183 C. 418; 184 C. 434. For purposes of statute, plaintiff was considered "held" by defendant warden under both the consecutive sentences and the concurrent sentences. 185 C. 540. Cited. 207 C. 412. Aggregation of consecutive sentences in compensation of good-time credit discussed. 217 C. 568. Mandates aggregation of consecutive sentences imposed subsequent to October 1, 1976, as well as those imposed before that date. Id., 584. Cited. 230 C. 17. "One continuous term" language of section is applicable to statutory good time credit earned under Sec. 18-7a(c) and to presentence good time credit earned under Sec. 18-98d(b). 254 C. 214.

Cited. 24 CA 612; 34 CA 503. Statute requires aggregation of petitioner's multiple sentences for the purpose of calculating good time credits whenever a prisoner is held under more than one conviction and does not require continuous confinement as a prerequisite to aggregation, thus break in confinement due to petitioner's escape from furlough does not change fact that petitioner was held under more than one conviction once he was sentenced on the felony murder conviction. 94 CA 210.

Character of prisoner's right to earn good time is that of a privilege and not a vested right. 11 CS 281. Where sentences were not to same institution, an unexpired reformatory sentence did not run concurrently with prison sentence upon transfer to the latter institution. 19 CS 239. Cited. 25 CS 478; Id., 519; 27 CS 441. When life sentence reduced. 30 CS 20. Cited. Id., 54.

**WEEKDAY    SCHEDULE**                                                     ROT#3    DATE    6/10/2024

| 60 min | | | Inmate Name | Inmate Number | Housing Unit | Visitor # 1 Name | DOB | Visitor #2 Name | DOB | Visitor # 3 Name | DOB |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6:30PM - 7 | 1 | | | | | | | | | | |
| VIDEO VIS | 2 | | | | | | | | | | |
| 10 SPOTS | 3 | | | | | | | | | | |
| 8 | 4 | | | | | | | | | | |
| | 5 | | | | | | | | | | |
| | 6 | | | | | | | | | | |
| | 7 | | | | | | | | | | |
| | 8 | | | | | | | | | | |
| | 9 | | | | | | | | | | |
| | 10 | | | | | | | | | | |
| 8:00PM -9 | 1 | | | | | | | | | | |
| VIDEO VIS | 2 | | | | | | | | | | |
| 10 SPOTS | 3 | | | | | | | | | | |
| 9A | 4 | Green | 320094 | 9A 110 | | | | | | |
| | 5 | | | | | | | | | | |
| | 6 | | | | | | | | | | |
| | 7 | | | | | | | | | | |
| | 8 | | | | | | | | | | |
| | 9 | | | | | | | | | | |
| | 10 | | | | | | | | | | |

CLEAN 8:00PM



Green v. Quiros, 3:24-cv-1317 : 0071

| State of Connecticut Department of Correction | Directive Number 6.7 | Effective Date 01/30/2024 | Page 1 of 9 |
|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | Supersedes Searches Conducted in Correctional Facilities, Dated 06/29/2018 | | |
| Approved By<br><br>Commissioner Angel Quiros | Title<br><br>Searches Conducted in Correctional Facilities | | |

1. <u>Policy.</u> The Department of Correction shall maintain safety and security by conducting searches as provided for in this Directive.

2. <u>Authority and Reference.</u>
   a. Public Law 108-79, Prison Rape Elimination Act of 2003
   b. 28 C.F.R. 115, Prison Rape Elimination Act National Standards
   c. Connecticut General Statutes, Sections 18-81, 18-81v, and 53a-174 through 53a-174b.
   d. Applicable Case Law.
   e. Administrative Directives 6.2 Facility Post Orders and Logs; 6.5, Use of Force; 6.6, Reporting of Incidents; 6.8, Urinalysis; 6.9, Control of Contraband and Physical Evidence; 6.10, Inmate Property;6.12, Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention, 8.17 Gender Diverse and 10.6, Inmate Visits.

3. <u>Definitions and Acronyms.</u> For the purposes stated herein, the following definitions and acronyms apply:
   a. <u>Authorized Detector/Scanning System.</u> Any authorized equipment (e.g., BOSS chair, metal detector, etc.) used to scan for, and detect, concealed contraband.
   b. <u>Body Orifice Scanning System (BOSS Chair).</u> A scanning system designed to detect metal objects concealed in oral, anal, vaginal cavities or other parts of the body.
   c. <u>CI.</u> Correctional Institution.
   d. <u>Contraband.</u> An item that falls under the following criteria:
      i. Not authorized to be in any facility, Unit, area, vehicle, or surrounding grounds under the control of or contracted by the Department of Correction or in an inmate's possession;
      ii. that is authorized, but used in an unauthorized or prohibited manner,
      iii. that is authorized, but altered; or,
      iv. that ownership cannot be established.
   e. <u>Contractor.</u> A person or organization that agrees to furnish materials or to perform services for the Department. Contractors may include organizations which provide services to the Department without cost. Contractors providing services to the Department are subject to all applicable rules and regulations.
   f. <u>Controlled Strip-Search.</u> A strip-search in which Department personnel maintain physical, hands on control of an inmate through the use of restraints or approved restraint techniques for the purposes of safety and security.
   g. <u>Employee.</u> For the purposes of this Directive only, an employee shall be a person employed by the Department of Correction or anyone designated by the Commissioner or designee who is allowed unescorted access in a correctional facility.
   h. <u>General Facility Search.</u> A planned and systematic search of all areas within and around a correctional facility, including the grounds, parking areas, and employee offices and work areas.
   i. <u>Internal Medical Device.</u> For purposes of this directive, the term internal medical device shall include a pacemaker or defibrillator.
   j. <u>Intersex.</u> A person whose sexual or reproductive anatomy or chromosomal pattern does not fit typical definitions of male or female. Intersex medical conditions are sometimes referred to as Disorders of Sex Development.

Rev. 2/27/24, 6/4/24

Green v. Quiros, 3:24-cv-1317 : 0072



EXH. 23

**Sec. 18-7. Powers and duties of warden. Punishment and reward of inmates.** The warden shall manage the Connecticut Correctional Institution, Somers, subject to the direction of the Commissioner of Correction, and he shall keep all the prisoners employed in such labor as the commissioner orders, during the term of their imprisonment. He shall also keep a record of any punishment inflicted upon a prisoner, showing its cause, mode and degree, and a like record of the conduct of each prisoner. Any prisoner sentenced to a term of imprisonment prior to October 1, 1976, may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year, and, in addition thereto, five days for each month as a meritorious time service award which may be granted in the discretion of the warden and the commissioner for exemplary conduct and meritorious achievement; provided any serious act of misconduct or insubordination or persistent refusal to conform to institution regulations occurring at any time during his confinement in said prison shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all or any portion of the time earned. Said commutation of sentence shall apply to any prisoner transferred from the Connecticut Correctional Institution, Somers, to the John R. Manson Youth Institution, Cheshire. When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section. The commissioner may employ prisoners outside the institution walls, within the state, under the charge of some officer of the institution. He shall provide for the prisoners suitable food and clothing and suitable implements and materials for their work, and shall provide for the relief of any sick or infirm prisoner, and the cost thereof shall be paid by the state from funds appropriated and available for such purpose and, if the prisoner is hospitalized the cost thereof shall be paid as provided in section 18-52a. The warden shall superintend the labor and conduct of the prisoners, and, when requested, shall communicate to the commissioner any information in his knowledge respecting the prison.

(1949 Rev., S. 3002; 1957, P.A. 225, S. 1; 1959, P.A. 107; 1963, P.A. 28, S. 2; 1967, P.A. 152, S. 29; 1969, P.A. 463, S. 1; P.A. 76-358, S. 1; P.A. 86-186, S. 10; P.A. 97-245, S. 2.)

History: 1959 act stipulated serious act of misconduct may cause loss of time earned; 1963 act deleted provision for five-day commutation or diminution of sentence for each month prisoner is employed on farm connected with prison; 1967 act substituted "State Prison" for "prison" and changed references to board of directors to commissioner of correction, gave discretionary powers to warden for commutation or diminution of

sentence for exemplary conduct and meritorious achievement and gave the authority of the warden to employ prisoners outside prison walls to the commissioner; 1969 act deleted references to terms of not more than one year; P.A. 76-358 made provisions applicable to terms of sentence made before October 1, 1976; P.A. 86-186 changed the name of the Connecticut Correctional Institution, Cheshire to the John R. Manson Youth Institution, Cheshire; P.A. 97-245 added provision that if the prisoner is hospitalized, the cost thereof shall be paid as provided in Sec. 18-52a.

See Sec. 13a-250 re use of correctional institution inmates as laborers in construction of highways and bridges.

See Sec. 18-89 re contracts for labor or services of inmates.

See Sec. 54-128 re penalty for violation of parole.

Functions such as commutation of sentences may be reposed in officers of these institutions. 116 C. 140. For purposes of determining diminution of sentence, terms imposed under several counts regarded as one continuous term. 129 C. 164. Cited. 130 C. 111; 166 C. 178. "Good time" credit may be earned during time served prior to or after sentencing. 169 C. 540, 541. Cited. 176 C. 638; 181 C. 85; 183 C. 418; 184 C. 434. For purposes of statute, plaintiff was considered "held" by defendant warden under both the consecutive sentences and the concurrent sentences. 185 C. 540. Cited. 207 C. 412. Aggregation of consecutive sentences in compensation of good-time credit discussed. 217 C. 568. Mandates aggregation of consecutive sentences imposed subsequent to October 1, 1976, as well as those imposed before that date. Id., 584. Cited. 230 C. 17. "One continuous term" language of section is applicable to statutory good time credit earned under Sec. 18-7a(c) and to presentence good time credit earned under Sec. 18-98d(b). 254 C. 214.

Cited. 24 CA 612; 34 CA 503. Statute requires aggregation of petitioner's multiple sentences for the purpose of calculating good time credits whenever a prisoner is held under more than one conviction and does not require continuous confinement as a prerequisite to aggregation, thus break in confinement due to petitioner's escape from furlough does not change fact that petitioner was held under more than one conviction once he was sentenced on the felony murder conviction. 94 CA 210.

Character of prisoner's right to earn good time is that of a privilege and not a vested right. 11 CS 281. Where sentences were not to same institution, an unexpired reformatory sentence did not run concurrently with prison sentence upon transfer to the latter institution. 19 CS 239. Cited. 25 CS 478; Id., 519; 27 CS 441. When life sentence reduced. 30 CS 20. Cited. Id., 54.

EXH. 24

**Sec. 18-81. Duties of commissioner.** The Commissioner of Correction shall administer, coordinate and control the operations of the department and shall be responsible for the overall supervision and direction of all institutions, facilities and activities of the department. The commissioner shall establish rules for the administrative practices and custodial and rehabilitative methods of said institutions and facilities in accordance with recognized correctional standards. The commissioner shall establish, develop and maintain noninstitutional, community-based service programs. The commissioner shall be responsible for the supervision of persons released on parole by the Board of Pardons and Paroles. The commissioner shall be responsible for establishing disciplinary, diagnostic, classification, treatment, vocational and academic education, research and statistics, training and development services and programs throughout the department. Subject to the provisions of chapter 67, the commissioner shall appoint such professional, technical and other personnel as may be necessary for the efficient operation of the department. The commissioner shall organize and operate interinstitutional programs for the development and training of institution and facility staffs. The commissioner shall provide for the services of such chaplains as are necessary to minister to the needs of the inmates of department institutions and facilities. The commissioner shall, within available appropriations for such purpose, arrange for provision of legal assistance of a civil nature to indigent inmates of department institutions and facilities and legal representation for such inmates before administrative boards where permitted or constitutionally required.

(1967, P.A. 152, S. 5; P.A. 77-24; 77-526, S. 1, 2; 77-614, S. 271, 610; P.A. 80-200, S. 2, 7; P.A. 93-219, S. 9, 14; P.A. 04-234, S. 2, 33; P.A. 13-164, S. 1.)

History: P.A. 77-24 allowed commissioner to appoint designees to act for him; P.A. 77-526 added commissioner's duty to arrange for legal assistance for indigent inmates; P.A. 77-614 deleted reference to consultation with council of correction in establishing rules, effective July 1, 1979; P.A. 80-200 required commissioner to establish, develop and maintain noninstitutional, community-based service programs; P.A. 93-219 deleted responsibility of commissioner to supervise parolees and act as administrator of the interstate compact for parole and probation supervision, reflecting transfer of said responsibilities to board of parole, effective July 1, 1994; P.A. 04-234 added provision requiring commissioner to be responsible for the supervision of persons released on parole and to act as administrator of the Interstate Compact for Adult Offender Supervision and made technical changes for purposes of gender neutrality, effective June 8, 2004, and replaced Board of Parole with Board of Pardons and Paroles, effective July 1, 2004; P.A. 13-164 deleted provision requiring commissioner to act as administrator of the Interstate Compact for Adult Offender Supervision, effective July 1, 2013.

See Secs. 20-14h to 20-14j, inclusive, re administration of medication in day and residential programs and facilities.

The statutory mechanism by which the department imposes sanctions is intended by the legislature to be civil in nature. 168 CA 19.

Commissioner's extremely broad discretion under section must be accommodated with rule that prisoner retains basic constitutional rights; habeas corpus provides only practical access of prisoner to courts. 34 CS 89.

# Commissioner Of Correction (2187EX)

$72.82-$151.82 Hourly / $5,825.37-$12,145.60 BiWeekly /
$152,042.00-$317,000.00 Yearly

## PURPOSE OF JOB CLASS (NATURE OF WORK)

Administers and directs the activities of the Department of Correction.

## SPECIAL REQUIREMENTS

The Commissioner of Correction shall be an experienced Correctional Administrator.

## APPOINTMENT

Appointed by the Governor in accordance with the provisions of Sections 4-5 through 4-8 and 18-80 of the Connecticut General Statutes.

## JOB CLASS DESIGNATION

Unclassified

## OCCUPATIONAL GROUP

(12)-General Administration and Management

## BARGAINING UNIT

(01)-EXEMPT/ELEC/APPOINT

## EEO

(1)-Officials And Administrators

## SALARY INFORMATION

EX 01

## ACKNOWLEDGEMENT

As defined by Sec. 5-196 of the Connecticut General Statutes, a job class is a position or group of positions that share general characteristics and are categorized under a single title for administrative purposes. As such, a job class is not meant to be all inclusive of every task and/or responsibility.

## CANCELLATION CLAUSE

Green v. Quiros, 3:24-cv-1317 : 0052



# Commissioner Of Correction (2187EX)

$72.82-$151.82 Hourly / $5,825.37-$12,145.60 BiWeekly /
$152,042.00-$317,000.00 Yearly

## PURPOSE OF JOB CLASS (NATURE OF WORK)

Administers and directs the activities of the Department of Correction.

## SPECIAL REQUIREMENTS

The Commissioner of Correction shall be an experienced Correctional Administrator.

## APPOINTMENT

Appointed by the Governor in accordance with the provisions of Sections 4-5 through 4-8 and 18-80 of the Connecticut General Statutes.

## JOB CLASS DESIGNATION

Unclassified

## OCCUPATIONAL GROUP

(12)-General Administration and Management

## BARGAINING UNIT

(01)-EXEMPT/ELEC/APPOINT

## EEO

(1)-Officials And Administrators

## SALARY INFORMATION

EX 01

## ACKNOWLEDGEMENT

As defined by Sec. 5-196 of the Connecticut General Statutes, a job class is a position or group of positions that share general characteristics and are categorized under a single title for administrative purposes. As such, a job class is not meant to be all inclusive of every task and/or responsibility.

## CANCELLATION CLAUSE

**Sec. 18-81. Duties of commissioner.** The Commissioner of Correction shall administer, coordinate and control the operations of the department and shall be responsible for the overall supervision and direction of all institutions, facilities and activities of the department. The commissioner shall establish rules for the administrative practices and custodial and rehabilitative methods of said institutions and facilities in accordance with recognized correctional standards. The commissioner shall establish, develop and maintain noninstitutional, community-based service programs. The commissioner shall be responsible for the supervision of persons released on parole by the Board of Pardons and Paroles. The commissioner shall be responsible for establishing disciplinary, diagnostic, classification, treatment, vocational and academic education, research and statistics, training and development services and programs throughout the department. Subject to the provisions of chapter 67, the commissioner shall appoint such professional, technical and other personnel as may be necessary for the efficient operation of the department. The commissioner shall organize and operate interinstitutional programs for the development and training of institution and facility staffs. The commissioner shall provide for the services of such chaplains as are necessary to minister to the needs of the inmates of department institutions and facilities. The commissioner shall, within available appropriations for such purpose, arrange for provision of legal assistance of a civil nature to indigent inmates of department institutions and facilities and legal representation for such inmates before administrative boards where permitted or constitutionally required.

(1967, P.A. 152, S. 5; P.A. 77-24; 77-526, S. 1, 2; 77-614, S. 271, 610; P.A. 80-200, S. 2, 7; P.A. 93-219, S. 9, 14; P.A. 04-234, S. 2, 33; P.A. 13-164, S. 1.)

History: P.A. 77-24 allowed commissioner to appoint designees to act for him; P.A. 77-526 added commissioner's duty to arrange for legal assistance for indigent inmates; P.A. 77-614 deleted reference to consultation with council of correction in establishing rules, effective July 1, 1979; P.A. 80-200 required commissioner to establish, develop and maintain noninstitutional, community-based service programs; P.A. 93-219 deleted responsibility of commissioner to supervise parolees and act as administrator of the interstate compact for parole and probation supervision, reflecting transfer of said responsibilities to board of parole, effective July 1, 1994; P.A. 04-234 added provision requiring commissioner to be responsible for the supervision of persons released on parole and to act as administrator of the Interstate Compact for Adult Offender Supervision and made technical changes for purposes of gender neutrality, effective June 8, 2004, and replaced Board of Parole with Board of Pardons and Paroles, effective July 1, 2004; P.A. 13-164 deleted provision requiring commissioner to act as administrator of the Interstate Compact for Adult Offender Supervision, effective July 1, 2013.

See Secs. 20-14h to 20-14j, inclusive, re administration of medication in day and residential programs and facilities.

The statutory mechanism by which the department imposes sanctions is intended by the legislature to be civil in nature. 168 CA 19.

Commissioner's extremely broad discretion under section must be accommodated with rule that prisoner retains basic constitutional rights; habeas corpus provides only practical access of prisoner to courts. 34 CS 89.

This replaces the existing specification for the class of Commissioner of Correction in Salary Group EX 01 approved effective January 6, 2011. (Reviewed for content. Revised to add Acknowledgement section) Final No. 24-066

# EFFECTIVE DATE

04/10/2024

**CLASS:** 2187EX; **EST:** 5/25/1967; **REV:** 4/12/2024;

Green v. Quiros, 3:24-cv-1317 : 0053

# Correctional Warden 1 (1124MP)

$59.82-$81.57 Hourly / $4,785.25-$6,524.83 BiWeekly /
$124,895.00-$170,298.00 Yearly

## PURPOSE OF JOB CLASS (NATURE OF WORK)

In the Department of Correction this class is accountable for directing the activities at the Maloney Center for Training and Staff Development as designated in Section 18-82 of the Connecticut General Statutes.

## SUPERVISION RECEIVED

Receives administrative direction from an administrative official of higher grade.

## SUPERVISION EXERCISED

Directs assigned staff.

## EXAMPLES OF DUTIES

- Directs the staff and operations of academy training and staff development as designated in accordance with the policies, procedures and directives of the Commissioner of Correction;
- Participates in the recruitment and hiring of staff, including outreach, interview and selection;
- Performs related duties as required.

## APPOINTMENT

Appointed by the agency head in accordance with Section 5-198(g) of the Connecticut General Statutes.

## COMPENSATION GUIDELINES

Appointment to positions in this class and movement from positions in this class for current state employees will be in accordance with the guidelines for computing salary adjustments set forth by the Department of Administrative Services, Determining Salary Upon Change in Class.

## JOB CLASS DESIGNATION

Unclassified

## OCCUPATIONAL GROUP

(26)-Penal-Corrective Services



EXH. 26



# State of Connecticut Executive Branch

## Correctional Warden 2 (5866MP)

$61.58-$83.97 Hourly / $4,926.14-$6,716.86 BiWeekly /
$128,572.00-$175,310.00 Yearly

Notify Me when a Job Opens for the above position(s)

## PURPOSE OF JOB CLASS (NATURE OF WORK)

In the Department of Correction this class is accountable for directing the programs and operations of a correctional center, facility or institution or oversight of a major program area as designated in Section 18-82 of the Connecticut General Statutes.

## GUIDELINES FOR JOB CLASS USE

This class is used in one of the following capacities:
- Oversight of a correctional center, facility or institution.
- Oversight of Population Management.
- Oversight of Security Division.

## SUPERVISION RECEIVED

Receives administrative direction from an administrative official of higher grade.

JULY 2023

# SUPERVISION EXERCISED

Directs the programs and operations of the correctional center, facility, institution or major program; directs all staff.

# EXAMPLES OF DUTIES

- Directs staff and operations of a correctional institution, center, facility or major program area as designated in accordance with the policies, procedures and directives of the Commissioner of Correction;
- Develops, implements and evaluates division policies, goals and objectives;
- Designs and develops division programs and activities;
- Implements new procedures and procedural revisions;
- Determines appropriate staffing levels and directs management and coordination of staff;
- Designs and implements performance review standards for division staff;
- Prepares division budget; maintains contacts with individuals within and outside of division who might impact policy or program activities;
- Leads the recruitment and hiring of staff, including outreach, interview and selection;
- Performs related duties as required.

# APPOINTMENT

Appointed by the agency head in accordance with Section 5-198(g) of the Connecticut General Statutes.

# COMPENSATION GUIDELINES

Appointment to positions in this class and movement from positions in this class for current state employees will be in accordance with the guidelines for computing salary adjustments set forth by the Department of Administrative Services, Determining Salary Upon Change in Class.



EXH. 27

# Correctional Deputy Warden (0236SC)

$51.13-$69.72 Hourly / $4,090.23-$5,577.21 BiWeekly /
$106,755.00-$145,565.00 Yearly

## PURPOSE OF JOB CLASS (NATURE OF WORK)

In the Department of Correction this class is accountable for acting as an assistant to the Correctional Warden or overseeing a major program area within the central office and facility operations.

## GUIDELINES FOR JOB CLASS USE

This class is used in the following capacities:

- As an assistant to the Correctional Warden in a correctional facility, this class is responsible for overseeing the operations and administration or comprehensive programs and treatment functions at the facility. The following facilities are limited to two (2) Correctional Deputy Wardens: Brooklyn Correctional Institution, Enfield Correctional Institution and Webster Correctional Institution. All other facilities are allowed a maximum of three (3) Correctional Deputy Wardens.
- Within the central office and facility operations, this class is responsible for one of more of the following major program areas within the central office and facility operations: Central Transportation Unit; Tactical Operations; Addiction Services; Facility Operations Staffing; Security Division; Community Re-Entry; Offender and Population Management; Inmate Programs and Treatment; External Affairs.

## SUPERVISION RECEIVED

Works under the administrative direction of a Correctional Warden or other administrative official of higher grade.

## SUPERVISION EXERCISED

Supervises custodial, treatment and administrative staff as assigned.

## EXAMPLES OF DUTIES

- Oversees staff and operations of custody and security and/or comprehensive programs and treatment functions at a correctional facility or major program area within central office and facility operations;

Green v. Quiros, 3:24-cv-1317 : 0056

- Coordinates, plans and supervises custody and security and/or programs and treatment activities;
- Formulates program goals and objectives;
- Develops or assists in development and implementation of custody and security and/or treatment programs or institutional operational and/or treatment policies and practices;
- Ensures enforcement of agency and institution rules and regulations;
- Interprets and administers pertinent laws;
- Evaluates staff;
- Prepares or assists in preparation of facility or program area budget;
- Maintains contacts with individuals both within and outside of program area who might impact on program activities;
- Administers and/or coordinates staff training and development activities;
- Oversees administration of disciplinary controls over inmate population throughout institution;
- Oversees and coordinates assignment of operational and/or treatment staff with other institutional programs;
- Participates in strategic planning process and initiatives;
- Maintains records and submits reports;
- Coordinates reporting activities of various disciplines;
- Serves as liaison with courts, social agencies, federal officials or community groups, interpreting programs and objectives and developing cooperative relationships;
- Interprets applicable labor agreements and conducts labor management and/or grievance meetings;
- In absence of Correctional Warden may assume responsible charge of institution;
- May recommend new programs;
- May provide oversight and supervision of unit management;
- May review and recommend discretionary release programs;
- May research, develop and implement evidence-based programs;
- Performs related duties as required.

# KNOWLEDGE, SKILL AND ABILITY

- Considerable knowledge of
    - custody, security and control measures and techniques of maintaining discipline;
    - functions and activities involved in contemporary treatment and training programs;
    - modern correctional methods and practices;
    - psychology of inmates in a correctional institution;
- Knowledge of
    - and ability to apply management principles and techniques;
    - employee training techniques;

- practices and procedures concerning court commitments of individuals to correctional institutions;
- Considerable
  - interpersonal skills;
  - oral and written communication skills.

## MINIMUM QUALIFICATIONS - GENERAL EXPERIENCE

Two (2) years of experience at the level of Correctional Counselor Supervisor, Correctional Captain or Parole and Community Services Supervisor.

## WORKING CONDITIONS

Incumbents in this class may be exposed to some danger of assault or injury by inmates.

## JOB CLASS DESIGNATION

Classified/Competitive

## OCCUPATIONAL GROUP

(26)-Penal-Corrective Services

## BARGAINING UNIT

(67)-Correctional Supervisors

## EEO

(2)-Professional

## SALARY INFORMATION

SC DW

## ACKNOWLEDGEMENT

As defined by Sec. 5-196 of the Connecticut General Statutes, a job class is a position or group of positions that share general characteristics and are categorized under a single title for administrative purposes. As such, a job class is not meant to be all-inclusive of every task and/or responsibility.

## CANCELLATION CLAUSE

This replaces the existing specification for the class of Correctional Deputy Warden assigned to Salary Group SC DW approved effective May 24, 2022 (Reviewed for content. Revised modernize format and add Acknowledgement section) Final No. 24-061

# EFFECTIVE DATE

04/09/2024

**CLASS:** 0236SC; **EST:** 3/16/2016; **REV:** 4/10/2024;



## Correctional Captain (2272SC)

$43.96-$58.08 Hourly / $3,516.29-$4,645.79 BiWeekly /
$91,775.00-$121,255.00 Yearly

# PURPOSE OF JOB CLASS (NATURE OF WORK)

In the Department of Correction this class is accountable for supervising correctional staff engaged in custody, security, investigations/operations, inmate transportation and/or developing, coordinating and conducting training programs.

# GUIDELINES FOR JOB CLASS USE

This class is used in one of the following ways:

- At a large facility this class supervises a large staff of correctional personnel engaged in custody and security operations.
- At a small facility or the University of Connecticut Health Center, Med/Surg 5 this class coordinates and directs all security and custody operations.
- In the Security Division or the Central Transportation Unit this class supervises a staff who perform sensitive investigations and/or operations or transportation of inmates.
- At the Maloney Center for Training and Staff Development this class supervises a staff who are responsible for developing, coordinating and conducting training programs.

# SUPERVISION RECEIVED

Receives general direction from an administrative official of higher grade.

# SUPERVISION EXERCISED

Supervises custody, training and/or security personnel and other staff as assigned.

# EXAMPLES OF DUTIES

- Assumes delegated responsibility for custody and security of assigned inmates, buildings, grounds and operations;
- Schedules, assigns, oversees and reviews work of staff;
- Coordinates, plans and manages training activities;
- Provides staff training and assistance;
- Conducts performance evaluations;
- Determines priorities and plans shift and/or unit work;
- Establishes and maintains operating and/or training procedures;

Green v. Quiros, 3:24-cv-1317 : 0060

This replaces the existing specification for the class of Correctional Deputy Warden assigned to Salary Group SC DW approved effective May 24, 2022 (Reviewed for content. Revised modernize format and add Acknowledgement section) Final No. 24-061

# EFFECTIVE DATE

04/09/2024

**CLASS:** 0236SC; **EST:** 3/16/2016; **REV:** 4/10/2024;

Green v. Quiros, 3:24-cv-1317 : 0059

- Develops or makes recommendations on development of policies and standards;
- Ensures consistent enforcement of policies and procedures;
- Inspects posts frequently to ensure adequate staffing;
- Performs the most sensitive security investigations and ensures accuracy of staff investigations throughout the State correctional system;
- Conducts training either within a correctional facility or oversees staff in performing training activities;
- Maintains discipline among employees and inmates;
- Supervises inmate count; supervises major facility group activities (i.e. meals, off site work);
- Acts as liaison with other operating units, agencies and outside officials regarding unit policies and procedures;
- Administers pertinent laws, regulations and posts orders;
- Maintains contact with individuals both within and outside agency who might have impact on program activities;
- Reviews and prepares reports and correspondence;
- Maintains records;
- Participates in crisis intervention as needed;
- May assist in preparation of budget;
- May counsel inmates;
- May participate in disciplinary hearings;
- May physically restrain inmates, quell disturbances and otherwise assist security forces in emergencies;
- Performs related duties as required.

# KNOWLEDGE, SKILL AND ABILITY

- Considerable knowledge of
    - relevant agency policies and procedures;
    - relevant state and federal laws;
    - policies and procedures utilized in correctional facilities;
    - modern correctional methods and practices;
    - standard security measures and appropriate methods of inmate discipline;
- Considerable
    - interpersonal skills;
    - oral and written communication skills;
- Considerable ability to accurately evaluate situations and make effective administrative and supervisory decisions;
- Ability to utilize computer software;
- Supervisory ability.

# MINIMUM QUALIFICATIONS - GENERAL EXPERIENCE

Five (5) years of experience in correctional work responsible for custodial security or inmate treatment.

# MINIMUM QUALIFICATIONS - SPECIAL EXPERIENCE

One (1) year of the General Experience must have been at the level of Correctional Lieutenant.

# MINIMUM QUALIFICATIONS - SUBSTITUTIONS ALLOWED

College training in behavioral sciences, corrections, criminal justice or a related field may be substituted for the General Experience on the basis of fifteen (15) semester hours equalling one-half (1/2) year of experience to a maximum of one (1) year.

# SPECIAL REQUIREMENTS

- Incumbents in this class are required to possess a high school diploma or General Educational Development (GED) certification.
- Incumbents in this class may be required to possess and retain a valid Motor Vehicle Operator's license.

# CHARACTER REQUIREMENTS

In addition to the checking of references and of facts stated in the application, a thorough background investigation of each candidate may be made before persons are certified for appointment.

# PHYSICAL REQUIREMENTS

- Incumbents in this class must have general good health, be free from any disease or injury which would impair health or usefulness and possess and retain sufficient physical strength, stamina, agility, endurance and visual and auditory acuity required to perform all the duties of the class.
- A comprehensive medical examination, including a controlled substance screening, may be required of applicants.

# WORKING CONDITIONS

Incumbents in this class may be exposed to some danger of injury or assault by inmates.

# JOB CLASS DESIGNATION

Classified/Competitive

## OCCUPATIONAL GROUP

(26)-Penal-Corrective Services

## BARGAINING UNIT

(67)-CORRECTIONAL SUPERVISORS

## EEO

(2)-Professional

## SALARY INFORMATION

SC CC

## ACKNOWLEDGEMENT

As defined by Sec. 5-196 of the Connecticut General Statutes, a job class is a position or group of positions that share general characteristics and are categorized under a single title for administrative purposes.  As such, a job class is not meant to be all-inclusive of every task and/or responsibility.

## CANCELLATION CLAUSE

This replaces the existing specification for the class of Correctional Captain in Salary Group SC CC approved effective February 25, 2011. (Revised to modify Guidelines for Job Class Use, modernize format and add Acknowledgement) Item No. 23-282

## EFFECTIVE DATE

11/16/2023

**CLASS:** 2272SC; **EST:** 7/25/1969; **REV:** 11/17/2023;

Green v. Quiros, 3:24-cv-1317 : 0063

# Correction Officer (2259CO)

$28.37-$37.38 Hourly / $2,056.75-$2,709.43 BiWeekly /
$53,681.00-$70,716.00 Yearly

## PURPOSE OF JOB CLASS (NATURE OF WORK)

In a Department of Correction facility this class is accountable for the confinement, safety, control and monitoring of sentenced and/or un-sentenced inmates and security of the facility.

## SUPERVISION RECEIVED

Works under the general supervision of an officer of higher rank.

## SUPERVISION EXERCISED

May supervise inmate workers in assigned area.

## EXAMPLES OF DUTIES

Performs either a concentration or combination of the following functions, depending upon whether duty is on fixed or rotating post assignment:

SECURITY:

- Performs periodic head count;
- Conducts periodic search of all areas available to inmates;
- Checks all incoming visitors and/or packages and/or mail for contraband;
- Performs pat or strip searches of inmates as needed;
- Secures access points to assigned area;
- Checks area for fire safety and emergency evacuation procedures;
- Monitors all movement through assigned area;
- Transports inmates to and from courts, hospitals, half way houses, other institutions and directed destinations;
- Performs related duties as required.

INMATE CONTROL:

- Maintains log of inmate movement into and out of unit and verifies and/or authorizes movement through written (pass) or phone communication with sending and/or receiving staff for such activities as work assignments, counseling sessions, visitors, clinic and dental appointments, court appointments, meals, etc.;

Green v. Quiros, 3:24-cv-1317 : 0064



EXH. 29

# Correction Officer (2259CO)

$28.37-$37.38 Hourly / $2,056.75-$2,709.43 BiWeekly /
$53,681.00-$70,716.00 Yearly

## PURPOSE OF JOB CLASS (NATURE OF WORK)

In a Department of Correction facility this class is accountable for the confinement, safety, control and monitoring of sentenced and/or un-sentenced inmates and security of the facility.

## SUPERVISION RECEIVED

Works under the general supervision of an officer of higher rank.

## SUPERVISION EXERCISED

May supervise inmate workers in assigned area.

## EXAMPLES OF DUTIES

Performs either a concentration or combination of the following functions, depending upon whether duty is on fixed or rotating post assignment:

SECURITY:

- Performs periodic head count;
- Conducts periodic search of all areas available to inmates;
- Checks all incoming visitors and/or packages and/or mail for contraband;
- Performs pat or strip searches of inmates as needed;
- Secures access points to assigned area;
- Checks area for fire safety and emergency evacuation procedures;
- Monitors all movement through assigned area;
- Transports inmates to and from courts, hospitals, half way houses, other institutions and directed destinations;
- Performs related duties as required.

INMATE CONTROL:

- Maintains log of inmate movement into and out of unit and verifies and/or authorizes movement through written (pass) or phone communication with sending and/or receiving staff for such activities as work assignments, counseling sessions, visitors, clinic and dental appointments, court appointments, meals, etc.;

Green v. Quiros, 3:24-cv-1317 : 0064

## OCCUPATIONAL GROUP

(26)-Penal-Corrective Services

## BARGAINING UNIT

(67)-CORRECTIONAL SUPERVISORS

## EEO

(2)-Professional

## SALARY INFORMATION

SC CC

## ACKNOWLEDGEMENT

As defined by Sec. 5-196 of the Connecticut General Statutes, a job class is a position or group of positions that share general characteristics and are categorized under a single title for administrative purposes. As such, a job class is not meant to be all-inclusive of every task and/or responsibility.

## CANCELLATION CLAUSE

This replaces the existing specification for the class of Correctional Captain in Salary Group SC CC approved effective February 25, 2011. (Revised to modify Guidelines for Job Class Use, modernize format and add Acknowledgement) Item No. 23-282

## EFFECTIVE DATE

11/16/2023

**CLASS:** 2272SC; **EST:** 7/25/1969; **REV:** 11/17/2023;

Green v. Quiros, 3:24-cv-1317 : 0063

- Directs inmate access to rooms, recreation areas, dining areas, shower and telephone facilities, special group meetings and ensures transition is orderly and timely;
- Monitors inmates in above activities and ensures discipline and security are maintained;
- Evaluates and reports on inmate performance;
- Participates in directed treatment activities as required;
- May be required to physically restrain inmates;
- Performs related duties as required.

ADMINISTRATION:

- Sets up and/or maintains records relating to admissions, court appearances, property, financial assets, medication, disciplinary actions, living assignments, work assignments, key control, use of force and/or restraint, punitive segregation, etc. in accordance with regulations;
- Ensures admissions, transfers and discharges are accompanied by appropriate paperwork;
- Prepares reports and documentation relative to assigned activities;
- Orders and dispenses supplies for assigned area;
- Performs related duties as required.

COMMUNICATION:

- Dispenses and collects commissary slips and orders;
- Screens visitors to ascertain if authorized and grants or denies admission on judgment of perceived security risk;
- Responds to emergency requirements in event of fire, escape or call for assistance;
- Handles incidents and crisis situations involving inmates through use of effective oral communication skills;
- Interfaces with related law enforcement personnel;
- May schedule inmate appointments with counselors, clinics, clergy and school;
- Performs related duties as required.

# KNOWLEDGE, SKILL AND ABILITY

- Considerable
  - interpersonal skills;
  - oral and written communication skills;
- Considerable ability to
  - understand departmental and institutional policies and regulations and apply them fairly and consistently;
  - analyze situations quickly and accurately and adopt an effective course of action;
  - work under pressure;
- Ability to utilize computer software.

Green v. Quiros, 3:24-cv-1317 : 0065

## MINIMUM QUALIFICATIONS

Graduation from high school or certification of having passed the General Educational Development (GED) certification examination.

## SPECIAL REQUIREMENTS

- Incumbents in this class must have reached their 21st birthday.
- Incumbents in this class are required to successfully complete a formal training course in correctional work to develop the knowledge, skills and abilities to successfully perform the duties of the class.
- Incumbents in this class may be required to possess and retain either a valid Motor Vehicle Operator's license, a Commercial Driver's license or both.
- Incumbents in this class may be required to travel.

## CHARACTER REQUIREMENTS

In addition to the checking of references and of facts stated in the application, a thorough background investigation of each candidate may be made before persons are certified for appointment.

## PHYSICAL REQUIREMENTS

- Incumbents in this class must have general good health, be free from any disease or injury which would impair health or usefulness and possess and retain sufficient physical strength, stamina, agility, endurance and visual and auditory acuity required to perform all the duties of the class.
- A physical fitness assessment will be required of all applicants.
- A comprehensive medical examination, including a controlled substance screening, will be required of all applicants upon a conditional offer of employment.

## WORKING CONDITIONS

Incumbents in this class may be exposed to significant stress of confinement within a dangerous and volatile prison population and to considerable danger of injury from assaultive and/or abusive inmates and disagreeable conditions.

## APPOINTMENT

- Appointments to this class will be made from the certified list for Correction Officer. Candidates for these positions will be appointed as Correction Officer Cadets for a ten (10) week period and then promoted to the class of Correction Officer in the first full pay period following completion of the tenth week of the initial probationary period.

Green v. Quiros, 3:24-cv-1317 : 0066



| State of Connecticut Department of Correction | Directive Number 9.6 | Effective Date 04/30/2021 | Page 1 of 12 |
|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | Supersedes<br>Inmate Administrative Remedies, dated 8/15/2013 | | |
| Approved by:<br><br>*[signature]*<br><br>Commissioner Angel Quiros | Title<br><br>Inmate Administrative Remedies | | |

1. <u>Policy</u>. The Department of Correction shall provide a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority. The Inmate Administrative Remedies Procedure enables the Department to identify individual and systemic problems, to resolve legitimate complaints in a timely manner, and to facilitate the accomplishment of its mission.

2. <u>Authority and Reference</u>.
   a. United States Code, 42 USC 1997e and 42 USC 12101 et seq.
   b. Code of Federal Regulations, 28 CFR 40, Standards for Inmate Grievance Procedures.
   c. Connecticut General Statutes, Chapter 53 and Sections 18-81 and 18-81y.
   d. Regulations of Connecticut State Agencies, Sections 4-157-1 through 4-157-17, 18-81-55 and 18-81- 56.
   e. Administrative Directives 2.17, Employee Conduct; 4.7, Records Retention; 6.10, Inmate Property; 6.14, Security Risk Groups; 8.9, Health Services Administrative Remedies; 9.2, Offender Classification; 9.4, Special Management; 9.5, Code of Penal Discipline; 9.9, Protective Management; 10.7, Inmate Communications and 10.19, Americans with Disabilities Act.

3. <u>Definitions</u>. For the purposes stated herein, the following definitions apply:
   a. <u>Administrative Remedy</u>. The resolution of an inmate's legitimate complaint and/or request for formal review of any issue relating to an inmate's confinement that is subject to the Commissioner of Correction's authority.
      i. Remedies related to health services decisions shall be in accordance with Administrative Directive 8.9, Health Services Administrative Remedies.
   b. <u>Administrative Remedies Coordinator</u>. An employee of the facility designated by the Unit Administrator to coordinate the Inmate Administrative Remedies Procedure.
      i. The facility shall designate an employee to coordinate the Health Services Review Process in accordance with Administrative Directive 8.9, Health Services Administrative Remedies.
   c. <u>Appeal of Administrative Decisions</u>. The written request for formal reconsideration of an agency decision or action. The types of administrative decisions or actions that may be appealed are:
      i. Classification Decisions;
      ii. Special Management Decisions;
      iii. Security Risk Group Member Designations;
      iv. Disciplinary Actions;
      v. Rejection of Religious of Educational Tapes/CDs Not Available in the Commissary;
      vi. Decision to Reject Publication;
      vii. Decisions to Reject Unacceptable Correspondence;
      viii. American with Disabilities Act (ADA) Determinations.
   d. <u>Denied</u>. The request for administrative remedy is without merit.
   e. <u>Grievance</u>. A written request for formal reconsideration of the outcome of an informal resolution attempt.
      i. Such request shall only relate to decisions regarding departmental policy or procedure, including conditions of confinement that are subject to the authority of the Commissioner of Correction.
   f. <u>Informal Resolution</u>. An inmate's initial attempt at resolving any issue relating to departmental policy or procedure, including a condition of confinement that is subject to the Commissioner of Correction's authority.

Rev. 5/11/21, 6/11/21, 9/20/22, 4/21/23, 11/27/23, 6/11/24

Att. 1 to Ex C, Pg., 001

| Directive Number | Effective Date | Page 2 of 12 |
|---|---|---|
| 9.6 | 04/30/2021 | |
| Title | | |
| Inmate Administrative Remedies | | |

    g. <u>Property Claim</u>. An inmate's claim for compensation for damage to or loss of personal property.

    h. <u>Rejected</u>. The request for administrative remedy fails to satisfy the procedural requirements of the particular requested remedy.

    i. <u>Upheld</u>. The request for administrative remedy is granted.

    j. <u>Upheld in part</u>. The request for administrative remedy has sufficient merit that some modification of the identified condition is warranted.

        i. When this disposition is utilized, the portion which was not upheld may be subject to a Level 2 appeal.

    k. <u>Withdrawn</u>. The inmate voluntarily discontinues the pursuit of an administrative remedy.

4. <u>Administrative Remedies Coordinator</u>. The Unit Administrator shall appoint two employees of the facility to be Administrative Remedies Coordinators, one as the primary coordinator and the other to serve as the secondary coordinator. The Unit Administrator shall arrange for the training of each Administrative Remedies Coordinator. The Administrative Remedies Coordinator shall:

    a. Ensure that notice and instruction regarding the Inmate Administrative Remedies Procedure is provided to each inmate during orientation;

    b. Ensure that current administrative remedy forms are available in all housing units;

    c. Ensure that the current Administrative Directive 9.6, Inmate Administrative Remedies, is available in the library and to any inmate who requests it;

    d. Ensure that collection of administrative remedy forms is conducted each business day;

    e. Complete and forward CN 9603, Administrative Remedy Receipt, to the inmate and place a copy of the receipt in the appropriate file;

    f. Maintain Attachment B, Inmate Grievance Distribution Log.

        i. This log shall be signed by inmates upon receipt of the response to their grievance.

    g. Ensure that each CN 9602, Inmate Grievance Form- Level 1, is properly logged and routed for investigation and response in accordance with Attachment A, Administrative Remedies Routing Chart; and,

    h. Assist the Unit Administrator in implementing the requirements of the Inmate Administrative Remedies Procedure.

5. <u>General Provisions</u>. The following provisions shall apply to all requests for administrative remedies:

    a. <u>Mandatory procedure for filing a request for administrative remedy</u>.

        i. An inmate filling a request for administrative remedy must adhere to all procedural requirements outlined in this directive.

    b. <u>Notice</u>.

        i. Administrative Directive 9.6, Inmate Administrative Remedies, shall be published in English and Spanish. English and Spanish copies of Administrative Directive 9.6, Inmate Administrative Remedies, shall be available at each facility and available to inmates upon request.

        ii. Each inmate shall be issued a written summary of Administrative Directive 9.6, Inmate Administrative Remedies, during orientation.

            1. An inmate whose primary language is Spanish shall receive a copy translated into Spanish.

            2. Appropriate provisions shall be made for those who do not read, speak, or understand English or Spanish.

            3. Inmates who are impaired or disabled shall submit a written request for assistance to the facility's ADA Coordinator.

                a. The ADA Coordinator shall review the written request by the impaired or disabled inmate and will determine what level of assistance is required and will arrange for provision of such assistance.

        iii. Each direct contact employee and direct contact contractor shall be issued a written summary of Administrative Directive 9.6, Inmate Administrative Remedies, upon initial hire or contact with the Department.

    c. <u>Filing</u>. A request for an administrative remedy, must be filed in accordance with the following provisions:

Rev. 5/11/21, 6/11/21, 9/20/22, 4/21/23, 11/27/23, 6/11/24

Att. 1 to Ex C, Pg., 002

| Directive Number 9.6 | Effective Date 04/30/2021 | Page 3 of 12 |
|---|---|---|
| Title | Inmate Administrative Remedies | |

      i. Each request for an administrative remedy must be filed separately, in writing, on an original form, containing an original signature and date.

      ii. The request for an administrative remedy and the action sought should be stated simply and coherently.

      iii. The length of the request for an administrative remedy must be restricted to the space available on the face of the appropriate form associated with this directive, and one (1) additional 8 1/2 x 11 inch single-sided page.

      iv. The request for an administrative remedy must be free of obscene or vulgar language or content.

      v. The request for an administrative remedy must be filed by an inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.

      vi. Any repetitive request for an administrative remedy filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response shall be rejected;

      vii. Any request for an administrative remedy filed by the same inmate when the inmate's initial request for an administrative remedy is still pending shall be rejected.

d. Access. Each inmate in the Department's custody shall have access to Administrative Directive 9.6, Inmate Administrative Remedies. Special provisions shall be made to ensure access for the impaired or disabled, illiterate or those with language barriers.

      i. Any inmate who needs assistance in using the Inmate Administrative Remedies Procedure shall receive assistance upon request.

      ii. Access to the Inmate Administrative Remedies Procedure shall only be limited as a result of abuse of the Inmate Administrative Remedies Procedure in accordance with Section 5 (1) of this Directive or failure to comply with the Inmate Administrative Remedies Procedure.

e. Depositories and Collection.

      i. All requests for Administrative Remedies shall be submitted by depositing them in a locked collection box clearly marked as 'Administrative Remedies'.

      ii. The Unit Administrator shall ensure that an adequate number of collection boxes are accessible within the facility.

      iii. Each facility's Restrictive Housing Unit shall have a collection box on each tier of the unit.

f. Procedural Integrity. The Unit Administrator shall ensure that no employee who is the subject of an investigation shall investigate or participate in the resolution of an administrative remedy related to that investigation.

g. Reprisal against Staff. No staff member who participates in the processing of an administrative remedy shall be affected negatively for participation in the resolution of any administrative remedy.

h. Reprisal against Inmates. No inmate shall suffer negative consequences such as denial or limitation of access to any privilege, service or program offered by the facility, either formally or informally for good faith participation in the Inmate Administrative Remedies Procedure.

i. Time limitations. All inmates shall be subject to the time limitations established within this directive. Any request for an administrative remedy that does not adhere to the time limitations set forth shall be rejected.

j. Time Limit Extensions. With notice to the inmate filing a request for an administrative remedy, a reviewer may extend the time limit for a response up to 15 business days using CN 9607, Inmate Administrative Remedies Procedure – Notice of Time Extension.

k. Withdrawal. An inmate may withdraw a request for an administrative remedy by filing CN 9608, Inmate Administrative Remedies Withdrawal Form.

l. Abuse.

      i. An inmate may be deemed to be abusing the Administrative Remedies Process if any of the following conditions are met:

          1. an inmate files eight (8) or more requests for a grievance in any 60-day calendar period;

| Directive Number | Effective Date | Page 4 of 12 |
|---|---|---|
| 9.6 | 04/30/2021 | |
| Title | | |
| Inmate Administrative Remedies | | |

  2. an inmate files repetitive requests for an administrative remedy addressing the same issue before the established time for response has elapsed;

  3. an inmate files repetitive requests for an administrative remedy when a valid response has been provided and there has been no change in any circumstances that would affect the response; or

  4. an inmate files harassing requests for an administrative remedy.

 ii. A CN 9617, Abuse Determination shall be generated by the Unit Administrator and shall identify the restriction(s) imposed and its duration. Restrictions may include:

  1. denial of access to the Administrative Remedies Process for a specified period of time;

  2. a limitation on the number of requests for an administrative remedy that may be filed; and/or,

  3. A restriction as to the subject matter that may be grieved or appealed.

 iii. A CN 9617, Abuse Determination may be appealed to the appropriate District Administrator by completing and depositing a CN 9606, Appeal of Administrative Decision, in the Administrative Remedies box within 15 calendar days of notification of the determination.

  1. The decision of the District Administrator shall not be subject to further appeal.

 iv. Failure to comply with the restrictions outlined within the CN 9617, Abuse Determination may result in extension and/or modification of the abuse determination and restrictions.

m. Appropriate Review.

 i. A request for administrative remedy about a matter that is outside the scope of the Unit Administrator's authority shall be sent to the appropriate reviewer.

 ii. In such case, the inmate shall be notified of the review process and of the time frame for response.

n. Departmental Administrative Remedy Disposition.

 i. Dispositions.

  1. Each CN 9602, Inmate Grievance Form- Level 1, shall be reviewed, investigated, and decided with the outcome indicated by one of the following dispositions:

   a. Rejected;

   b. Denied;

   c. Upheld in part;

   d. Upheld; or

   e. Withdrawn.

  2. Each disposition shall be documented on the following forms:

   a. CN 9602, Inmate Grievance Form- Level 1

   b. CN 9604, Inmate Grievance Appeal Form – Level 2; and

   c. CN 9605, Inmate Grievance Appeal Form-Level 3

 ii. Remedies.

  1. An inmate's request for an administrative remedy that is upheld shall be given an appropriate and meaningful remedy that may include, but not be limited to:

   a. corrective action to rectify the matter;

   b. changes in written policies and procedures or the interpretation or application of written policies and procedures;

   c. enforcement of existing policies and procedures; or,

   d. development of policies and procedures.

  2. An inmate's request for an administrative remedy which does not comply with the requirements of this directive shall be rejected.

o. Record Maintenance.

 i. General Requirements.

  1. An administrative remedy file shall be maintained and include the following:

   a. the copy of the Administrative Remedy at each level of review,

Rev. 5/11/21, 6/11/21, 9/20/22, 4/21/23, 11/27/23, 6/11/24

Att. 1 to Ex C, Pg., 004

| Directive Number 9.6 | Effective Date 04/30/2021 | Page 5 of 12 |
|---|---|---|
| Title | Inmate Administrative Remedies | |

b. each response, and,

c. any documents submitted in support of the inmate's request for the administrative remedy.

2. CN 9609, Inmate Requests for Administrative Remedies Log, shall be maintained at each level of review and shall include:

a. the name and number of the inmate requesting the administrative remedy;

b. the dates of initial receipt and of the response at that level;

c. a brief description of the request; and,

d. the disposition.

3. A monthly report shall be provided to the Unit Administrator to include:

a. the number of Level 1, 2 and 3 Administrative Remedies filed;

b. the Level 1 Administrative Remedies categorized by subject; and,

c. the number and type(s) of dispositions.

    ii. Retention. CN 9609, Administrative Remedies Log, shall be retained as the official record and each completed Administrative Remedy shall be maintained at the facility for five (5) years or until all related litigation is resolved, whichever comes later, in accordance with Administrative Directive 4.7, Records Retention, and Administrative Directive 6.9, Collection and Retention of Contraband and Physical Evidence.

    iii. Confidentiality.

1. The contents of the Administrative Remedy file, Administrative Remedies log (CN 9609), and any record of an inmate's participation in any Administrative Remedies proceeding shall be confidential and access shall be restricted to authorized personnel.

2. No copy of an Administrative Remedy or adverse reference to any Administrative Remedy shall be placed in an inmate's master file.

3. All files shall be maintained in a locked cabinet inaccessible to any person other than the Administrative Remedies Coordinator(s) and Level 1 reviewer.

4. The Administrative Remedies Coordinator(s) involved in the disposition of an Administrative Remedy shall have access to records and information essential to the resolution of the Administrative Remedy.

5. Confidentiality of Administrative Remedy records shall not preclude any disciplinary action(s) that may be deemed necessary as a result of the statements made within such records.

p. Monitoring and Evaluation.

    i. The Unit Administrator shall evaluate the Inmate Administrative Remedies Procedure in May of each year. Inmates and employees shall be afforded an advisory role in the evaluation, which shall include:

1. a review of both the effectiveness and integrity of the Inmate Administrative Remedies Procedure, and

2. recommendations for revision.

    ii. An annual report for each fiscal year shall be presented to the Commissioner by September 1 of each year. The report shall include:

1. the findings and recommendations of the evaluation;

2. statistical data regarding the number and type of remedies and dispositions;

3. the level of disposition(s);

4. sample responses from each level;

5. remedies granted; and

6. evidence of compliance with time limits at each level of decision.

q. Petitions. Petitions are not an authorized method of accessing the Inmate Administrative Remedies Procedure and shall not receive a written response. Inmates must use the Inmate Administrative Remedies Procedure to seek formal review of an issue.

r. Inmate Transfers.

Rev. 5/11/21, 6/11/21, 9/20/22, 4/21/23, 11/27/23, 6/11/24

| Directive Number 9.6 | Effective Date 04/30/2021 | Page 6 of 12 |
|---|---|---|
| Title | Inmate Administrative Remedies | |

       i.  If an inmate transfers during any inmate administrative remedy response period, the finalized documentation shall be sent to the inmate's current facility and previous facility's administrative remedy coordinators for documentation purposes.

      ii.  If an inmate seeks to request a higher level of administrative remedy, the inmate may file an appeal at the new facility.

  s.  <u>Connecticut Inmates Housed in Other States/Jurisdictions</u>. Connecticut inmates housed in other states/jurisdictions must utilize and exhaust the Inmate Administrative Remedies Procedure of the receiving state/jurisdiction for an issue relating to any aspect of an inmate's confinement that is subject to the receiving state/jurisdiction's authority.

6.  <u>Administrative Remedies Procedures</u>.

  a.  <u>Inmate Grievances</u>.

       i.  <u>Informal Resolution</u>.

         1.  An inmate must attempt to seek informal resolution prior to filing grievance.

         2.  The inmate may attempt to resolve the issue verbally with the appropriate staff member or with a supervisor/manager.

            a.  If the verbal communication does not resolve the issue, the inmate shall submit a written request via CN 9601, Inmate Request Form.

         3.  If the inmate chooses not to attempt to the resolve the issue verbally the inmate shall submit a CN 9601, Inmate Request Form, to the appropriate staff member.

         4.  Within the CN 9601, Inmate Request Form, the inmate must complete the following requirements:

            a.  clearly state the problem and the action requested to remedy the issue;

            b.  include the date and time that the original attempt at informal resolution occurred; and

            c.  be free of obscene or vulgar language or content.

         5.  The completed CN 9601, Inmate Request Form, shall then be addressed to the appropriate staff member and deposited in the appropriate collection box.

         6.  The Unit Administrator shall ensure that Inmate Request Forms are collected and returned in a timely manner.

         7.  Inmate Request Forms shall be available in all housing units.

         8.  A response to the inmate shall be made within 15 business days from receipt of the written request.

         9.  The Unit Administrator shall post in each housing unit a list of staff members to whom inmate requests should be addressed for each of the remedy subjects.

      ii.  <u>Filing a Grievance</u>.

         1.  An inmate shall file a Grievance if the inmate is not satisfied with the informal resolution offered.

         2.  The inmate shall attach CN 9601, Inmate Request Form, containing the appropriate staff member's response, to the CN 9602, Inmate Grievance Form- Level 1.

            a.  If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached to the CN 9602, Inmate Grievance Form- Level 1. The inmate shall include the name of the staff member whom the informal resolution was addressed and the date of the attempt.

         3.  The completed CN 9602, Inmate Grievance Form- Level 1, along with any relevant documents, must be submitted in accordance with the General Provisions of this directive and deposited in the 'Administrative Remedies' box.

| Directive Number 9.6 | Effective Date 04/30/2021 | Page 7 of 12 |
|---|---|---|
| Title | Inmate Administrative Remedies | |

4. Any CN 9602, Inmate Grievance Form- Level 1, must be filed within 30 calendar days of the occurrence or discovery of the cause of the Grievance.

b. Grievance Review Procedures

   i. Level 1 Review.

     1. The Level 1 decision shall be made by the Unit Administrator.

     2. The Grievance shall be reviewed for compliance with sections five (5) and six (6) of this directive.

       a. If the review is found to be in compliance with sections 5 and 6 of this directive, then the Grievance shall be processed.

         i. If the review finds the Grievance not to be in compliance, then the Grievance shall be rejected and the inmate shall be notified.

           1. If the failure to meet the procedural requirement (s) can be corrected the inmate shall have (5) calendar days to correct, the defect (s) and resubmit a request for administrative remedy.

           2. If the resubmitted request for administrative remedy does not correct the defect (s), the request for administrative remedy shall be rejected and not subject to further appeal.

     3. The response to the level 1 review shall be issued in writing within 30 business days of receipt the CN 9602, Inmate Grievance Form-Level 1.

     4. The response shall include the disposition, date of the disposition, and reason for the disposition. The Level 1 Reviewer shall provide the inmate a CN 9604, Inmate Grievance Appeal Form – Level 2.

       a. If, within 30 business days the inmate does not receive a response to the CN 9602, Inmate Grievance Form- Level 1, or the inmate is not issued a CN 9607, Inmate Administrative Remedies Procedure – Notice of Time Extension, then an inmate may file a CN 9604, Inmate Grievance Appeal Form – Level 2.

         i. If an inmate is issued a CN 9607, Inmate Administrative Remedies Procedure – Notice of Time Extension, and does not receive a response in the identified time frame, the inmate may file a CN 9604, Inmate Grievance Appeal Form- Level 2, within five (5) calendar days from the date that the Administrative Remedies Coordinator identified on CN 9607, Inmate Administrative Remedies Procedure – Notice of Time Extension.

   ii. Level 2 Review.

     1. An inmate shall request an administrative reconsideration of a Level 1 disposition by utilizing a CN 9604, Inmate Grievance Appeal Form – Level 2, within five (5) calendar days of receipt of the Level 1 decision.

     2. If the inmate does not receive a response to the CN 9602, Inmate Grievance Form- Level 1, the inmate shall file a  CN 9604, Inmate Grievance Appeal Form – Level 2, within 65 calendar days from the date that the initial CN 9602, Inmate Grievance Form- Level 1, was documented in the CN 9609, Administrative Remedies Log.

     3. Determination of Level 2 reviews shall be made pursuant to the following provisions:

       a. The appropriate District Administrator shall be the Level 2 reviewer for any inmate confined in a Connecticut correctional facility.

       b. The Director of Sentence Calculation and Interstate Management shall be the Level 2 reviewer for any Connecticut inmate housed out of state.

       c. The Director of Parole and Community Services shall be the Level 2 reviewer for any inmate supervised in the community.

Rev. 5/11/21, 6/11/21, 9/20/22, 4/21/23, 11/27/23, 6/11/24

Att. 1 to Ex C, Pg., 007

| Directive Number | Effective Date | Page 8 of 12 |
|---|---|---|
| 9.6 | 04/30/2021 | |
| Title | | |
| Inmate Administrative Remedies | | |

4. The response to the Level 2 review shall be issued to the inmate, in writing within 30 business days of receipt the CN 9604, Inmate Grievance Appeal Form – Level 2.

5. The response shall include the disposition, date of the disposition, and reason for the disposition. The Level 2 Reviewer shall provide the inmate a CN 9605, Inmate Grievance Appeal Form– Level 3, if applicable.

    a. If, within 30 business days the inmate does not receive a response to the CN 9604, Inmate Grievance Appeal Form – Level 2, or the inmate is not issued a CN 9607, Inmate Administrative Remedies Procedure – Notice of Time Extension, an inmate shall file a CN 9605, Inmate Grievance Appeal Form – Level 3.

        i. If an inmate is issued a CN 9607, Inmate Administrative Remedies Procedure – Notice of Time Extension, and does not receive a response in the identified time frame, the inmate shall file a CN 9605, Inmate Grievance Appeal Form– Level 3, within five (5) calendar days from the date that the Administrative Remedies Coordinator identified on CN 9607, Inmate Administrative Remedies Procedure – Notice of Time Extension.

6. Level 2 reviews shall be the final level of review of all grievances unless the appeal meets the requirements for a Level 3 review as identified in this directive.

  iii. Level 3 Review.

    1. Level 3 review is restricted to appeals of Level 2 decisions:

        a. That challenge Department- level policy;

        b. That challenge the integrity of the Administrative Remedies procedure; or,

        c. When a Level 2 response is not issued to an inmate within the required timeframe.

    2. An inmate shall file a CN 9605, Inmate Grievance Appeal Form – Level 3, within five (5) calendar days of receipt of the returned CN 9604, Inmate Grievance Appeal Form – Level 2.

        a. Any CN 9605, Inmate Grievance Appeal Form – Level 3, submitted as a result of an inmate not receiving a response to a CN 9604, Inmate Grievance Appeal Form – Level 2 within 30 business days, must be filed within 65 calendar days of filing the CN 9604, Inmate Grievance Appeal Form – Level 2.

    3. The Level 3 review shall be made by the Commissioner or designee.

    4. The response to the CN 9605, Inmate Grievance Appeal Form – Level 3, shall be issued in writing within 30 business days of receipt of the CN 9605, Inmate Grievance Appeal Form – Level 3.

    5. Level 3 review shall be the final level of review of all grievances that meet the requirements of this section.

7. **Appeals of Administrative Decisions.** The Inmate Appeals Procedure for Administrative Decisions shall be the administrative remedy for formal reconsideration of an agency decision or action.

  a. **Filing an Appeal.**

    i. The inmate shall complete a CN 9606, Appeal of an Administrative Decisions Form, and identify which specific department action or decision is being appealed.

    ii. The CN 9606, Appeal of an Administrative Decisions Form, must be submitted in accordance with the General Provisions outlined in this directive and deposited in the Administrative Remedies box.

    iii. Any submitted CN 9606, Appeal of an Administrative Decisions Form must be completed, and deposited in the Administrative Remedies box within 15 calendar days of the receipt of the decision being appealed.

        1. Any CN 9606, Appeal of an Administrative Decisions Form, that is not submitted within the 15 calendar days shall be rejected.

Rev. 5/11/21, 6/11/21, 9/20/22, 4/21/23, 11/27/23, 6/11/24

Att. 1 to Ex C, Pg., 008

| Directive Number 9.6 | Effective Date 04/30/2021 | Page 9 of 12 |
|---|---|---|
| Title | Inmate Administrative Remedies | |

      iv. Matters that are subject to the departmental appeal procedure are limited to:

         1. Classification Decisions.

           a. the following classification decisions are subject to appeal:

              i. Risk Level decisions;

              ii. Needs Level decisions;

              iii. Job Removal decisions;

              iv. Program Assignments decisions; and

              v. Special Monitoring Status decisions.

                  1. Inmate placement on Special Monitoring Status following the completion of special management (i.e. Administrative Segregation, Chronic Discipline, Security Risk Group Member Program or Special Needs Management) shall not be subject to appeal.

           b. an appeal of a Classification decision made by facility staff shall be reviewed and decided by the Unit Administrator.

           c. an appeal of a Classification decision made by the OCPM Unit shall be reviewed and decided by the Director of OCPM, with the exception of Special Management decisions.

           d. the Unit Administrator or the Director of OCPM shall respond in writing within 15 business days of receipt of the appeal.

              i. The decision of the Unit Administrator or the Director of OCPM shall not be subject to further appeal.

           e. an appeal of a Special Monitoring placement that did not result from completion of a special management status shall be decided by the appropriate District Administrator within 15 business days of receipt of the appeal.

              i. The decision of the District Administrator shall not be subject to further appeal.

           f. discretionary release denials under the authority of the Commissioner of Correction or designee shall not be subject to appeal, Administrative Remedy, or Administrative Remedies.

         2. Special Management Decision.

           a. Initial Special Management decisions regarding the following are subject to appeal:

              i. Administrative Segregation;

              ii. Special Needs Management;

              iii. High Security;

              iv. Chronic Discipline; and

              v. Protective Custody.

           b. The Deputy Commissioner of Operations and Rehabilitative Services shall respond in writing within 15 business days of receipt of the appeal.

              i. The decision of the Deputy Commissioner of Operations and Rehabilitative Services shall not be subject to further appeal.

         3. Security Risk Group Member Designation.

           a. Security Risk Group Member designations are subject to appeal.

           b. In reviewing an inmate's appeal, the appropriate District Administrator shall consult with the Director of Security prior to changing an inmate's Security Risk Group Member designation.

           c. The District Administrator shall respond in writing within 15 business days of receipt of the appeal.

              i. The decision of the District Administrator shall not be subject to further appeal.

         4. Disciplinary Action Decision.

           a. Disciplinary Action resulting from a guilty plea shall not be subject to an appeal. A guilty finding received at a disciplinary hearing is subject to appeal.

Rev. 5/11/21, 6/11/21, 9/20/22, 4/21/23, 11/27/23, 6/11/24

**Att. 1 to Ex C, Pg., 009**

| Directive Number<br>9.6 | Effective Date<br>04/30/2021 | Page 10 of 12 |
|---|---|---|
| Title<br>　　　　　　　　　　Inmate Administrative Remedies | | |

b. The appeal shall be reviewed by the District Administrator who oversees the adjudicating Disciplinary Hearing Officer. The District Administrator shall not delegate the authority to respond to any disciplinary appeal.

c. The District Administrator shall respond in writing to any appeal within 15 business days of the receipt of the appeal.

   i. If, upon review of the appeal, The District Administrator determines that modification of the disciplinary action is warranted, such modification shall be made in accordance with correctional objectives of the State of Connecticut.

   ii. The decision of the District Administrator shall not be subject to further appeal.

5. Decision to Reject Religious or Educational Tapes/CDs Not Available in the Commissary.

   a. A facility decision to reject tapes/CDs that are religious or educational in nature and are not available in the commissary is subject to appeal.

   b. The Unit Administrator shall respond in writing within 15 business days of receipt of the appeal.

      i. The decision of the Unit Administrator shall not be subject to further appeal.

6. Decision to Reject Publication.

   a. A decision to reject a publication, in whole or in part, is subject to appeal.

      i. The inmate must attach the originally issued CN 100702, Publication Rejection Notice, to the CN 9606, Appeal of Administrative Decision.

   b. The Director of Security shall respond in writing within 15 business days of receipt of the appeal.

      i. The decision of the Director of Security shall not be subject to further appeal.

7. Decision to Reject Correspondence.

   a. A decision to reject correspondence is subject to appeal.

   b. The District Administrator shall respond in writing within 15 business days of receipt of the appeal for non-Security Risk Group correspondence.

      i. The decision of the District Administrator shall not be subject to further appeal.

   c. The Director of Security shall respond in writing within 15 business days of receipt of the appeal of a decision to reject Security Risk Group correspondence.

      i. The decision of the Director of Security shall not be subject to further appeal.

8. Americans with Disabilities Act (ADA) Decision.

   a. After meeting with the Unit ADA Coordinator, the ADA decision is subject to appeal.

      i. The Department ADA Coordinator, in consultation with the appropriate District Administrator, shall respond in writing within 15 business days of receipt of the appeal.

         1. The decision of the Department ADA Coordinator shall not be subject to further appeal.

9. Determination of Grievance Process Abuse.

   a. A determination of Grievance Process Abuse may be appealed.

   b. The appeal shall be reviewed by the District Administrator of the district where the determination of Grievance Process Abuse occurred.

      i. The District Administrator shall not delegate the authority to respond to any appeal of a Grievance Process Abuse determination.

Rev. 5/11/21, 6/11/21, 9/20/22, 4/21/23, 11/27/23, 6/11/24

Att. 1 to Ex C, Pg., 010

| Directive Number 9.6 | Effective Date 04/30/2021 | Page 11 of 12 |
|---|---|---|
| Title | Inmate Administrative Remedies | |

c. The District Administrator shall respond in writing to any appeal within 15 business days of receipt of the appeal.
   i. The decision of the District Administrator shall not be subject to further appeal.

8. <u>PREA Investigation Decision.</u> Complaints alleging sexual abuse or sexual harassment must be reported in accordance with Administrative Directive 6.12, Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention, and shall be investigated by the PREA Investigation Unit. Any PREA Investigation issued by the Director of the PREA Investigation Unit is not subject to further department appeal. Complaints alleging sexual abuse or sexual harassment do not follow the Administrative Remedies Procedure outlined in this Directive.
   a. Complaints alleging retaliation or misconduct other than sexual abuse or sexual harassment must follow the Administrative Remedies Procedure outlined in this Directive.

9. Property Claim. The Department's Lost Property Board shall hear and determine any claim by an inmate in a correctional facility who seeks compensation not exceeding three thousand five hundred dollars ($3,500.00) for lost or damaged personal property. Denied property claims exceeding three thousand five hundred dollars ($3,500.00) or property claims filed by inmates not in a Connecticut correctional facility must be filed with the State Claims Commissioner in accordance with Section 9(F) of this Directive.
   a. Composition of Lost Property Board. Lost Property Board members shall be appointed by the Deputy Commissioner of Operations and Rehabilitative Services.
   b. Property Claim Procedure. If an inmate contends the Department is responsible for the loss of or damage to, any of the inmate's personal property, the inmate shall follow the Property Claims procedure. Property claims must be filed within one (1) year of when the inmate knew or should have known of the loss or damage. The Property Claim filing procedure shall be as follows.
      i. The inmate shall complete and deposit CN 9610, Lost/Damaged Property Investigation Form, in the Administrative Remedies box. Form CN 9610, Lost/Damaged Property Investigation Form, shall be available in all housing units. The inmate shall attach CN 9601, Inmate Request Form, to CN 9610, Lost/Damaged Property Investigation Form, indicating that the inmate has attempted to resolve the property issue informally in accordance with Administrative Directive 6.10, Inmate Property. If the property issue is resolved at this level, the inmate shall complete and submit CN 9611, Property Investigation Withdrawal, to the Administrative Remedies Coordinator to indicate that the issue has been resolved.
      ii. If the issue is still unresolved after submitting the CN 9610, Lost/Damaged Property Investigation Form, the inmate may elect to continue pursuing resolution by completing CN 9612, Property Claim.
      iii. The inmate shall mail the completed and notarized CN 9612, Property Claim form, along with any related documents, to the attention of the Lost Property Board at 24 Wolcott Hill Road, Wethersfield, Connecticut 06109.
   c. Submission of Documentation. Upon request from the Lost Property Board, the Administrative Remedies Coordinator shall provide the Lost Property Board with a written report on the claim, to include a copy of CN 9612, Property Claim, along with all applicable documentation within 30 calendar days of request of an investigation.
      i. When a Property Claim is resolved at the facility level, the original CN 9611, Property Investigation Withdrawal, shall be placed in the inmate's central property file at the facility. If, after a Property Claim has been filed, the issue is resolved prior to the conclusion of the Lost Property Board's investigation, CN 9614, Property Claim Settlement, shall be completed. The original CN 9614, Property Claim Settlement, shall be placed in the claim file and a copy shall be placed in the inmate's central property file.
   d. Claim Fees. A $25.00 filing fee shall be required for all claims filed with the Lost Property Board. Fees may be waived for good cause by the Department's Claims Office. If the inmate has insufficient funds to pay the filing fee, the inmate may submit CN 9613, Application for Deferment of Filing Fee. Payment of the fee may

Rev. 5/11/21, 6/11/21, 9/20/22, 4/21/23, 11/27/23, 6/11/24

Att. 1 to Ex C, Pg., 011

| Directive Number 9.6 | Effective Date 04/30/2021 | Page 12 of 12 |
|---|---|---|
| Title | Inmate Administrative Remedies | |

either be waived or an obligation may be established on the inmate's trust fund account. If an obligation is established on the trust fund account, twenty percent (20%) of all subsequent funds received by the inmate shall be credited against the obligation until the obligation is satisfied.

    e. Decision. The Lost Property Board shall review all documents related to the claim and decide the claim on its merits. If, upon review of the documents presented, the Lost Property Board determines that the claim has merit as presented, it shall award appropriate damages to the inmate. Otherwise, the Lost Property Board shall hold a hearing to determine whether or not the Department is liable for the loss and the appropriate damages. If the Lost Property Board determines that a hearing shall be held, the inmate shall be given at least 24 hours' notice utilizing CN 9615, Property Claim Hearing Notification, and an opportunity to be heard at the hearing. The inmate may present witness testimony in the form of written statements.

        i. The Lost Property Board shall have up to one (1) year from the date the inmate's Property Claim is received to review, investigate and render a decision. The one (1) year limit may be extended when justified by good cause. Extensions to the one (1) year limit shall be documented on CN 9614, Property Claim Hearing Notification.

    f. Filing a Claim with the State's Claims Commissioner. If the Lost Property Board denies a claim in whole or in part, the inmate may, not later than 60 calendar days after such decision, present the claim to the Office of the Claims Commissioner by forwarding the same CN 9612, Property Claim, along with any relevant documents, to the attention of the State Claims Commissioner at 450 Columbus Boulevard, North Tower, Suite 203, Hartford, Connecticut, 06103.

10. Health Services Administrative Remedy. Any inmate requesting to file a Health Services Administrative Remedy shall only file such remedy in accordance with Administrative Directive 8.9, Health Services Administrative Remedies.

    a. Any inmate's attempt to utilize the administrative remedy review process stated in Administrative Directive 9.6, Inmate Administrative Remedies, for the purpose of appealing a health services related issue shall be rejected and not subject to appeal under Administrative Directive 9.6, Inmate Administrative Remedy Procedure.

        i. Within the disposition, the inmate shall be referred to the processes outlined in Administrative Directive 8.9, Health Services Administrative Remedies.

11. Forms and Attachments. The following forms and attachments are applicable to this Administrative Directive and shall be utilized for their intended function:

    a. CN 9601, Inmate Request Form;
    b. CN 9602, Inmate Grievance Form – Level 1;
    c. CN 9603, Administrative Remedy Receipt;
    d. CN 9604, Inmate Grievance Appeal Form – Level 2;
    e. CN 9605, Inmate Grievance Appeal Form- Level 3;
    f. CN 9606, Appeal of Administrative Decisions;
    g. CN 9607, Inmate Administrative Remedies Procedure – Notice of Time Extension;
    h. CN 9608, Inmate Administrative Remedies Withdrawal Form;
    i. CN 9609, Administrative Remedies Log;
    j. CN 9610, Lost/Damaged Property Investigation Form;
    k. CN 9611, Property Investigation Withdrawal;
    l. CN 9612, Property Claim;
    m. CN 9613, Application for Deferment of Filing Fee;
    n. CN 9614, Property Claim Settlement;
    o. CN 9615, Property Claim Hearing Notification;
    p. CN 9616, Agency Findings;
    q. CN 9617, Abuse Determination;
    r. Attachment A, Administrative Remedies Routing Chart;
    s. Attachment B, Inmate Administrative Remedy Inmate Distribution Log.

12. Exceptions. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

Rev. 5/11/21, 6/11/21, 9/20/22, 4/21/23, 11/27/23, 6/11/24

Att. 1 to Ex C, Pg., 012