United States District Court

District of Connecticut

SEP 9 2025 PM1:35
FILED-USDC-CT-HARTFORD

Courtney Green

V

Commissioner Quiros, et al

No. 3:24-CV-01317-VDO

9 , 5 , 25

Plaintiff's Declaration In Opposition To Defendant's Motion For Summary Judgment

Courtney Green states:

1.  I am the plaintiff in the above captioned case. I make this declaration in opposition to Defendants Quiros, Caron, Ogando, Starzyk and Coggeshall's motion for summary judgment on my claims concerning violations of my Fourth Amendment under the United States Constitution by subjecting me to unreasonable searches at the conclusion of non - contact video visits absent reasonable suspicion.

2.  Defendants Quiros, Caron, Ogando, Starzyk and Coggeshall are not entitled to summary judgment because there are genuine issues of material fact to be resolved. These issues are identified in the accompanying statement of disputed factual. Issues filed by the plaintiff pursuant to local rule 56 ( a ) 2 of this district court. The facts are set out in this declaration.

3.  In or around April 2021 I was transferred to Carl Robinson CI.

4.  When I was transferred to Robinson CI the COVID - 19 pandemic was in effect, therefore contact visits were not accorded at Robinson CI in efforts to stem the spread of COVID - 19 in Connecticut's prisons,

5.  Carl Robinson CI did accord me and the prison population non - contact video visits during the COVID - 19 pandemic.

6.  Video visits are conducted by utilizing a laptop, tablet or mobile device with video capabilities. See exh., 3 at # 12.

1

7.  Visitors who participate in video visits do not enter the correctional facilities premises to do such, nor do they have contact with prisoners that are confined at Robinson CI. See compl., at par. 15.

8.  Prisoners confined at Robinson CI who have video visits are not able to obtain, control, or possess contraband through a computer screen with their visitor,

9.  During my 16 ½ yrs of incarceration, and based upon my personal knowledge, contact visits are the source of how contraband is introduced into Robinson CI during visits.

10. Contrary to the defendant's position, officer(s) have not interdicted drugs from inmate(s) that participated in video visits. See exh., 8 at 19.

11. During video visits, inmates sit in a far corner away and not in the presence or vicinity of those who are having contact visits, so it is very unlikely that contraband and would; and or could be exchanged.

12. In the visiting room there are 10 spots for video visits. See exh., 17.

13. Inmates participating in visits in general are either called for via the telephone from the officer working visit is at their housing unit if inmates have either a contact visit or non - contact visits. Inmates that have video visits are / must be on the list to enter the visiting room.

14. If inmates enter the visiting room without authorization they are / will be subject to disciplinary action for being out of place. See administrative directive 9.5 attachment B class " B " offenses # 10.

15. From about April of 2021 up until November of 2024 I was incarcerated at Robinson CI and during said time period I received an abundant amount of video visits.

16. Most notably, I had a video visit on 3/15/24, 3/23/24, 6/3/24, and 6/10/24 and after each of those video visits I was directed to submit to visual cavity search without reasonable suspicion. See exh. 16 at :002 - 003.

2

17. On or about 6/3/24 I had a virtual video visit, at the conclusion of said visit, Defendant Starzyk instructed me to remove my clothes piece by piece because he is being strip searched.

18. After a brief protest, I complied with the Defendant Starzyk's order and removed my clothes and submitted to being strip searched.

19. Contrary to the defendant's position, the standard DOC policy that was in effect on 6-3-24 did not authorize, or explicate that inmates are to be strip searched after video visits. See exh. 19 at :012 - 013.

20. Similarly so standard DOC policy that was in effect on March 25, 2024 did not authorize, nor explicate that inmates are to be strip searched at the conclusion of virtual video visits. See exh. 19 at :012 - 013.

21. On 6-10-24, I had a virtual video visit with an approved visitor. After the video visit Defendant Coggeshall instructed me to the partitions and to remove my clothing because I was being strip searched. After a brief protest I submitted to Defendant Coggeshall's order and complied with his strip search.

22. A strip search is a visual inspection of an unclothed persons body cavities, hair ( to include the individual's nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia. See Administrative Directive 6.7 Section 3. Subsection ( p. ),

23. Administrative Directive 6.7 was revised on 6-4-24, contrary to the defendants version. See exh. 11 at :0073.

24. Even in the revision of Administrative Directive 6.7 it does not mention that inmates are to be strip searched at the conclusion of video visits but it does instruct staff to strip search inmates at the conclusion of contact visits. See exh. 11 :0073 - 0074 ( ix ).

25. During the multiple instances that I was strip searched, it left me feeling upset and agitated because it is no standard DOC policy.

3

26. Contrary to the defendant's position, me being strip searched at the conclusion of contact visits and shakedown is standard DOC policy. See exh. 11 at :0074.

27. Contrary to the defendant's position, inmates that participate in video visits are not in the same space as those who participate in contact visits.

28. Contrary to the defendant's position, but they fail to mention that contraband has not been recovered from inmates who participated in video visits.

29. Contrary to the defendant's position, Administrative Directive 6.7 was not revised to clarity that facilities must strip search inmates at the conclusion of video visits. See exh. 11 at :0074.

30. Contrary to the defendant's position, visits are one hour in duration. See exh. 17. Visits for a housing unit is not for 3 hours. There are 10 spots for video visits, not 13. See Id. See also exh. 13.

31. Subsequent to the strip searches that I was subjected to at the conclusion of video visits, I filed a grievance after writing to Captain Martinez, who did not respond to the inmate request I wrote her. See exh. 20 at :018 - 019.

32. In the grievance I submitted I included Defendant Starzyk's name.

33. Contrary to the defendant's position, standard DOC policy did not require me to put Defendant Coggeshall's name in my grievance. See exh. 30 at :006.

34. I complied with the standard DOC policy contrary to the defendant's position.

35. On 7-18-24 my grievance was rejected for being a repetitive request for an administrative remedy, further exemplifying that I challenged the strip search policy at the conclusion of video visits. Exh. 20 at :018 - 019. See also exh. 16 at 002 - 003; exh. 18 at :007 - 010.

36. Contrary to defendants position, I was subject to unreasonable searches at the conclusion of video visits on 6-3-24, 6-10-24 at the behest of defendants Starzyk and Coggeshall, without them establishing reasonable suspicion.

4

37. Defendants Quiros, Caron and Ogando created the strip search policy that is unconstitutional.

38. Based upon the foregoing, all of the defendants violated my rights to be free from unreasonable searches.

Declaration Under Penalty of Perjury

I, Courtney Green, pursuant to 28 U. S. C. section 1746, declare under the pains penalties of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed on $9$ / $5$ / $25$.

Courtney Green