**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

COURTNEY GREEN,                 :         No. 3:24-cv-01317 (VDO)
    *Plaintiff,*                          :
                                           :
v.                                       :
                                           :
COMMISSIONER QUIROS, et al.,    :         SEPTEMBER 22, 2025
    *Defendants.*                          :

**REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

The undersigned defendants, Commissioner Quiros, Warden Caron, Deputy Warden Ogando, and Correctional Officers Starzyk and Coggeshall, hereby reply to Plaintiff's opposition to their motion for summary judgment. Plaintiff's unsupported, conclusory assertions are insufficient to establish a genuine dispute of material fact and defeat a motion for summary judgment. *See, e.g.*, *Robinson v. Mirza*, Docket No. 9:21-CV-01322 (DNH/CFH), 2024 U.S. Dist. LEXIS 134369, at *24 (N.D.N.Y. July 30, 2024) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

To begin, as a threshold matter, Defendants' Local Rule 56(a)(1) Statements at ¶¶ 7, 8, 14, 16, 26, 34, 39, and 40 should be deemed admitted when the Plaintiff offers that he has insufficient information to admit or deny them. *See Buell v. Hughes*, 568 F. Supp. 2d 235, 237 (D. Conn. 2008) (emphasizing that parties must deny facts on summary judgment with appropriate citations to testimony or evidence; finding that a plaintiff's responses did not comply with Local Rule 56(a)(2) in stating that "Plaintiffs lack sufficient information to agree or disagree," and accordingly deeming those paragraphs admitted); *Henton v. City of New London*, 3:06-cv-2035 (EBB), 2008

U.S. Dist. LEXIS 41088, at \*13-\*14 (D. Conn. May 23, 2008) (same); *Knight v. Hartford Police Dep't*, No. 3:04-cv-969 (PCD), 2006 U.S. Dist. LEXIS 36331, at \*13-\*15 (D. Conn. May 22, 2006) (deeming admitted defendant's undisputed facts where plaintiff responded that he "ha[d] no knowledge" of or "disagree[d] with" the statements and where he offered no evidence in dispute); *Walton v. State of Conn., Dep't of Soc. Servs.*, No. 3:03-cv-2262 (JBA), 2006 U.S. Dist. LEXIS 9874, at \*5 n.3 (D. Conn. Mar. 2, 2006) (deeming admitted defendant's material facts where plaintiff claimed insufficient knowledge to respond and offered no evidence to dispute facts).

Critically, the central issue before this Court is whether the searches of the Plaintiff were justified by the legitimate penological interest of keeping contraband out of a correctional facility. As fully discussed in Defendants' motion for summary judgment, those searches were indisputably related to that purpose. Plaintiff cannot credibly deny the very real threat posed by the introduction of contraband which creates a safety and security risk for the facility. *See* ECF No 40-4, ¶¶28-29. He himself acknowledges that "[c]ontraband, including illegal drugs, metal objects, weapons, or written notes, pose risks to the safety and security of the Robinson CI facility." *Compare* Defendants' Local Rule 56(a)(1) Statement, ECF No. 40-2, at 4, ¶21 *with* Plaintiff's Response, ECF No. 45 at 2, ¶21 ("Admit"); Plaintiff's Declaration, ECF No. 43, at 2 ¶9 (acknowledging that contact visits are a source of contraband in Robinson CI); *see also* Deposition Transcript, ECF No. 40-3, Pg.

21, 3 – 25 (Plaintiff acknowledges awareness of contraband being smuggled into Robinson Correctional Institution ("Robinson CI"), and of contraband that has been in Connecticut Department of Correction ("DOC") facilities generally including, inter alia, heroin and a hallucinogen).

Turning to the substance of Plaintiff's objection, Plaintiff continues to rely on unsupported, conclusory assertions and continues to ignore Defendants' legitimate penological purpose for conducting strip searches after *mixed* video and contact visits. Plaintiff focuses solely on the fact that *he* specifically was conducting a video-only visit, and that *his* visitors were not physically located within the facility, while ignoring the risk that contraband could be passed from *other* inmates or visitors, or left behind in the visiting room. *See* Defs. Local Rule 56(a)(1) St., at ¶¶ 18 – 20. Notably, by way of illustration, the Plaintiff himself, although his view of the situation is by no means dispositive, does not deny that contraband *could be smuggled* by inmates having video-only visits in a room with a mix of inmates and members of the public, but rather asserts that, in his personal opinion, such an eventuality is unlikely. *See, e.g.*, Plaintiff's Declaration, ECF No. 43, at 2, ¶11 (asserting "very unlikely" that inmates conducting video visits in the visiting room could pick up contraband while there); *see also* Plaintiff's Opposition, ECF No. 42 at 7 (Plaintiff asserts that inmates participating in video visits at Robinson CI smuggling contraband is "highly unlikely and or improbable").

While Plaintiff denies the legitimate penological purpose operating here, in support of these denials he merely points to his own conclusory statements from his

complaint, or to narrow admissions from which he attempts to make broad assertions.[1] For instance, notwithstanding Defendants' objections to Plaintiff's interrogatories and requests for admission, Plaintiff's interrogatory requests to a single correctional officer, pertaining to a single specific month, is simply insufficient to establish a genuine dispute of fact over whether strip searches have resulted in the discovery of contraband, or whether protective sweeps of the visiting room have uncovered hidden contraband—neither of which would be required, in any case, to support a finding of the widely recognized *threat* of contraband entering correctional facilities and of the appropriate measures that prison officials take to address that risk and ensure the safety of inmates and prison staff members alike. *See* ECF No. 40-4, ¶¶26 – 27. In fact, during his deposition, Plaintiff admitted that he was aware of contraband being passed into DOC facilities during contact visits. ECF No. 40-3, Pg. 21, 3 – 15.

The remainder of Plaintiff's denials fare no better. While Plaintiff denies that all visits are conducted in the same room, and points to a discussion about where non-contact visits take place, (ECF No. 45, ¶6), he has admitted, at least twice, that everyone is in the same room:

> Q. So those members of the public who where visiting inmates for noncontact visits, are they sitting in that large visiting area that we described in that big L shape somewhere?

---

[1] *See* ECF No. 45, ¶18, citing complaint, ECF No. 1 at ¶¶15-16 (stating Plaintiff's view that inmates smuggling contraband in connection with a video visit at Robinson CI is unlikely, while inmates smuggling contraband through contact visits is the "most likely" source of contraband in the facility); *Id.* at ¶19, citing ECF No. 42-1, Pg. 78, ¶19 ("While assigned to the visiting post *in June of 2024*, have you ever interdicted (drugs) from an inmate that participated in a video visit . . . .") (emphasis added); and *Id.* at ¶20, citing ECF No. 42-1, Pg. 25, ¶20 ("Prisoner's [sic] can't receive contraband from *their* visitors during a video visit".) (emphasis added).

A. They are.

Q. Are they sitting along one of the walls next to the area where the contact visits take place?

A. The distance is separate, but they're in the room with the -- **yeah, they are in the room**. . .

ECF No. 40-3, 56:11-19 (emphasis added).

Q. So you're saying that there is a few feet of space between where the contact visits take place and between where the -- withdrawn. I'm going to rephrase. You're saying that between the space where we'll say John Q public sits down to have a noncontact visit, there is some space before Jane Q public has her contact visit?

A. That is correct.

**Q. But they're in the same room; correct?**

**A. Correct.**

ECF No. 40-3, 56:22-25, 57:1-6 (emphasis added). *See also* Declaration of Warden Caron, ECF No. 40-4, at ¶¶10-11 (contact, non-contact, and video-only visits all take place in the Robinson CI visiting room).

The Plaintiff denies that all Robinson CI inmates are subject to strip searches because all inmates occupy the same physical space where the public is or has been present. (ECF No. 45, ¶17). In support of this denial, the Plaintiff cites to the *previous* version of Administrative Directive ("A.D.") 6.7. *Compare* Plaintiff's Exhibits ECF No. 42-1, Pgs. 138 – 144 (A.D. 6.7 rev. 2/27/2024) *with* Declaration of Warden Caron, Attachment 2, ECF No. 40-4, Pgs. 11 – 20 (A.D. 6.7 rev. 6/4/2024). It is undisputed that a revision to A.D. 6.7 was approved on May 29, 2024 and published on June 4, 2024. ECF No. 45, ¶23. And although Plaintiff denies *why* this administrative

directive was revised, he *again* cites to the previous version of the administrative directive which offers absolutely no explanation for why a particular change was made. *See* ECF No. 45, ¶24.

Next, Plaintiff denies that Robinson CI scheduled five contact visits, three non-contact visits, and thirteen video visits on June 10, 2024. ECF No. 45, ¶27. In support of his denial, Plaintiff cites to an inmate request form dated March 16, 2024, (ECF No. 42-1, Pg. 125 – 126), which has absolutely no bearing on visits in June, and in fact could not, because it pre-dates those visits by nearly three months.

As to Plaintiff's newfound effort to contest whether he was treated in a professional manner during the June 3rd and June 10th strip searches, Plaintiff cites to his complaint. ECF No. 45, ¶¶32 – 33.[2] However, when faced with an inconsistency between a complaint and a sworn deposition, courts must favor the version of events presented in the sworn deposition over that in the complaint. *See AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005) ("[F]aced with deposition testimony that contradicts an affidavit and a complaint, th[e] court must accept [plaintiff's] sworn testimony."); *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 279 (S.D.N.Y. 2002) ("Faced with [a] confounding contradiction [between

---

[2] The Plaintiff also cites to his deposition, *see* ECF No. 40-3, at Pg. 13, 1-9, where he states that he disagreed with and/or disliked the strip search policy. This has no bearing upon his statements that the strip searches he challenges were conducted in a professional manner. *See, e.g.*, Defendants' Local Rule 56(a)(1) Statement, ECF No. 40-2, at ¶¶32-33 (stating facts with citations to Plaintiff's deposition).

plaintiff's allegations in her complaint and her sworn testimony], the Court has no basis for accepting as true the vague statements in [the] complaint as opposed to [plaintiff's] sworn testimony . . . .").

Moreover, the Plaintiff admitted that he was familiar with the DOC grievance process. Plaintiff's Response to Rule 56(a)(1) Statement, ECF No. 45, at 2, ¶38. Within this process, the Plaintiff failed to name Defendant Coggeshall and thereby did not provide sufficient information in his grievance signed on June 24, 2024 so as to put DOC officials on notice of any supposed issue that Defendant Coggeshall had caused. *See Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). The Second Circuit has made clear that a prisoner's grievance "must provide *enough information* about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson*, 380 F.3d at 697 (emphasis added). In this instance, not only did the Plaintiff fail to name Defendant Coggeshall in his grievance, but he also failed even to allude to Defendant Coggeshall's existence or to his supposedly objectionable conduct at all, and gave insufficient information for a reviewing DOC official to appreciate that any DOC employees aside from Defendant Starzyk and the "'Caron' Administration" were allegedly at fault or merited investigation. *See* Defendants' Exhibit C, Attachment 3, ECF No. 40-5 at 57-58. Instead, the Plaintiff wrote that "twice on second shift, [he] was strip searched by Officer Starzyk following the conclusion of a virtual video visit . . . ." which was the fault of the "'Caron' Administration." *See id.*

Indeed, "the mere fact that [a prisoner] filed *some* grievance . . . does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance." *Turner v. Goord*, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005). "Rather, [a prisoner] must specifically describe the conduct of which he complains to ensure he gives the facility enough information to investigate his allegations[,]" *Gawlik v. Semple*, No. 3:20-CV-564 (SALM), 2022 U.S. Dist. LEXIS 105730, at *29 (D. Conn. June 14, 2022) (cleaned up), and exhaustion will be satisfied under the PLRA "only with respect to those of the plaintiff's claims in this action that he actually asserted in the grievance." *Shehan v. Erfe*, No. 3:15-CV-1315 (MPS), 2017 U.S. Dist. LEXIS 1116, at *21 (D. Conn. Jan. 4, 2017) (citing *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004)).

Further, "the PLRA requires exhaustion of the separate 'components or aspects of' an inmate's claims." *Gawlik*, 2022 U.S. Dist. LEXIS 105730, at *29 (quoting *Riles v. Semple*, No. 3:17-CV-2178 (MPS), 2022 U.S. Dist. LEXIS 6637, at *5-*6 (D. Conn. Jan. 13, 2022)); *see also Sosa v. Lantz*, No. 3:09-CV-869 (JBA), 2013 U.S. Dist. LEXIS 114944, at *19-*20 (D. Conn. Aug. 14, 2013) (holding prisoner exhausted Eighth Amendment claim re overcrowding as to three of the six conditions alleged, concluding that because "complaints regarding [the remaining three conditions] ha[d] not been exhausted . . . [the Court] w[ould] not consider those allegations when reviewing [his] Eighth Amendment claim").

Accordingly, the Plaintiff did *not* exhaust his administrative remedies as to his claim against Defendant Coggeshall. He did not provide enough information to substantiate his claims against Defendant Coggeshall to the DOC during the grievance process—a process, again, that he has admitted, even at this stage of the litigation, that he understood. The Plaintiff should not be rewarded, nor Defendant Coggeshall punished, following the Plaintiff's failure to properly address his grievances at the agency level before approaching the Federal Court with this case.

At bottom, Plaintiff cannot demonstrate any *genuine* disputes of material fact, and therefore this Court should grant summary judgment in favor of Defendants.

*Respectfully submitted,*

DEFENDANTS

Commissioner Quiros, Warden Caron, Deputy Warden Ogando, Officer Starzyk, and Officer Coggeshall

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*
Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

9

/s/ Owen R. Eagan

Owen R. Eagan (ct31804)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
owen.eagan@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that on September 22, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy was also mailed to the following:

**Courtney Green**
**30 Trowel Street**
**Bridgeport, CT 06607**
**greencourtney542@gmail.com**

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General

10